S.B. No. 2337

1                            AN ACT

2  relating to the regulation of the provision of proxy advisory

3  services.

4        BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

5        SECTION 1.  The legislature finds that:

6              (1)  when shareholders in this state hire professionals

7  to provide advice in the exercise of their rights as shareholders,

8  the shareholders expect that service to be performed in their

9  financial interest as shareholders, and professionals who are hired

10 by shareholders to provide that service and who deviate from that

11 expectation must clearly disclose that fact;

12             (2)  there is a particular need for disclosures for

13 proxy voting advice because that advice is often:

14                   (A)  provided for hundreds or thousands of

15 shareholder votes each year; and

16                   (B)  based on lengthy policies that contain

17 general statements but do not explain whether or how the policy

18 provisions will maximize returns for investors for any particular

19 company or shareholder vote;

20             (3)  proxy advisors:

21                   (A)  have recommended votes based on

22 environmental, social, or governance (ESG) investing, diversity,

23 equity, or inclusion (DEI), and social credit or sustainability

24 scores; and

S.B. No. 2337

1    (B)  have not conducted financial analyses before
2    making the recommendations described by Paragraph (A) of this
3    subdivision despite having proxy voting policies claiming that the
4    purpose of the recommendation is maximizing and protecting
5    shareholder value;

6    (4)  requiring proxy advisors to provide clear, factual
7    disclosures when the advisors recommend casting a vote for
8    nonfinancial reasons or provide conflicting advice to multiple
9    clients who seek to maximize financial returns is necessary in
10   order to prevent fraudulent or deceptive acts and practices in this
11   state; and

12   (5)  a company that is the subject of a shareholder
13   proposal may have information regarding whether the proposal is in
14   the shareholder's financial interests or regarding the costs of the
15   proposal, and notice would allow the company to provide relevant
16   information to shareholders that may prevent fraudulent or
17   deceptive practices associated with proxy advisors making
18   recommendations for nonfinancial reasons.

19   SECTION 2.  Title 1, Business Organizations Code, is amended
20   by adding Chapter 6A to read as follows:

21                  CHAPTER 6A.  PROXY ADVISORY SERVICES

22                  SUBCHAPTER A.  GENERAL PROVISIONS

23       Sec. 6A.001.  DEFINITIONS.  In this chapter:

24       (1)  "Company" means a publicly traded, for-profit
25   corporation, limited liability company, partnership, or other
26   business entity that is organized or created under the laws of this
27   state, has its principal place of business in this state, or is a

S.B. No. 2337

1  foreign entity that has made a company proposal to become a domestic

2  entity, whether by merger, conversion, or otherwise.

3          (2)  "Company proposal" means a proposal made by a

4  company that is included in the company's proxy statement,

5  including a proposal regarding director nominations or elections,

6  executive compensation, corporate transactions and structure,

7  auditor selection, or similar measures.

8          (3)  "Proxy advisor" means a person who, for

9  compensation, provides a proxy advisory service to shareholders of

10  a company or to other persons with authority to vote on behalf of

11  shareholders of a company.

12          (4)  "Proxy advisory service" means any of the

13  following services that are provided in connection with or in

14  relation to a company:

15               (A)  advice or a recommendation on how to vote on a

16  proxy proposal or company proposal;

17               (B)  proxy statement research and analysis

18  regarding a proxy proposal or company proposal;

19               (C)  a rating or research regarding corporate

20  governance; or

21               (D)  development of proxy voting recommendations

22  or policies, including establishing default recommendations or

23  policies.

24          (5)  "Proxy proposal" means a proposal made by a

25  company's shareholder that is included in the company's proxy

26  statement, including the nomination of a director.

27          (6)  "Shareholder" includes a shareholder, unitholder,

S.B. No. 2337

1  limited partner, or other equity owner of a company.

2      SUBCHAPTER B.  DISCLOSURE REQUIREMENTS FOR PROXY ADVISORS

3      Sec. 6A.101.  DISCLOSURE   OF   NONFINANCIAL   PROXY   VOTING

4  SERVICES TO PREVENT FRAUD OR DECEIT.  (a)  For purposes of this

5  section, a proxy advisory service is not provided solely in the

6  financial interest of the shareholders of a company if the service:

7          (1)  is wholly or partly based on, or otherwise takes

8  into  account,  one  or  more  nonfinancial  factors,  including  a

9  commitment,  initiative,  policy,  target,  or  subjective  or

10  value-based standard based on:

11          (A)  an  environmental,  social,  or  governance

12  (ESG) goal, factor, or investment principle;

13          (B)  diversity,  equity,  or  inclusion  (DEI),

14  including any attempt to provide preferential treatment based on

15  characteristics protected under Section 21.051, Labor Code;

16          (C)  a social credit or sustainability factor or

17  score; or

18          (D)  membership  in  or  commitment  to  an

19  organization or group that wholly or partly bases its evaluation or

20  assessment of a company's value over any period on nonfinancial

21  factors;

22          (2)  involves providing a voting recommendation with

23  respect to a shareholder-sponsored proposal that:

24          (A)  is   inconsistent   with   the   voting

25  recommendation  of  the  board  of  directors  or  a  board  committee

26  composed of a majority of independent directors; and

27          (B)  subject to Subsection (c), does not include a

S.B. No. 2337

1  written economic analysis of the financial impact on shareholders

2  of the proposal;

3          (3)  is not based solely on financial factors and

4  subordinates the financial interests of shareholders to other

5  objectives, including sacrificing investment returns or

6  undertaking additional investment risk to promote nonfinancial

7  factors; or

8          (4)  advises against a company proposal to elect a

9  governing person unless the proxy advisor affirmatively states that

10  the proxy advisory service solely considered the financial interest

11  of the shareholders in making such advice.

12     (b)  If a proxy advisor provides a proxy advisory service

13  that is not provided solely in the financial interest of the

14  shareholders of a company, the advisor shall:

15          (1)  include a disclosure to each shareholder or entity

16  or other person acting on behalf of a shareholder receiving the

17  service that:

18              (A)  conspicuously states that the service is not

19  being provided solely in the financial interest of the company's

20  shareholders because it is based wholly or partly on one or more

21  nonfinancial factors; and

22              (B)  explains, with particularity, the basis of

23  the proxy advisor's advice concerning each recommendation and that

24  the advice subordinates the financial interests of shareholders to

25  other objectives, including sacrificing investment returns or

26  undertaking additional investment risk to promote one or more

27  nonfinancial factors;

5

S.B. No. 2337

1    (2)  immediately provide a copy of the notice under

2    Subdivision (1) to the company that is the subject of the service;

3    and

4    (3)  publicly and conspicuously disclose on the home or

5    front page of the proxy advisor's publicly accessible Internet

6    website that the advisor's proxy advisory services include advice

7    and recommendations that are not based solely on the financial

8    interest of shareholders.

9    (c)  A written economic analysis provided under Subsection

10   (a)(2)(B) must include:

11   (1)  the short-term and long-term economic benefits and

12   costs of implementing any shareholder-sponsored proposal, as

13   written;

14   (2)  an analysis of whether the proposal is consistent

15   with the investment objectives and policies of the client;

16   (3)  the projected quantifiable impact of the proposal,

17   if adopted, on the investment returns of the client; and

18   (4)  an explanation of the methods and processes used

19   to prepare the economic analysis.

20   Sec. 6A.102.  DISCLOSURES IF PROVIDING CONFLICTING VOTER

21   ADVICE OR RECOMMENDATIONS.  (a)  For purposes of this section,

22   "materially different," with respect to advice or a recommendation

23   on how to vote on a company proposal or proxy proposal, means

24   simultaneously advising or recommending that:

25   (1)  one or more clients vote for the proposal and one

26   or more clients vote against the proposal;

27   (2)  one or more clients vote for a nominee for a

6

S.B. No. 2337

1  company's governing authority and one or more clients vote against

2  or abstain from voting for the same nominee; or

3              (3)  one  or  more  clients  vote  for  or  against  the

4  proposal  in  opposition  to  the  recommendation  of  the  company's

5  management.

6       (b)  If a proxy advisor provides to different clients who

7  have not expressly requested services for a nonfinancial purpose

8  either  advice  or  a  recommendation  on  how  to  vote  on  a  proxy  or

9  company proposal that is materially different, the advisor shall:

10              (1)  if  applicable,  comply  with  disclosure

11  requirements  for  nonfinancial  proxy  advisory  services  under

12  Section 6A.101(b);

13              (2)  notify  the  following  persons,  in  writing  or  by

14  electronic means, of the conflicting advice or recommendation:

15                  (A)  each  shareholder  receiving  the  advice  or

16  recommendation;

17                  (B)  each  entity  or  other  person  receiving  the

18  advice or recommendation on behalf of a shareholder;

19                  (C)  the  company  that  is  the  subject  of  the

20  company or proxy proposal; and

21                  (D)  the attorney general; and

22              (3)  disclose  which  of  the  conflicting  advice  or

23  recommendations is:

24                  (A)  provided solely in the financial interest of

25  the shareholders; and

26                  (B)  supported by any specific financial analysis

27  performed or relied on by the advisor.

S.B. No. 2337

1     SUBCHAPTER C.  ENFORCEMENT

2         Sec. 6A.201.  DECEPTIVE TRADE PRACTICE.  A violation of this

3   chapter is a deceptive trade practice under Subchapter E, Chapter

4   17, Business & Commerce Code, and is actionable under Section 17.47

5   of that code.

6         Sec. 6A.202.  DECLARATORY JUDGMENT OR INJUNCTIVE RELIEF.

7   (a)  In this section, "affected party" includes:

8              (1)  the recipient of proxy advisory services provided

9   by the proxy advisor;

10              (2)  the  company  that  is  the  subject  of  the  proxy

11  advisory services; or

12              (3)  any  shareholder  of  the  company  described  by

13  Subdivision (2).

14         (b)  An  affected  party  may  bring  an  action  seeking  a

15  declaratory judgment or injunctive relief under Chapter 37, Civil

16  Practice and Remedies Code, against a proxy advisor who violates

17  this chapter.  Not later than the seventh day after the date on

18  which an action is brought under this subsection, the plaintiff

19  shall provide notice to the attorney general, who may intervene in

20  the action.

21         SECTION 3.  The changes in law made by this Act apply only to

22  a proxy advisory service provided on or after the effective date of

23  this Act.

24         SECTION 4.  This  Act  takes  effect  July  1,  2025,  if  it

25  receives a vote of two-thirds of all the members elected to each

26  house, as provided by Section 39, Article III, Texas Constitution.

27  If this Act does not receive the vote necessary for effect on that

8

S.B. No. 2337

1  date, this Act takes effect September 1, 2025.

S.B. No. 2337

_____        _____
   President of the Senate                Speaker of the House

I hereby certify that S.B. No. 2337 passed the Senate on May 8, 2025, by the following vote: Yeas 20, Nays 11; May 25, 2025, Senate refused to concur in House amendments and requested appointment of Conference Committee; May 30, 2025, House granted request of the Senate; May 31, 2025, Senate adopted Conference Committee Report by the following vote: Yeas 21, Nays 10.

_____
   Secretary of the Senate

I hereby certify that S.B. No. 2337 passed the House, with amendments, on May 28, 2025, by the following vote: Yeas 92, Nays 50, two present not voting; May 30, 2025, House granted request of the Senate for appointment of Conference Committee; May 31, 2025, House adopted Conference Committee Report by the following vote: Yeas 82, Nays 41, three present not voting.

_____
   Chief Clerk of the House

Approved:

_____
   Date

_____
   Governor

10