# BILL ANALYSIS

S.B. 2337
By: Hughes
Trade, Workforce & Economic Development
Committee Report (Unamended)

## BACKGROUND AND PURPOSE

The bill sponsor has informed the committee that:
- proxy advisory firms are hired primarily by institutional investors to conduct research about corporate issuers and to make proxy voting recommendations;
- such firms do not themselves owe fiduciary duties to shareholders, but they assist institutional investors who do owe such fiduciary duties in making voting decisions on the shareholders' behalf and provide services to facilitate the voting process;
- proxy advisory firms provide voting recommendations and other services that often prioritize nonfinancial factors, such as standards based on environmental, social, or governance factors or diversity, equity, or inclusion factors, and provide irreconcilably conflicting recommendations to different clients on the same company or shareholder proposals, both of which necessarily cannot be in the financial interest of the shareholders;
- firms justify these practices on the basis that they do not owe fiduciary duties to the shareholders while ignoring the reality that their clients do owe fiduciary duties;
- such firms also issue corporate governance ratings for public companies, use those corporate governance ratings in formulating their voting recommendations for or against a company, and provide consulting services to companies to assist in raising their corporate governance ratings; and
- there are conflicts of interest.

S.B. 2337 seeks to address these issues by setting out provisions relating to the regulation of proxy advisory services and by providing for the enforcement of its provisions under the Deceptive Trade Practices-Consumer Protection Act.

## CRIMINAL JUSTICE IMPACT

It is the committee's opinion that this bill does not expressly create a criminal offense, increase the punishment for an existing criminal offense or category of offenses, or change the eligibility of a person for community supervision, parole, or mandatory supervision.

## RULEMAKING AUTHORITY

It is the committee's opinion that this bill does not expressly grant any additional rulemaking authority to a state officer, department, agency, or institution.

## ANALYSIS

S.B. 2337 amends the Business Organizations Code to establish that, for purposes of the disclosure of nonfinancial proxy voting services to prevent fraud or deceit under the bill's provisions, a proxy advisory service is not provided solely in the financial interest of the shareholders of a company if the service:
- is wholly or partly based on one or more nonfinancial factors, including a commitment, initiative, policy, target, or subjective or value-based standard based on the following:

89R 32099-D                                                                                                            25.140.1138

- o an environmental, social, or governance (ESG) goal, factor, or investment principle;
- o diversity, equity, or inclusion (DEI), including any attempt to provide preferential treatment based on characteristics protected under Labor Code provisions relating to employment discrimination;
- o a social credit or sustainability factor or score; or
- o membership in or commitment to an organization or group that wholly or partly bases its evaluation or assessment of a company's value over any period on nonfinancial factors; or
- involves providing a voting recommendation with respect to a shareholder-sponsored proposal that:
  - o is inconsistent with the voting recommendation of the board of directors or a board committee composed of a majority of independent directors; and
  - o subject to the bill's provisions, does not include a written economic analysis of the financial impact on shareholders of the proposal.

S.B. 2337 requires a proxy advisor who provides a proxy advisory service that is not provided solely in the financial interest of the shareholders of a company to do the following:
- include a conspicuous disclosure to each shareholder or entity or other person acting on behalf of a shareholder receiving the service that:
  - o states that the service is not being provided solely in the financial interest of the company's shareholders because it is based wholly or partly on one or more nonfinancial factors; and
  - o briefly explains the basis of the proxy advisor's advice and recommendation;
- immediately provide a copy of the disclosure to the company that is the subject of the service; and
- publicly and conspicuously disclose on the home or front page of the proxy advisor's publicly accessible website that the advisor's proxy advisory services include advice and recommendations that are not based solely on the financial interest of shareholders.

The bill requires the written economic analysis under the bill's provisions to include the following:
- the short-term and long-term economic benefits and costs of implementing the shareholder-sponsored proposal, as written;
- an analysis of whether the proposal is consistent with the investment policy of the client;
- the projected quantifiable impact of the proposal, if adopted, on the investment returns of the client; and
- an explanation of the methods and processes used to prepare the economic analysis.

S.B. 2337 requires a proxy advisor who provides to different clients who have not expressly requested services for a nonfinancial purpose either advice or a recommendation on how to vote on a proxy or company proposal that is materially different to do the following:
- if applicable, comply with disclosure requirements for nonfinancial proxy advisor services established under the bill's provisions;
- notify the following persons, in writing or by electronic means, of the conflicting advice or recommendation:
  - o each shareholder receiving the advice or recommendation;
  - o each entity or other person receiving the advice or recommendation on behalf of a shareholder;
  - o the company that is the subject of the company or proxy proposal; and
  - o the attorney general; and
- disclose which of the conflicting advice or recommendations is provided solely in the financial interest of the shareholders and supported by any specific financial analysis performed or relied on by the advisor.

The bill defines "materially different," with respect to advice or a recommendation on how to vote on a company proposal or proxy proposal, as simultaneously advising or recommending

89R 32099-D                                                                                                           25.140.1138

2

that one or more clients vote for the proposal and one or more clients vote against the proposal or that one or more clients vote for a nominee for a company's governing authority and one or more clients vote against or abstain from voting for the same nominee.

S.B. 2337 establishes that a violation of the bill's provisions is a deceptive trade practice under the Deceptive Trade Practices-Consumer Protection Act and is actionable under that act's provisions relating to restraining orders. The bill authorizes an affected party to bring an action seeking a declaratory judgment or injunctive relief under the Uniform Declaratory Judgments Act against a proxy advisor who violates the bill's provisions. The bill establishes that, for such purposes, an "affected party" includes the following:
- the recipient of proxy advisory services provided by the proxy advisor;
- the company that is the subject of the proxy advisory services; or
- any shareholder of that company.

The bill requires the plaintiff, not later than the seventh day after the date on which such an action is brought, to provide notice to the attorney general, who may intervene in the action.

S.B. 2337 defines the following terms for purposes of the bill's provisions:
- "company" as a publicly traded, for-profit corporation, limited liability company, partnership, or other business entity that is organized or created under Texas law or that has its principal place of business in Texas;
- "company proposal" as a proposal made by a company that is included in the company's proxy statement, including a proposal regarding director nominations or elections, executive compensation, corporate transactions and structure, auditor selection, or similar measures;
- "proxy advisor" as a person who, for compensation, provides a proxy advisory service to shareholders of a company or to other persons with authority to vote on behalf of shareholders of a company;
- "proxy advisory service" as any of the following services that are provided in connection with or in relation to a company:
  - advice or a recommendation on how to vote on a proxy proposal or company proposal;
  - proxy statement research and analysis regarding a proxy proposal or company proposal;
  - a rating or research regarding corporate governance; or
  - development of proxy voting recommendations or policies, including establishing default recommendations or policies;
- "proxy proposal" as a proposal made by a company's shareholder that is included in the company's proxy statement, including the nomination of a director; and
- "shareholder" as including a shareholder, unitholder, limited partner, or other equity owner of a company.

S.B. 2337 applies only to a proxy advisory service provided on or after the bill's effective date.

S.B. 2337 sets out the following legislative findings:
- when shareholders in Texas hire professionals to provide advice in the exercise of their rights as shareholders, the shareholders expect that service to be performed in their financial interest as shareholders, and professionals who are hired by shareholders to provide that service and who deviate from that expectation must clearly disclose that fact;
- there is a particular need for disclosures for proxy voting advice because that advice is often provided for hundreds or thousands of shareholder votes each year and based on lengthy policies that contain general statements but do not explain whether or how the policy provisions will maximize returns for investors for any particular company or shareholder vote;
- proxy advisors:

- - have recommended votes based on environmental, social, or governance (ESG) investing, diversity, equity, or inclusion (DEI), and social credit or sustainability scores; and
  - have not conducted financial analyses before making such recommendations despite having proxy voting policies claiming that the purpose of the recommendation is maximizing and protecting shareholder value;
- requiring proxy advisors to provide clear, factual disclosures when the advisors recommend casting a vote for nonfinancial reasons or provide conflicting advice to multiple clients who seek to maximize financial returns is necessary to prevent fraudulent or deceptive acts and practices in Texas; and
- a company that is the subject of a shareholder proposal may have information regarding whether the proposal is in the shareholder's financial interests or regarding the costs of the proposal, and notice would allow the company to provide relevant information to shareholders that may prevent fraudulent or deceptive practices associated with proxy advisors making recommendations for nonfinancial reasons.

### EFFECTIVE DATE

July 1, 2025, or, if the bill does not receive the necessary vote, September 1, 2025.