# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| GLASS, LEWIS & CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEN PAXTON, *in his Official Capacity as Attorney General of Texas,* | ) | |
| | ) | Civil Action No. 25-cv-01153-ADA |
| Defendant; | ) | |
| | ) | |
| THE TEXAS STOCK EXCHANGE and THE TEXAS ASSOCIATION OF BUSINESS, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |
| | ) | |

## OPPOSED EMERGENCY MOTION OF THE TEXAS STOCK EXCHANGE AND THE TEXAS ASSOCIATION OF BUSINESS TO INTERVENE AS DEFENDANTS

## Expedited Briefing Requested

## TABLE OF CONTENTS

**Page**

INTRODUCTION.................................................................................................................2

BACKGROUND.................................................................................................................6

ARGUMENT......................................................................................................................8

I.      Proposed Intervenors are entitled to intervene as a matter of right............................8

         A.    Proposed Intervenors' motion to intervene is timely.......................................8

         B.    Proposed Intervenors' interest in upholding SB 2337, including the private right of action, is sufficient for intervention under Rule 24(a)(2)................................................................................................... 10

         C.    If Proposed Intervenors cannot intervene, their interests will be impaired....................................................................................................... 11

         D.    Proposed Intervenors' interests are not adequately represented by the existing parties........................................................................................... 12

II.     In the alternative, the Court should permit intervention under Rule 24(b). .......................... 15

CONCLUSION................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page**

CASES

*Alvarez v. Singh*,
No. EP-18-CV-00101-FM, 2018 WL 4178332 (W.D. Tex. June 15, 2018) ...................................15

*Edwards v. City of Houston*,
78 F.3d 983 (5th Cir. 1996).........................................................................................................9

*Hanover Ins. Co. v. Superior Lab. Servs., Inc.*,
179 F. Supp. 3d 656 (E.D. La. 2016).........................................................................................17

*Heaton v. Monogram Credit Card Bank of Georgia*,
297 F.3d 416 (5th Cir. 2002)......................................................................................................8

*Institutional Shareholder Services Inc. v. Ken Paxton*,
No. 1:25-cv-01160..................................................................................................................17

*La Union del Pueblo Entero v. Abbott*,
29 F.4th 299 (5th Cir. 2022) ......................................................................................................8

*LED Wafer Sols. LLC v. Samsung Elecs. Co.*,
No. W-21-CV-00292-ADA, 2021 WL 5450145 (W.D. Tex. Nov. 22, 2021) .............................9, 15

*Logan v. Zimmerman Brush Co.*,
455 U.S. 422 (1982)................................................................................................................10

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)................................................................................................................16

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
No. 5:21-cv-071-H, 2022 WL 974335 (N.D. Tex. Mar. 31, 2022).............................................17

*New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*,
732 F.2d 452 (5th Cir. 1984)....................................................................................................16

*Second Baptist Church v. City of San Antonio*,
No. 5:20-CV-29-DAE, 2020 WL 6821324 (W.D. Tex. Apr. 17, 2020) ......................................16

*Sierra Club v. Fed. Emergency Mgmt. Agency*,
No. CIV. A. H-07-0608, 2008 WL 2414333 (S.D. Tex. June 11, 2008) .......................................16

*Sierra Club v. Glickman,*
    82 F.3d 106 (5th Cir. 1996)................................................................................................13

*Texas v. United States,*
    805 F.3d 653 (5th Cir. 2015)........................................................................................ 10, 12

*TOT Power Control, S.L. v. AT&T Mobility LLC,*
    No. 6:21-CV-00107-ADA, 2021 WL 4712691 (W.D. Tex. Oct. 8, 2021) .........................9

*Uniloc 2017 LLC v. AT&T Mobility LLC,*
    No. 2:18-CV-00514-JRG, 2019 WL 1773117 (E.D. Tex. Apr. 23, 2019).........................8

*Wal-Mart Stores, Inc. v. Tex. Alcoholic Bev. Comm'n,*
    834 F.3d 562 (5th Cir. 2016).........................................................................8, 10, 11, 13

*X-Drill Holdings Inc. v. Jack-Up Drilling Rig SE 83,*
    320 F.R.D. 444 (S.D. Tex. 2017) ...................................................................................10

## STATUTES

Employee Retirement Income Security Act of 1974 ..................................................................3

## OTHER AUTHORITIES

Senate Bill 2337, Act of June 20, 2025, 89th Leg., R.S., 2025 Tex. Sess..........................passim

Fed. R. Civ. P. 24 ................................................................................................................passim

The Texas Stock Exchange ("TXSE") and the Texas Association of Business ("TAB") (together, "Proposed Intervenors") have a substantial interest in commonsense regulation of proxy advisory services provided to institutional investors—including endowments, pension funds, retirement systems, foundations, and hedge funds—that collectively manage hundreds of millions of shares in companies headquartered in Texas and incorporated under Texas law. Proxy advisors represent that their advice and recommendations are provided in the financial best interests of shareholders. But, in reality, that advice is replete with false and misleading statements, is not grounded in any economic analysis, and is not aimed at maximizing shareholder value. Instead, it frequently reflects the proxy advisory firms' subjective interpretations of current social and political trends, to the detriment of shareholder value.

Proxy advisory services were essentially unregulated until the passage of SB 2337. ISS and Glass Lewis consistently have fought against regulation by the SEC, and therefore, regulation of their practices is left to the states. As a result, without the regulation challenged here, Texas public companies—including TXSE's prospective listees and TAB's members—and their shareholders will continue to be harmed by false and misleading proxy advice. This advice undermines shareholder value; degrades Texas's business environment; and impedes TXSE's and TAB's efforts to attract companies to Texas, and in TXSE's case, to its exchange. Proposed Intervenors thus move for leave to intervene as defendants as a matter of right, or in the alternative, permissively, under Federal Rule of Civil Procedure 24. Proposed Intervenors respectfully request the Court to order expedited briefing on this motion so that it may be decided in time for them to participate in the hearing on Plaintiff's Motion for Preliminary Injunction set for August 28, 2025.

## INTRODUCTION

When people invest their hard-earned savings in Texas companies, they trust that shareholder matters are being decided in a way that promotes their long-term financial interests. Pension funds, mutual funds, and other institutional investors who manage these important investments regularly receive, rely on, and follow advice from proxy advisory firms about how to vote on important matters of shareholder concern. But for too long, proxy advisors have provided—without transparency or disclosure—false and conflicted recommendations promoting policy and ideological agendas that are not premised on financial factors that increase shareholder value. Proxy advisors have even recommended that investors vote *against* companies reincorporating in Texas's business-friendly environment, even though such moves are often in the *company's* financial best interest—if not in the proxy advisors', as Texas is the only state to meaningfully regulate them.

The practical reality is that the proxy advisors' recommendations are often made according to their idiosyncratic preferences and not on what helps grow Texas public companies and their shareholders' savings. Proxy advisory firms are entitled to offer recommendations based on their views of policies they believe serve the broader public interest, including those related to social issues. But they are not entitled to lie about the basis for those recommendations. Proxy advisors represent that their advice maximizes shareholder value, and institutional investors rely on that representation. Thus, it is critical that proxy advisors clearly disclose when their recommendations are not grounded in financial or economic considerations. Proxy advisors themselves have conceded that some of their recommendations are not based on financial analysis, and their opaque methodologies often obscure from investors—and companies—the actual basis for those recommendations. Nevertheless, proxy advisors have thus far evaded meaningful regulation.

To remedy this issue and to promote truthful statements in the proxy advisor industry, the Texas Legislature recently enacted and Governor Abbott signed Senate Bill 2337, Act of June 20,

2025, 89th Leg., R.S., 2025 Tex. Sess. Law Serv. Ch. 1153 ("SB 2337"), which applies to proxy advice about companies incorporated or headquartered in Texas, as well as companies that have "made a company proposal to become a [Texas] entity." *See* SB 2337 Sec. 6A.001(1). SB 2337 does not dictate or restrict the recommendations that proxy advisors can give or even the factors they use to formulate their advice. Instead, it simply provides that if a proxy advisor's advice is based on non-financial factors, the proxy advisor must be transparent and honest about that.

To that end, SB 2337 requires, *inter alia*, that proxy advisors provide factual disclosures to investors when their proxy advice is based on non-financial factors, notify the subject companies and the Texas Attorney General in certain circumstances, and provide written economic analysis for certain of their recommendations. *See* SB 2337 Sec. 6A.101 and 6A.102. If a proxy advisor violates the statute, SB 2337 not only provides for enforcement by the Attorney General, but also gives the company that is the subject of the advice a private right of action to seek injunctive and declaratory relief against the proxy advisor. *See* SB 2337 Sec. 6A.201 (Attorney General Enforcement) and Sec. 6A.202(b) (Private Right of Action).

Glass Lewis—one of two proxy advisors that collectively control roughly 97%[1] of the proxy advisor market—sued the Attorney General to prevent enforcement of SB 2337, asking the Court to invalidate it because it allegedly violates the First Amendment, is unconstitutionally vague, infringes on Glass Lewis's freedom of association, and is preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). Dkt. 1.[2] But Glass Lewis is wrong on all counts. SB 2337 prevents

---

[1] The Wall Street Journal Editorial Board, *Cracking the Proxy Advisory Duopoly*, THE WALL STREET JOURNAL (July 12, 2023), https://tinyurl.com/49uxmezk. ("Glass Lewis and ISS, both foreign-owned, boast outsize clout in U.S. corporate elections and make up an estimated 97% of the proxy advisory market."). *See also* Press Release, U.S. House Comm. On Fin. Servs., *Capital Markets Subcommittee Examines Market Influence by Proxy Advisory Firms* (Apr. 29, 2025), https://tinyurl.com/57z8hwes.

[2] The Court can take judicial notice of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).

proxy advisors from disseminating misleading recommendations about Texas companies that are unsupported by financial analysis. *See* SB 2337 § 1. Public companies and their shareholders deserve nothing less.

Proposed Intervenors have an interest in the subject of this action for several reasons. *First*, Proposed Intervenors are beneficiaries of the law because it is designed to prevent proxy advisors from speaking falsely about matters of corporate governance that directly impact the Texas companies that TXSE and TAB represent and those companies' shareholders. *Second*, SB 2337 provides notification rights *and* a private right of action for public companies headquartered or incorporated in Texas, which undoubtedly includes certain of TXSE's future listees and TAB's members. *Third*, Proposed Intervenors have an interest in upholding SB 2337 because both invested resources to urge the Texas Legislature to pass it and the Texas Governor to sign it.

Because Glass Lewis seeks to invalidate and prevent the Attorney General from enforcing the statute, a disposal of this action in favor of Glass Lewis would, as a practical matter, impair those interests. Moreover, although the Attorney General is vigorously defending the law, he may not fully represent the same interests TXSE and TAB have because (1) he makes different arguments under the First Amendment; (2) he has asserted governmental defenses as a State official that would resolve this case in his favor without reaching the merits, leaving the interests of Proposed Intervenors unprotected; (3) he does not have the same private right of action that affected companies do; and (4) he must focus on the broader interests of the public, not the specific, narrower interests of public companies responsive to their shareholders.

Finally, Proposed Intervenors have a deep understanding of the facts on the ground. Year after year, Texas public companies are directly impacted by proxy advisors' dissemination of opaque, nonfinancial recommendations that falsely masquerade as maximizing shareholder value. Given that proxy advisors make recommendations to investors just weeks before a company's annual meeting,

companies have little time to refute the recommendations and correct the false information in the marketplace. And Glass Lewis does not provide subject companies with reports as a matter of course. Thus, if a subject company does not purchase *each* Glass Lewis report (which are only available *after* they are distributed to investors), it has no opportunity to correct or rebut the reports' false statements. Moreover, because institutional investors rely on proxy advisors to discharge their fiduciary duties and have been told that the proxy advisors' advice is in the best financial interest of shareholders, they often are unwilling to vote contrary to a Glass Lewis recommendation.

Proposed Intervenors are deeply knowledgeable about proxy advisors' dealings with Texas public companies, the impact of proxy advisors' reports on those companies and their shareholders, and how SB 2337's disclosure requirements lawfully regulate proxy advisory services for the benefit of companies and their shareholders. Thus, Proposed Intervenors are uniquely positioned to develop a factual record that will aid the Court's resolution of the important issues in this case.

TXSE and TAB therefore meet the Rule 24(a)(2) requirements for intervention as of right. They also satisfy Rule 24(b)'s standard for permissive intervention. Their motion is timely. Their interest in defending SB 2337's notification and disclosure requirements and the private right of action unquestionably shares "common question[s] of law or fact" with the main action brought by Glass Lewis. And their intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b). Proposed Intervenors have conferred with the Texas Attorney General, who does not oppose their intervention, and with Plaintiff, who does oppose it.[3]

Proposed Intervenors attach to this Motion (i) the Declaration of Shane Swanson ("Swanson Decl.") as Exhibit A, (ii) the Declaration of Glenn Hamer ("Hamer Decl.") as Exhibit B, (iii) a proposed Answer as Exhibit C, (iv) a proposed Response in Opposition to ISS's and Glass Lewis's

---

[3] In compliance with the Local Court Rules for the Western District of Texas, counsel for Proposed Intervenors conferred with the parties about this Motion. Plaintiff opposes the Motion, and Defendant supports it.

Motions for Preliminary Injunction as Exhibit D, and (v) the Declaration of Mark Rasmussen in Support of Response in Opposition to ISS's and Glass Lewis's Motion for Preliminary Injunction as Exhibit E.

**BACKGROUND**

*TXSE.* Pending approval of its Form 1 application with the Securities and Exchange Commission ("SEC"), TXSE will be a national securities exchange based in Dallas, Texas, with a goal of "bringing increased competition, transparency, and alignment to the U.S. equity markets and establishing Texas as a global financial powerhouse." *Statement by the Texas Stock Exchange on publication of its Form 1 by the U.S. Securities and Exchange Commission*, TEXAS STOCK EXCHANGE (Apr. 4, 2025), https://tinyurl.com/yhy7pw4e; Declaration of Shane Swanson ("Swanson Decl."), ¶¶ 5-6. TXSE will serve public companies in Texas and nationwide and will set standards for listed companies to "maintain the quality, transparency and integrity" of its market and to "prevent fraudulent and manipulative acts and practices."[4] Swanson Decl., ¶¶ 7-8. Thus, TXSE represents the interests of companies *and* investors by advocating for truthful shareholder voting advice in the Texas financial markets. *Id.* at ¶ 9. As part of its substantial interest in Texas's corporate regulatory environment, TXSE advocated in favor of SB 2337 and numerous other bills modernizing Texas corporate law during the 89th legislative session to promote an environment that attracts companies to its exchange and to Texas. *See Governor Abbot Signs Pro-Growth Business Legislation Into Law*, OFFICE OF THE TEXAS GOVERNOR (May 14, 2025), https://tinyurl.com/bp8bxtf5; Swanson Decl. ¶ 10, Ex. 1.

*TAB.* TAB is a state chamber of commerce representing more than 1,500 businesses of every size and industry in Texas. Declaration of Glenn Hamer ("Hamer Decl."), ¶ 5. On behalf of its members, TAB works in a bipartisan manner to vigorously protect Texas's pro-business climate,

---

[4] Rules of TXSE, Texas Stock Exchange (Apr. 2, 2025), at 212, https://www.sec.gov/files/rules/other/2025/txse-form-1-exhibit-b1.pdf (quoting TXSE Rule 16.101).

6

including by advocating "for smart, forward-looking" legislation "that ensure[s] Texas remains the gold standard for doing business." *Texas Association of Business Celebrates Major Wins for Business as 89th Legislative Session Concludes*, TEXAS ASSOCIATION OF BUSINESS (last visited Aug. 22, 2025), https://tinyurl.com/mpkjx68r; Hamer Decl., ¶¶ 8-9. Indeed, TAB has championed SB 2337, counting the Act as a "Top Business Win" of the 89th Legislative session because it promotes truthful disclosure from proxy advisory firms that fosters a "a fairer and more predictable business environment, supporting more informed shareholders and strengthening investor confidence to uphold good corporate governance practices in Texas." *89th Legislative Session Results*, TEXAS ASSOCIATION OF BUSINESS (last visited Aug. 22, 2025), https://tinyurl.com/46fd2kre; Hamer Decl., ¶¶ 10-11. And the Act directly benefits TAB's members. *Id.* at ¶¶ 12-13.

TAB's members include public companies—from Fortune 500 companies to smaller public corporations—that are incorporated or headquartered in Texas. *See About Us*, TEXAS ASSOCIATION OF BUSINESS (last visited Aug. 22, 2025), https://www.txbiz.org/about-us/; Hamer Decl., ¶ 6. These public-company members are the subject of the proxy advisory services regulated by SB 2337 and thus, benefit from the disclosure and notification requirements imposed by the law. *See* SB 2337 Sec. 6A.001(1), 6A.101, and 6A.102. Moreover, these members are "affected part[ies]" and, beginning on September 1, will have a private right of action against proxy advisors like Plaintiff for violations of SB 2337. *See* SB 2337 Sec. 6A.202. Further, and as described in Proposed Intervenors' Response in Opposition to ISS's and Glass Lewis's Motions for Preliminary Injunction, Texas public companies— including TAB's members—are also the recipients of "proxy advisory services" as defined under SB 2337, as they have little choice but to pay proxy advisors, including Glass Lewis, for consulting advice on how to obtain better scores and more favorable investor recommendations from those proxy advisors. Hamer Decl., ¶ 7.

*Procedural Background*. This case is still in its infancy. Plaintiff filed its Complaint only a

few weeks ago, and the Attorney General filed a Motion to Dismiss and a response to the Motion for

Preliminary Injunction on Friday, August 15, 2025. Proposed Intervenors filed this Motion to

Intervene—accompanied by a proposed Response to the Motion for Preliminary Injunction—only a

week later.

## ARGUMENT

Federal Rule of Civil Procedure 24 governs intervention. It allows parties to intervene (1) as

a matter of right, or (2) permissively. Proposed Intervenors satisfy both standards.

### I.   Proposed Intervenors are entitled to intervene as a matter of right.

Under Rule 24(a)(2), a party is entitled to intervene as a matter of right when: (1) the

application is timely; (2) the potential intervenor has an interest in the subject matter of the action;

(3) the potential intervenor's interest may be impaired or impeded absent intervention; and (4) the

existing parties do not adequately represent the potential intervenor's interest. Fed. R. Civ. P. 24(a)(2);

*Heaton v. Monogram Credit Card Bank of Georgia*, 297 F.3d 416, 422 (5th Cir. 2002); *see also La Union del

Pueblo Entero v. Abbott*, 29 F.4th 299, 305 (5th Cir. 2022) ("*LUPE*").

"Federal courts should allow intervention where no one would be hurt and the greater justice

could be attained." *Heaton*, 297 F.3d at 422 (quoting *John Doe No. 1 v. Glickman*, 256 F.3d 371, 375 (5th

Cir. 2001)). Rule 24(a)(2) should be "liberally construed, with doubts resolved in favor of the proposed

intervenor." *Uniloc 2017 LLC v. AT&T Mobility LLC*, No. 2:18-CV-00514-JRG, 2019 WL 1773117,

at *1 (E.D. Tex. Apr. 23, 2019) (internal quotation marks and citations omitted). As shown below,

Proposed Intervenors satisfy each of Rule 24(a)(2)'s requirements.

### A.   Proposed Intervenors' motion to intervene is timely.

It cannot be disputed that Proposed Intervenors' motion is timely. A court's timeliness inquiry

must be "contextual; absolute measures of timeliness should be ignored." *Wal-Mart Stores, Inc. v. Tex.

Alcoholic Bev. Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205

(5th Cir. 1994)). In assessing timeliness, courts consider: (1) the length of time the proposed intervenor knew or reasonably should have known of its interest in the case; (2) the extent of the prejudice the existing parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case; (3) the extent of prejudice that the would-be intervenor may suffer if not permitted to intervene; and (4) the existence of any other unusual circumstances. *Edwards v. City of Houston*, 78 F.3d 983, 1000 (5th Cir. 1996) (internal citation omitted).

Each of these factors weighs in favor of timeliness. This case has just begun. Glass Lewis initiated this action mere weeks ago. Dkt. 1. The Attorney General entered his first appearance—and filed its responsive pleading—only a week ago.[Dkts. 13, 14. Proposed Intervenors have requested expedited briefing so that their motion will be resolved in advance of the preliminary injunction hearing set for August 28. Under such circumstances, Proposed Intervenors' motion is timely and the existing parties will suffer no prejudice since Proposed Intervenors acted speedily. *See, e.g.*, *LED Wafer Sols. LLC v. Samsung Elecs. Co.*, No. W-21-CV-00292-ADA, 2021 WL 5450145 (W.D. Tex. Nov. 22, 2021) (granting motion to intervene filed before discovery began and recognizing that intervenor had moved in the early stages of the case, shortly after recognizing its interests were at stake) (Albright, J.); *TOT Power Control, S.L. v. AT&T Mobility LLC*, No. 6:21-CV-00107-ADA, 2021 WL 4712691 (W.D. Tex. Oct. 8, 2021) (granting motion to intervene filed nearly four months after complaint) (Albright, J.).

Further, although the existing parties will not be prejudiced if this motion is granted, Proposed Intervenors will suffer significant harm if it is denied: As explained below, they have a substantial interest in upholding SB 2337, including the private right of action, which may be inadequately protected without intervention.

**B.      Proposed Intervenors' interest in upholding SB 2337, including the private right of action, is sufficient for intervention under Rule 24(a)(2).**

Proposed Intervenors have a strong interest relating to the subject of this action. *See* Fed. R. Civ. P. 24(a)(2). "The Fifth Circuit has observed that 'the interest test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.'"  *X-Drill Holdings Inc. v. Jack-Up Drilling Rig SE 83*, 320 F.R.D. 444, 449 (S.D. Tex. 2017) (quoting *Sierra Club*, 18 F.3d at 1207). Whether a movant has an interest sufficient to warrant intervention as a matter of right turns on "whether the intervenor has a stake in the matter that goes beyond a generalized preference that the case come out a certain way." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015).

Here, Proposed Intervenors have the requisite interest. TXSE is developing a Texas-based stock exchange that will soon list and regulate public companies, including companies with rights under SB 2337. And TAB moves to intervene on behalf of its Texas public-company members, each of which is expressly defined by SB 2337 as an "affected party." SB 2337 Sec. 6A.202(a)(2); *see also About Us*, Texas Association of Business (last visited Aug. 22, 2025), https://www.txbiz.org/about-us/; Hamer Decl., . Thus, Proposed Intervenors' public-company members and future listees (as well as their shareholders) are the intended beneficiaries of SB 2337. *Wal-Mart*, 834 F.3d at 566 (5th Cir. 2016) (holding that the "beneficiaries of [a] regulatory system" were entitled to intervention as of right); *see also* SB 2337 Sec. 6A.202(b) and 6A.101(b)(2).

Further, SB 2337 confers notification rights on these companies and empowers them with a private right of action to address violations. *See* SB 2337 Secs. 6A.101(b)(2), 6A.102(b)(2)(C), and 6A.202(b). The private right of action is a property interest, "the most elementary type of right that Rule 24(a) is designed to protect." *Texas*, 805 F.3d at 658 (cleaned up). *See also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 428 (1982) ("[A] cause of action is a species of property protected by the

Fourteenth Amendment's Due Process Clause.") (citing *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950)); 6 James W. Moore, *et al.*, Moore's Federal Practice § 24.03(2)(a) ("Motions to intervene in which the proposed intervenor advances a clear property interest present the easiest cases for intervention."). Of course, if SB 2337's disclosure requirements are deemed unconstitutional, the right of action enjoyed by Texas companies would be of little practical use.

SB 2337 also serves Proposed Intervenors' interests in the fair and rigorous regulation of proxy advisory services about Texas public companies and their investors, in order to promote an equitable and transparent financial market in Texas. Indeed, both Proposed Intervenors expended resources to advocate for the passage of SB 2337. This, too, is a sufficient interest for intervention as of right. *See Wal-Mart*, 834 F.3d at 567 ("[C]ivic organizations that successfully petition for adoption of a law may intervene to vindicate their 'particular interest' in protecting that law." (citing *City of Houston v. Am. Traffic Solutions, Inc.,* 668 F.3d 291, 294 (5th Cir. 2012)). Furthermore, as an SEC-regulated exchange, TXSE will develop governance and listing rules for Texas public companies that are members of the exchange. It therefore has a direct interest in the benefits of SB 2337's regulation of proxy advisory services so that its listees and investors can avail themselves of truthful proxy advisory services. *See Wal-Mart*, 834 F.3d at 566-569 (holding that organization's "interest in protecting its legally prescribed market," gave it "a legally protectable interest"). Thus, both TXSE and TAB have the requisite interest to intervene as of right.

### C.    If Proposed Intervenors cannot intervene, their interests will be impaired.

Allowing this action to proceed without Proposed Intervenors would impair their ability to protect their interests. Proposed Intervenors "need only show that if they cannot intervene, there is a possibility that their interest could be impaired or impeded." *LUPE*, 29 F. 4th at 307 (citing *Brumfield v. Dodd*, 749 F.3d 339, 344–45 (5th Cir. 2014)). Proposed Intervenors meet this minimal burden.

Glass Lewis seeks a declaration that the statute is facially unconstitutional and preempted by

federal law, as well as an injunction preventing its enforcement by the Attorney General. *See* Dkt. 1. A ruling in favor of Glass Lewis would vitiate the law's substantive provisions, including public companies' notification rights. It would also remove entirely the threat of Attorney General enforcement and could impede private enforcement, thus allowing proxy advisors to continue making misleading recommendations unsupported by financial analysis and thereby degrading the market.

Without intervention, there is a real possibility that Proposed Intervenors' public-company members and future listees will be deprived of the practical ability to avail themselves of the disclosure and notification protections of SB 2337, enforced through the statute's private right of action. *See, e.g.*, *LUPE*, 29 F.4th at 307 (holding that Republican Party Committees had established the impairment requirement for intervention as of right when the challenged statute granted rights that could be taken away if the plaintiffs prevailed).

**D.    Proposed Intervenors' interests are not adequately represented by the existing parties**.

Finally, no existing party adequately represents Proposed Intervenors' interests. This element of Rule 24(a)(2) presents a "minimal" burden. *Texas*, 805 F.3d at 661–62. The movant need only show that "the representation of his interest 'may be' inadequate." *Id.* at 661 (quoting *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972)). Proposed Intervenors do not doubt that the Attorney General will defend vigorously his right to enforce SB 2337 against Glass Lewis on behalf of all Texans *in the public interest*. The statute gives the Attorney General civil enforcement powers on behalf of the public, including the ability to impose monetary penalties. But Proposed Intervenors seek to defend the more specific interests of public companies to whom SB 2337 grants notification rights and a private right of action for declaratory and injunctive relief.

As a State official, the Attorney General represents the public interest of all Texans, and he has no role in defending the specific interests represented by the Proposed Intervenors—interests the

12

Legislature expressly protected through the private right of action. *See, e.g., Wal-Mart*, 834 F.3d at 569 (concluding that trade association's interests might be inadequately represented when its narrower interests in protecting its members' businesses diverged from State commission's broad public mission); *Sierra Club v. Glickman*, 82 F.3d 106, 110 (5th Cir. 1996) (federal agency did not adequately represent Texas's interests because the agency was obligated to represent all U.S. citizens while Texas had a narrower interest in representing only Texans). This is especially true here, where the statute gives the Attorney General his own remedies that are different from the ones it conferred on private parties affected by proxy advisory services.

Moreover, the Attorney General has asserted governmental defenses such as sovereign immunity and standing that do not reach the merits of plaintiff's claims and would not protect Proposed Intervenors if the case were decided on those grounds. *See, e.g.,* Dkt. 13-1 at 16-18 and Dkt. 14-1 at 16-18. As the Fifth Circuit has recognized, a ruling in favor of the Attorney General on non-merits governmental grounds could leave Proposed Intervenors "without recourse to protect their interests" in the statute's constitutionality, whereas they "would benefit from the finality and certainty of [the statute's] legality being resolved on the merits." *See LUPE*, 29 F.4th at 308–09 (allowing intervention as of right when State officials raised governmental defenses that did not apply to proposed intervenors). For example, a *non-merits* victory for the Attorney General would encourage Glass Lewis to present all the same constitutional *merits* arguments should it face a private suit under SB 2337.

To be sure, the Fifth Circuit has applied rebuttable presumptions in favor of adequate representation when the would-be intervenor has the same ultimate objective as a party to the lawsuit and when the putative representative is a governmental body or officer charged by law with representing the interests of the intervenor. *See Wal-Mart*, 834 F.3d at 569. But neither presumption applies here, or if either does, it has been rebutted for a number of reasons. *First*, Proposed Intervenors

make different First Amendment arguments from the Attorney General. As representatives of Texas public companies, Proposed Intervenors have a distinct interest in protecting *truthful* commercial speech and contend that the false and deceptive proxy advisor statements at issue here are simply not protected under the First Amendment. *Second*, the Attorney General's objective in defending SB 2337 would be satisfied by a victory based on governmental defenses, while Proposed Intervenors' objective—upholding SB 2337 on the merits—would not. *Third*, Proposed Intervenors seek to vindicate public companies' interests in a private cause of action that the Attorney General does not share. *Fourth*, the interests of publicly-traded companies that are negatively impacted by proxy advisory services that violate SB 2337 are narrower than the Attorney General's broad public mission.

All of these unique interests will not be fully represented unless Proposed Intervenors intervene in this case. *See id.* (granting intervention, even assuming any presumption applied, where trade group demonstrated an interest distinct from the government defendant's); *LUPE*, 29 F.4th at 308-309 (holding, even assuming any presumption applied, that it was rebutted by divergent interests that might result in inadequate representation).

Indeed, this case is substantially similar to *LUPE*, where the Fifth Circuit held that even assuming any presumption applied, it was rebutted by divergent interests that might result in inadequate representation. *LUPE*, 29 F.4th at 308-309. There, several Republican political committees sought to intervene to defend a Texas election law alongside the Attorney General. *Id.* at 304. The Fifth Circuit held they were entitled to intervene under Rule 24(a)(2), explaining that while "the Committees and the defendants have the same objective"—namely, "uphold SB 1"—"there are reasons to believe the Committees' interests are less broad than those of the governmental defendants, which *may* lead to divergent results." *Id.* at 308.

Specifically, in *LUPE*, as here, the Attorney General "vigorously contend[ed]" that the lawsuit "should be dismissed on sovereign-immunity and standing grounds" rather than resolved on "the

merits." *Id.* The movants, by contrast, "would benefit from the finality and certainty of" the law's "legality being resolved on the merits," which would simply resurface down in any private action brought by Proposed Intervenors' members. *Id.* at 309. Likewise, there, as here, Texas and its Attorney General "have many interests" that the movants "do not," as the former were "defending public interests while the intervenors sought to vindicate" narrower "partisan" interests. *Id.* The Fifth Circuit therefore concluded that although it "cannot say for sure that the state's more extensive interests will *in fact* result in inadequate representation, we can say that surely they might, which is all that Rule 24(a)(2) requires." *Id.* (cleaned up). The same is true here.[5]

Because Proposed Intervenors satisfy each element of Rule 24(a), their motion should be granted as a matter of right.

## II.     In the alternative, the Court should permit intervention under Rule 24(b).

Even if this Court does not grant intervention as a matter of right, Proposed Intervenors should nonetheless be permitted to intervene under Rule 24(b), which permits timely intervention by any movant who "has a claim or defense that shares with the main action a common question of law or fact," and whose intervention will not unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(1)-(3); *see also LED Wafer Sols. LLC*, 2021 WL 5450145 at *5 (Albright, J.) (granting permissive intervention as well as intervention as of right); *Alvarez v. Singh*, No. EP-18-CV-00101-FM, 2018 WL 4178332 at *2 (W.D. Tex. June 15, 2018)("District courts have broad discretion in considering motions for permissive intervention.") (internal quotations omitted).

As described above, Proposed Intervenors seek to defend SB 2337. Thus, their proposed

---

[5] *Louisiana v. Burgum* is not to the contrary:  In that case, the government's interests had not yet diverged from those of the industry group that sought to intervene. *See* 132 F.4th 918, 923 (5th Cir. 2025). As the Fifth Circuit explained, unlike cases where it was clear what "legal arguments" were on the table, the movant there did not even "know what litigation position or defenses" the government "will pursue." *Id.* Here, by contrast, divergent arguments are already evident for the reasons discussed in this motion. *See LUPE*, 29 F.4th at 308-309.

defenses share common questions of both law and fact with the original action. Both implicate the conduct of proxy advisors, the validity of SB 2337, and enforcement of the law's requirements. And intervention would not unduly delay or prejudice the adjudication of the original parties' rights. As noted, Proposed Intervenors bring this motion in the earliest phase of litigation. Permissive intervention is therefore proper, and this Court should exercise its broad discretion to grant it. *See, e.g., Second Baptist Church v. City of San Antonio*, No. 5:20-CV-29-DAE, 2020 WL 6821324 at *6 (W.D. Tex. Apr. 17, 2020) ("[P]ermissive intervention is wholly discretionary with the court . . . [a]ccordingly, the Court in its broad discretion, grants the motion for permissive intervention") (internal quotation marks and citations omitted).

Beyond evaluating whether a proposed intervenor's claim(s) or defense(s) share common questions of law or fact, courts also consider whether the proposed intervenor "will significantly contribute to the full development of the underlying factual issues in the suit." *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 472 (5th Cir. 1984) (internal citation omitted); *see also Sierra Club v. Fed. Emergency Mgmt. Agency*, No. CIV. A. H-07-0608, 2008 WL 2414333, at *7 (S.D. Tex. June 11, 2008) (granting permissive intervention to private land developer who, unlike existing parties, could provide evidence of impact of federal flood map changes on private land development). Here, TXSE and TAB can provide a unique perspective that comes only from those directly impacted by the proxy advisors that SB 2337 seeks to regulate. Proposed Intervenors are intimately familiar with the harms that befall Texas's public companies when proxy advisors disseminate falsehoods, and they are well positioned to develop the underlying factual issues in the lawsuit.

If intervention is granted, Proposed Intervenors will be able to assist in developing facts demonstrating, *inter alia*, SB 2337's "plainly legitimate sweep"—as may be necessary to adjudicate Glass Lewis's facial First Amendment challenge. *Moody v. NetChoice, LLC*, 603 U.S. 707, 726 (2024) (remanding to the district court a case involving a facial First Amendment challenge where the "record

[was] underdeveloped"). Here, TXSE's future listees and TAB's members are the same Texas public companies who are the subject of the proxy advisors' misleading statements. Proposed Intervenors are thus in a unique position to assist the Court, and the Attorney General, in discovering the facts required to defend against Plaintiff's claims.

Courts further consider whether permissive intervention best serves judicial economy. *See, e.g.*, *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 5:21-cv-071-H, 2022 WL 974335 at *7 (N.D. Tex. Mar. 31, 2022) (permitting intervention and noting that intervention of parties with a common question of law or fact would "foster economy of judicial administration" by avoiding duplicative litigation on the same issue that would invariably cause "greater prejudice, expense, and delay" and require "duplicating their efforts spent in the present lawsuit.") (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977)); *Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, 179 F. Supp. 3d 656, 668 (E.D. La. 2016) (permitting intervention and noting that allowing claims with common nuclei of facts and law to be determined "in one proceeding while allowing all parties to be heard" served judicial economy).

Permitting intervention here would best serve judicial economy by resolving all defenses (governmental and merits) and considering all enforcement mechanisms (state enforcement and the private right of action) in a single lawsuit.[6] Moreover, Proposed Intervenors have no interest in cumulative or duplicative discovery and will coordinate case management with the parties to maximize efficiency. Further, if the Court determines that one, but not both, of TXSE and TAB is entitled to intervention as of right, the Court should permit the other organization to intervene under Rule 24(b), as TXSE and TAB will conduct all briefing and discovery jointly, and thus, participation of both will require no additional resources from the Court or any party.

---

[6] The issues presented in this case are substantially identical to those in the related case also before this Court—*Institutional Shareholder Services Inc. v. Ken Paxton*, No. 1:25-cv-01160—and Proposed Intervenors are likewise moving to intervene in that case.

Accordingly, in the alternative to mandatory intervention, this Court should grant permissive intervention under Rule 24(b).

## CONCLUSION

For these reasons, Proposed Intervenors respectfully request that the Court set an expedited briefing schedule and grant their motion to intervene.

Dated:  August 22, 2025                                 Respectfully submitted,


By:  */s/ Mark W. Rasmussen*
     Mark W. Rasmussen
     Attorney-in-charge
     Texas State Bar No. 24086291
     Sidney Smith McClung
     Texas State Bar No. 24083880
     Timothy M. Villari
     Texas State Bar No. 24125870
     JONES DAY
     2727 N. Harwood St., Suite 500
     Dallas, Texas 75201
     mrasmussen@jonesday.com
     smcclung@jonesday.com
     tvillari@jonesday.com
     Telephone: +1.214.220.3939
     Facsimile: +1.214.969.5100

     Noel J. Francisco (*pro hac vice* forthcoming)
     D.C. Bar No. 464752
     Brinton Lucas (*pro hac vice* forthcoming)
     D.C. Bar No. 1015185
     JONES DAY
     51 Louisiana Avenue, N.W.
     Washington, D.C. 20001-2113
     njfrancisco@jonesday.com
     blucas@jonesday.com
     Telephone: +1.202.879.3939
     Facsimile: +1.602.626.1700

     *Attorneys for Proposed Intervenor-Defendants the Texas Stock Exchange and the Texas Association of Business*

19

## CERTIFICATE OF CONFERENCE

I certify that Proposed Intervenors' counsel has conferred with Defendant Attorney General of Texas and counsel for Plaintiff on August 22, 2025.  Plaintiff opposes this Motion, and Defendant supports it.


*/s/ Mark W. Rasmussen*
Mark W. Rasmussen

**CERTIFICATE OF SERVICE**

I certify that on August 22, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Western District of Texas.

/s/ *Mark W. Rasmussen*
Mark W. Rasmussen