UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GLASS, LEWIS & CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEN PAXTON, *in his Official Capacity as Attorney General of Texas*, | ) ) ) | Civil Action No. 1:25-cv-01153-ADA |
| | ) | |
| Defendant, | ) | |
| | ) | |
| THE TEXAS STOCK EXCHANGE LLC and THE TEXAS ASSOCIATION OF BUSINESS, | ) ) ) | |
| | ) | |
| Intervenor-Defendants. | ) | |

**PLAINTIFF GLASS LEWIS' COMBINED RESPONSE TO INTERVENORS' AND DEFENDANT'S RULE 56(d) MOTIONS**

Yetter Coleman LLP
Bryce L. Callahan
State Bar No. 24055248
bcallahan@yettercoleman.com
Grant B. Martinez
State Bar No. 24104118
gmartinez@yettercoleman.com
Lily E. Hann
State Bar No. 24133836
lhann@yettercoleman.com
Jared LeBrun
State Bar No. 24144647
jlebrun@yettercoleman.com
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
(713) 632-8002 (fax)

*Attorneys for Plaintiff Glass, Lewis & Co., LLC*

# TABLE OF CONTENTS

Introduction ...................................................................................................................... 1

Background ....................................................................................................................... 1

Legal Standard ................................................................................................................. 2

Argument .......................................................................................................................... 3

I.    Materiality: Defendants completely fail to indicate how any emergent facts, if
      adduced, would influence the outcome of Glass Lewis' summary judgment
      motion. ..................................................................................................................... 3

      A.    The summary judgment motion established Glass Lewis' standing, and
            Defendants identify no specific facts that would influence standing. ................... 4

      B.    Lack of sovereign immunity is not disputed in the Rule 56(d) motions................. 6

      C.    Many analytical paths yield the conclusion that the Act violates the
            Constitution, and Defendants identify no specific facts that would
            influence those paths. ........................................................................................ 6

            1.    Vagueness path shows the Act violates the Constitution............................ 6

            2.    Viewpoint discrimination path shows the Act violates the
                  Constitution.......................................................................................... 8

            3.    Other paths lead to the Act's failure to satisfy strict scrutiny.................... 10

            4.    The *Book People* path shows the Act violates the Constitution. .............. 11

      D.    Remaining permanent injunctive factors are not disputed................................... 12

II.   Defendants' Rule 56(d) arguments lack merit. .................................................. 13

      A.    Defendants' arguments on false speech and fraud are immaterial. ..................... 13

            1.    Viewpoint discrimination *always* demands at least strict scrutiny. .......... 13

            2.    Compelled speech always draws First Amendment scrutiny. ................. 14

            3.    The Act does not target false *commercial* speech.................................... 15

      B.    The scope of discovery in other First Amendment cases does not control
            the dispositive issues here. ................................................................................ 17

      C.    The application of each provision of the Act to Glass Lewis is undisputed......... 18

      D.    First Amendment protection does not depend on ad hoc balancing. ................... 18

      E.    Vague assertions about a hypothetical deposition do not defeat summary
            judgment. ......................................................................................................... 19

III.  Diligence: Defendants did not diligently pursue depositions. ........................................ 20

Conclusion and Prayer ...................................................................................................... 20

## INTRODUCTION

Plaintiff Glass, Lewis & Co., LLC's ("Glass Lewis") summary judgment motion shows that there is no genuine dispute as to any material fact and that the Attorney General should be permanently enjoined from enforcing S.B. 2337 against Glass Lewis. ECF 60. Further discovery is not needed to resolve this case. The Court should deny Defendants' Motions Pursuant to Rule 56(d) to Defer or Deny Plaintiff's Motion for Summary Judgment. ECF 69, 70.

Remarkably, in asking the Court to defer or deny the summary judgment motion, Defendants barely engage with it. Defendants each cite the summary judgment motion a grand total of three times—with *zero* citations to, or discussion of, Glass Lewis' arguments for summary judgment. Failing to address those arguments is fatal to the Rule 56(d) motions.

Specifically, Defendants failed to satisfy their burden under Rule 56(d) to show how the facts they seek will influence the outcome of the summary judgment motion. Given that failure and the merits of the motion, Glass Lewis requests that the Court grant it summary judgment.

## BACKGROUND

On August 29, the Court set this case for trial on February 2, 2026, "as quickly as [the Court] can get to it." Hr'g Tr. at 137, ECF 37. No party objected to this trial date. Ten days later, discovery commenced pursuant to an agreed scheduling order. ECF 42, 47 (Joint Proposed Scheduling Order). Glass Lewis engaged in discovery in good faith—providing a list of potential deponents in its initial disclosures, timely responding to each request, answering interrogatories, and reviewing and producing thousands of documents. LeBrun Decl., ¶¶ 5-10. Over these two-and-a-half months, Defendants did not notice any depositions, nor did they confer on scheduling any depositions. *Id.* ¶ 13. Fact discovery closed November 19. ECF 47.

The following day, Glass Lewis moved for summary judgment. ECF 60. The analysis of the Act's constitutionality does not require an extensive factual record, and the motion does not

rely on one. For example, the motion shows that S.B. 2337 (the "Act") is unconstitutional because it engages in viewpoint discrimination—analysis that turns on the Act's text and legislative history, not any facts about Glass Lewis. Further, the Act is void for vagueness, and the vagueness analysis turns solely on the Act's text and its lack of meaning.

Defendants ignore these dispositive arguments—including saying *nothing* about vagueness or viewpoint discrimination—and run afoul of Rule 56(d). The Rule 56(d) motions each cite Glass Lewis' summary judgment motion just three times, with zero citations to its argument section.[1]

Rather than respond to Glass Lewis' arguments, Defendants recite a litany of discovery grievances. They lament the expedited schedule (that they agreed to), complain about the volume of Glass Lewis' document production (that they sought), and insist on depositions (that they never noticed). They fail to show how *any* discovery is connected to the summary judgment arguments or would influence the outcome of the pending summary judgment motion. The requested discovery is immaterial, and the Court can decide Glass Lewis' motion now.

## LEGAL STANDARD

"Rule 56 does not require that *any* discovery take place before summary judgment can be granted." *Mendez v. Poitevent*, 823 F.3d 326, 336 (5th Cir. 2016) (citation omitted). Under "Rule 56(d), deferring summary judgment and ordering discovery is appropriate *only if* the 'nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts *essential* to justify its opposition.'" *Id.* (quoting Fed. R. Civ. P. 56(d)) (emphasis added). Vague

---

[1] The Attorney General and Intervenors wrongly purport to incorporate by reference arguments made in other briefs. ECF 69 at 18; ECF 70 at 2-3. This is improper under both the Federal Rules and Local Rules. *See Davis v. City of Ft. Worth*, 2014 WL 12940678, at *3 (N.D. Tex. 2014) ("[T]he federal rules contemplate *only* that statements in *pleadings* may be adopted by reference. Attempted incorporation by reference of any other material may not be considered by the court.") (citing Fed. R. Civ. P. 10(c)); *see also* W.D. Tex. L.R. CV-7(C)(1) ("Any legal authority in support of a motion must be cited in the motion, and not in a separate brief."). This Court's page limits mean nothing if endless incorporation of separate briefs is permitted. Defendants' purported incorporation of other briefs should be rejected.

assertions about the need for additional discovery do not suffice. *See id.* The party resisting summary judgment must also have been diligent in its prior discovery efforts. *McKay v. Novartis Pharmaceutical Corp.*, 751 F.3d 694, 700 (5th Cir. 2014). District courts' rulings on Rule 56(d) motions are reviewed for abuse of discretion. *Id.*

Under Rule 56(d), a party seeking deferral "must show (1) why [it] needs additional discovery and (2) how that discovery will create a genuine issue of *material* fact." *January v. City of Huntsville*, 74 F.4th 646, 651 (5th Cir. 2023) (citation omitted) (emphasis added). Pointing to desired discovery does not suffice if the facts sought are immaterial to the outcome.

More specifically, the party seeking deferral "must 'set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion.'" *MDK Sociedad De Responsabilidad Limitada v. Proplant Inc.*, 25 F.4th 360, 366 (5th Cir. 2022) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). "If it appears that further discovery will not provide evidence creating a genuine issue of material fact, the district court may grant summary judgment." *Raby*, 600 F.3d at 561.

## ARGUMENT

### I.    Materiality: Defendants completely fail to indicate how any emergent facts, if adduced, would influence the outcome of Glass Lewis' summary judgment motion.

Glass Lewis' summary judgment motion thoroughly showed that no genuine dispute of material fact exists and that it is entitled to judgment as a matter of law on the following: Glass Lewis' standing; the Attorney General's lack of sovereign immunity; the merits of S.B. 2337's unconstitutionality—including multiple paths to conclude it violates the First Amendment and is void for vagueness; and the remaining factors favor a permanent injunction—irreparable harm, inadequate remedies at law, balance of harms, and public interest. *See* ECF 60 at 6-30. These

arguments are not discussed *anywhere* in the Rule 56(d) motions, which fail to show how the facts they seek would influence the outcome of the pending motion.

This Response will provide an overview of the arguments in the summary judgment motion and a section-by-section guide to the Rule 56(d) motions' failure to explain how the facts sought would somehow impact the dispositive arguments in the summary judgment motion.

### A.    The summary judgment motion established Glass Lewis' standing, and Defendants identify no specific facts that would influence standing.

The summary judgment motion established Glass Lewis' standing to seek a declaration and injunction against the Attorney General's enforcement of the Act. *See* ECF 60 at 1, 3, 6-8. First, it established Glass Lewis' core business is providing speech covered by the Act, including:

- advice and recommendations on how to vote on proposals; proxy statement research and analysis regarding proposals; ratings and research regarding corporate governance; and development of proxy voting recommendations or policies;

- providing such speech to clients in Texas about Texas-incorporated companies, Texas-headquartered companies, or companies that propose to move here;

ECF 60 at 1, 3 (citing ECF 61-1 ¶¶ 5-10; S.B. 2337 § 6A.001(1), (3)-(4)). This is all undisputed.

Next, the motion showed, based on undisputed facts, that Glass Lewis' speech will regularly trigger the Act's requirements to make the compelled statements:

- <u>Section 101 triggered.</u> "Glass Lewis takes into account corporate governance factors in virtually every report that it provides"—therefore continuously triggering the compelled statements in § 101(b).

- <u>Section 102 triggered.</u> Glass Lewis commonly "provide[s] differing recommendations on the same ballot item to different clients" and advice and recommendations that "sometimes go against company management"— therefore regularly triggering the compelled statements in § 102(b).

*See* ECF 60 at 1, 17; ECF 61-1 ¶¶ 7, 8, 11; S.B. 2337 §§ 101(a), 102(a). Defendants' Rule 56(d) motions do not dispute (or suggest that discovery will refute) these facts.

Having shown that Glass Lewis' speech will regularly trigger the Act's compelled

statements, the motion showed two forms of injury-in-fact: economic and constitutional. Either

one suffices for standing. *See Book People, Inc. v. Wong*, 91 F.4th 318, 328-32 (5th Cir. 2024).

- <u>Economic injury-in-fact:</u> Glass Lewis already has been forced to divert time and resources away from its regular business to try to comply with the Act. Absent an injunction, Glass Lewis would be forced to expend significant amounts to develop systems and hire personnel to comply with the Act.

- <u>Constitutional injury-in-fact:</u> Glass Lewis will suffer constitutional injury because: (1) it intends to continue providing advice covered by the Act; (2) the Act proscribes the course of conduct that Glass Lewis would engage in otherwise—providing speech on Texas companies to its clients *without* broadcasting Texas' views; and (3) the threat of enforcement is credible and substantial.

ECF 60 at 6-7 (citing ECF 61-1 ¶¶ 11-24; ECF 61-4, 61-6 to 61-8, 61-15). This is all undisputed.

On traceability and redressability, Glass Lewis showed that the Attorney General is

statutorily tasked with enforcement of the Act, and a declaration and injunction preventing such

enforcement will redress Glass Lewis' injuries. *Id.* at 7-8. The traceability and redressability

analysis does not turn on facts or discovery about Glass Lewis, and Defendants do not argue

otherwise. Thus, Glass Lewis' motion established its standing to challenge each section of the Act.

With respect to standing, Intervenors' motion falls far short of the Rule 56(d) standard. On

discovery related to standing, the motion just says: "Defendants need discovery to test Glass

Lewis's imprecise arguments." ECF 69 at 12. But the Fifth Circuit rejects such "vague assertions

that additional discovery will produce needed, but unspecified, facts." *Mendez*, 823 F.3d at 336

(citation omitted). For standing, Defendants have not attempted to "set forth a plausible basis for

believing that specified facts . . . probably exist" or to "indicate how the emergent facts, if adduced,

will influence the outcome of the pending summary judgment motion." *MDK*, 25 F.4th at 366. On

standing, the motions do not satisfy Rule 56(d).

**B.    Lack of sovereign immunity is not disputed in the Rule 56(d) motions.**

Glass Lewis' summary judgment motion showed that sovereign immunity does not shield the Attorney General from this lawsuit. ECF 60 at 8-9. The Attorney General correctly conceded on sovereign immunity at the preliminary injunction hearing. Hr'g Tr. at 13:23-25 (ECF 37). Neither Rule 56(d) motion addresses sovereign immunity in any way. *See generally* ECF 69, 70.

**C.    Many analytical paths yield the conclusion that the Act violates the Constitution, and Defendants identify no specific facts that would influence those paths.**

Glass Lewis' summary judgment motion established that many analytical paths yield the conclusion that S.B. 2337 violates the Constitution. ECF 60 at 9-28. Any one of them suffices for granting a permanent injunction.

It is a daunting task to defend S.B. 2337's constitutionality, so it is little wonder that Defendants barely even try. Instead, their Rule 56(d) motions refuse to address the merits or show how the merits will be impacted by the requested discovery. But Rule 56(d) motions cannot merely point out pending discovery disputes, vaguely gesture at what fishing expeditions might uncover, and then claim Defendants lack sufficient facts to respond. Rather, they must "indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *MDK*, 25 F.4th at 366. They must explain why specific "additional discovery will allow [them] to defeat summary judgment." *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999). On the Act's constitutionality, Defendants' Rule 56(d) motions fail to meet this standard.

**1.    Vagueness path shows the Act violates the Constitution.**

The summary judgment motion showed that the Act's vagueness renders it unconstitutional, and the Rule 56(d) motions say essentially nothing about vagueness. Glass Lewis' motion showed unconstitutional vagueness under both prongs of the Fifth Circuit's test:

- **Persons of ordinary intelligence must guess what the Act requires and when.** The motion showed the Act is unconstitutionally vague both in the front-end triggering sections—what speech is covered—and in the back-end compliance sections—what exactly proxy advisors must do. This includes vagueness regarding:

  - The key phrase, used in both Sections 101 and 102: "solely in the financial interest of the shareholders." The Act gives the phrase a bespoke, unnatural definition that turns on undefined buzzwords that mean different things to different people.

  - Whether the Act is triggered by or compels speech that occurs entirely outside of Texas. The Act does not say, and Texas' test for extraterritorial application is indeterminate. The Attorney General has suggested the Act does apply outside Texas, but will not say whether the Act requires Glass Lewis to show the website statement to visitors from outside Texas.

  - For both Sections 101 and 102, numerous details of how to comply are left unresolved by the Act's text. On Section 101, how long must Glass Lewis keep the self-disparaging statement up on its website? Can it disclaim the statements, and how? On Section 102, must Glass Lewis somehow choose *one* recommendation that is "provided solely in the financial interest of the shareholders"? None of these details are specified, and failure to comply can lead to massive penalties.

- **Arbitrary and discriminatory enforcement.** The Act is unconstitutionally vague because it covers a wide swath of speech and then fails to provide standards governing the exercise of discretion granted by the Act. The Act's broad triggering provisions, combined with vague provisions on how to comply, mean that enforcement will inevitably turn on ad hoc, subjective judgments of the Attorney General rather than any standards set by the Legislature.

ECF 60 at 24-28.

In the Rule 56(d) sections of Defendants' motions,[2] they do not address vagueness at all.

*See* ECF 69 at 1-17; ECF 70 at 1-2. As a result, they plainly do not show that any further discovery

would influence the outcome of the vagueness analysis, and they therefore fail to satisfy Rule

---

[2] Defendants' motions both have a section with an alternative argument in case the Court denies the Rule 56(d) motion. ECF 69 at 18; ECF 70 at 3-4. In these non-56(d) sections, Defendants have a single, conclusory, *ipse dixit*, unsupported assertion that "Glass Lewis's claims that the statute is unconstitutionally vague have no merit. The term 'nonfinancial' has an obvious meaning, and Glass Lewis's own policies indicate that it understands well what ESG and DEI constitute." ECF 69 at 18; ECF 70 at 3. This throw-away argument does not address many of Glass Lewis' vagueness contentions, summarized above. It does not suggest that further discovery would influence the vagueness analysis.

56(d). Because further discovery will not impact this dispositive issue, Glass Lewis asks the Court

to proceed to grant summary judgment that the Act violates the Constitution. *See Raby*, 600 F.3d

at 561.

### 2.    Viewpoint discrimination path shows the Act violates the Constitution.

On the First Amendment, the simplest path is viewpoint discrimination. *See* ECF 60

at 9-13. Remarkably, Defendants do not even mention viewpoint discrimination anywhere in their

Rule 56(d) motions. *See generally* ECF 69, 70. Obviously, then, they fail to show how any of the

facts they seek will influence the outcome of this dispositive issue, and deferral is unwarranted.

Glass Lewis' summary judgment motion established that the Act's viewpoint

discrimination renders it *per se* unconstitutional or, at minimum, subject to strict scrutiny, which

it cannot survive. ECF 60 at 9-13. First, the motion showed that the Act engages in viewpoint

discrimination both on its face and in its design. *Id.* at 10-12. Either one suffices to show viewpoint

discrimination. *See id.* at 10.

- Facial viewpoint discrimination. The statutory text shows that both sections 101
  and 102 of the Act engage in "facial viewpoint bias," because "the statute, on
  its face, distinguishes between two opposed sets of ideas" in regulating speech.
  Speech reflecting disfavored views—such as anti-management views or views
  that corporate governance is relevant to shareholders' financial interests—is
  burdened with compelled speech. But the opposing viewpoints—such as pro-
  management views or anti-governance-relevance views—are not so burdened.
  That is facial viewpoint bias.

- Viewpoint discrimination in purpose. The legislative history shows that the Act
  discriminates based on viewpoint because "the specific motivating ideology or
  the opinion or perspective of the speaker is the rationale for the restriction." The
  legislative sponsor and the Attorney General agree that the "point" of the Act
  is to "prevent" expression of certain viewpoints when giving opinions and
  advice.

*Id.* (citing the Act's text, legislative history, Defendant's statements, Supreme Court precedent).

The fact of viewpoint discrimination does not depend on any facts or discovery about Glass Lewis;

rather, it turns on the Act's text and legislative history.

Second, having shown the fact of viewpoint discrimination, the summary judgment motion then addressed the clear and dispositive legal consequences of that fact.

- <u>Flatly unconstitutional.</u> The summary judgment motion cites numerous authorities indicating that viewpoint discrimination is flatly prohibited—*per se* unconstitutional, without the need for any balancing or tiers of scrutiny analysis. *Id.* at 12-13.

- <u>At minimum, strict scrutiny applies.</u> It also showed that the minimum level of scrutiny for viewpoint discrimination is always strict scrutiny, even in the context of commercial speech and wholly "unprotected" categories of speech. *See id.* at 13 (quoting *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 384, 388-89 (1992)). This obviates the need to engage with Defendants' falsity/fraud argument, which depends on the erroneous premise that Glass Lewis' speech is wholly unprotected. ECF 69 at 14, 18.

- <u>The Act fails strict scrutiny.</u> The summary judgment motion explores how the Attorney General will fail to satisfy any part of the strict scrutiny analysis, but one specific failure suffices: the Legislature's undisputed failure to consider a government-funded public information campaign is fatal. *Id.* at 15-16 (citing *Free Speech Coal., Inc. v. Paxton*, 95 F.4th 263, 284 (5th Cir. 2024), *aff'd*, 606 U.S. 461 (2025); *Nat'l Inst. of Family & Life Advocates v. Becerra*, 585 U.S. 755, 775 (2018); ECF 61-9 at 9; ECF 37 at 93:11-18).

In sum, this path to summary judgment on the merits is straightforward: the text and history each separately show the Act's viewpoint discrimination, and the consequences of viewpoint discrimination, are dispositive. No discovery from, or facts about, Glass Lewis are relevant to any of this analysis.

"At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024). "At a time when free speech is under attack, it is especially important for this Court to remain firm on the principle that the First Amendment does not tolerate viewpoint discrimination." *Iancu v. Brunetti*, 588 U.S. 388, 399 (2019) (Alito, J., concurring). Because further discovery will not influence this important, dispositive issue, Glass Lewis asks the Court to proceed to grant summary judgment. *See Raby*, 600 F.3d at 561.

### 3. Other paths lead to the Act's failure to satisfy strict scrutiny.

Besides viewpoint discrimination, other analytical paths lead to the application of, and the Act's failure to survive, strict scrutiny. Glass Lewis showed that the Fifth Circuit "generally review[s] content-based regulations of speech under strict scrutiny unless they come within an exception such as the commercial speech exceptions of *Zauderer* or *Central Hudson*." *See* ECF 60 at 14 (quoting *RJ Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 876 (5th Cir. 2024)).

Glass Lewis then showed that the Act engages in content-based regulation and does not fall within *Zauderer* or *Central Hudson* because it does not regulate commercial speech:

- The Act's compelled speech is content-based regulation. The motion showed that the Act compels speech and that "government-compelled speech inherently regulates speech on the basis of its content." *Id.* at 14, 17 (quoting *RJ Reynolds*, 96 F.4th at 875-76).

- The Act's triggering provisions are content-based regulation. The motion showed that the Act's triggering provisions engage in content-based discrimination. The Act "applies to particular speech because of the topic discussed or the idea or message expressed," "'on its face' draws distinctions based on the message a speaker conveys," and was "adopted by the government because of disagreement with the message [the speech] conveys." *Id.* at 10-12, 14 (quoting *Reed v. Town of Gilbert*, 576 U.S. 155, 163-64 (2015)).

- The Act does not regulate commercial speech. The motion showed, based on the Act's definitions, that it does not apply to commercial speech, which "does no more than propose a commercial transaction." *Id.* at 22-23 (quoting *Harris v. Quinn*, 573 U.S. 616, 648 (2014)). The Act defines the covered speech as: "advice or a recommendation on how to vote," "proxy statement research and analysis," "a rating or research regarding corporate governance," and "development of proxy voting recommendations or policies." S.B. 2337 § 6A.001(4). These statutory definitions show that the speech covered by the Act is not proposing a commercial transaction, but rather discussing matters of public concern. ECF 60 at 23; ECF 61-1 ¶¶ 27-29; ECF 6 ¶ 5.

The Rule 56(d) motions say *nothing* about any of these points. They do not dispute Glass Lewis' argument that the speech regulated by the Act is not commercial speech; and they do not argue that further discovery will impact this determination. *See generally* ECF 69, 70. They never dispute that the Act engages in content-based regulation of speech—both through triggering provisions

based on the message conveyed and through government-compelled speech. *See generally id.*

In sum, the summary judgment motion showed that various other paths lead to the application of strict scrutiny, and Defendants never indicate how any emergent facts, if adduced, will influence the outcome of those paths. As discussed above in Section I.C.2, the Act will never satisfy strict scrutiny (and no further discovery will change that, either). Because further discovery will not impact this dispositive issue, Glass Lewis asks the Court to proceed to grant summary judgment that the Act violates the Constitution. *See Raby*, 600 F.3d at 561.

### 4.    The *Book People* path shows the Act violates the Constitution.

Finally, the summary judgment motion showed that the analytical path of this Court's recent decision in *Book People* also yields the conclusion that the Act violates the Constitution. *See Book People, Inc. v. Wong*, 2025 WL 3035109 (W.D. Tex. 2025). First the motion showed that the Act indisputably compels Glass Lewis' speech. ECF 60 at 17. Next, the motion showed that neither *Zauderer* nor *Central Hudson* would save the Act:

- <u>*Zauderer*.</u> The motion showed that *Zauderer* did not apply for three reasons—each one independently sufficient to preclude *Zauderer*'s application:

  - <u>Controversial.</u> The Act's compelled statements are controversial under *Zauderer* because "the inherent nature of the subject raises a live, contentious political dispute." ECF 60 at 18-20 (quoting *RJ Reynolds*, 96 F.4th at 881). The motion quoted statements by politicians, including the Act's legislative sponsor and the Attorney General, showing the politically contentious nature of the subject. *Id.*

  - <u>Non-factual.</u> The Act's compelled statements are not "purely factual" under *Zauderer* because they are "akin to unfalsifiable statements of opinion." *Id.* at 20-22 (quoting *RJ Reynolds*, 96 F.4th at 879). The motion quoted the SEC, an SEC Commissioner, and Glass Lewis all agreeing that proxy vote "recommendations are solely statements of opinion, and not statements of fact, on matters that are, by their nature, judgmental," and there typically is not a "correct" viewpoint. *Id.*

  - <u>Not commercial speech or advertising.</u> The motion showed *Zauderer* does not apply because the Act does not regulate commercial speech. *Id.* at 22-23.

- _Central Hudson._ The motion showed that the Act would not survive intermediate scrutiny under _Central Hudson_ for various reasons. _Id._ at 23-24. For example, the Legislature's undisputed failure to consider a government-funded public information campaign is fatal under intermediate scrutiny. _Id._ (citations omitted).

The Rule 56(d) motions do not engage with these arguments. The motions do not dispute that the Act's compelled statements are (a) controversial (b) statements of opinion applying to (c) non-commercial speech, nor do they show how further discovery would influence these issues.

*       *       *

Many different analytical paths show that the Act violates the Constitution, and Defendants do not engage with them at all. As two examples, they never explain how discovery will defeat Glass Lewis' arguments on vagueness or viewpoint discrimination; indeed, no further discovery from Glass Lewis could possibly be relevant to those arguments, which turn on the Act's text and legislative history. Across the board, on constitutionality, Defendants have completely failed to meet their burden under Rule 56(d) to show how the discovery they seek "if adduced, will influence the outcome of the pending summary judgment motion." _MDK_, 25 F.4th at 366.

### D.     Remaining permanent injunctive factors are not disputed.

Glass Lewis' motion established that the remaining permanent injunction factors—irreparable harm, inadequate remedies at law, balance of harms, and the public interest—warrant a permanent injunction. ECF 60 at 29-30. Neither Rule 56(d) motion addresses these factors or indicates that more discovery would somehow change the analysis. _See generally_ ECF 69, 70.

*       *       *

Glass Lewis' summary judgment motion shows its entitlement to judgment as a matter of law, and the motion is ripe for adjudication now. Defendants have failed to meet their burden under Rule 56(d) to show how any emergent facts, if adduced, would influence the outcome of Glass Lewis' summary judgment motion. _MDK_, 25 F.4th at 366.

Accordingly, Glass Lewis asks the Court to deny Defendants' motions and proceed to grant summary judgment. *See Raby*, 600 F.3d at 561.

## II.    Defendants' Rule 56(d) arguments lack merit.

Untethered to Glass Lewis' summary judgment motion, the Rule 56(d) motions make various arguments on why a further-developed factual record is necessary. None has merit.

For their arguments, Defendants make grand pronouncements about the importance of discovery in *other* First Amendment cases but do not specify what further discovery is needed in *this* case to address *this* summary judgment motion. *See* ECF 69 at 10-14. None of these hollow generalizations explain how further discovery will defeat Glass Lewis' pending motion.

### A.    Defendants' arguments on false speech and fraud are immaterial.

Defendants claim that further discovery will alter the First Amendment analysis because "false commercial speech would not receive First Amendment protection." ECF 69 at 14. Even indulging the absurd idea that Glass Lewis' speech is somehow always false, such falsity would not defeat the summary judgment motion—for numerous reasons. Those reasons include: the First Amendment prohibits viewpoint discrimination even within unprotected categories of speech; government-compelled speech is always subject to First Amendment scrutiny; the Act does not regulate false commercial speech, and the Supreme Court has never held that non-commercial speech is unprotected merely because it is false.

#### 1.    Viewpoint discrimination *always* demands at least strict scrutiny.

Even assuming—contrary to reality—that Glass Lewis' speech is false and that false speech is a wholly unprotected category, falsity does not matter to the viewpoint discrimination analysis because such viewpoint discrimination is always subject to (at least) strict scrutiny.

The First Amendment prohibits viewpoint discrimination even within supposedly "unprotected" categories of speech. *See R.A.V.*, 505 U.S. at 382-89. *R.A.V.* gives numerous

examples of this principle, such as: "the government may proscribe libel; but it may not make the further content discrimination of proscribing *only* libel critical of the government"; and the government can criminalize threats of violence against the President, "[b]ut the Federal Government may not criminalize only those threats against the President that mention his policy on aid to inner cities." *Id.* at 384, 388-89. In *R.A.V.*, an ordinance proscribed "fighting words," but only those in connection with certain disfavored ideas—"messages of racial, gender, or religious intolerance"—resulting in "actual viewpoint discrimination" "[i]n its practical operation." *Id.* at 391-92, 394. The Supreme Court said that such a law was prohibited and, in any event, held it was unconstitutional because it did not satisfy strict scrutiny. *See id.* at 391-96.

Here, even if "false" or fraudulent speech were categorically unprotected and the Act regulated such speech, Texas cannot engage in viewpoint discrimination within unprotected categories by regulating *only* false speech expressing certain views—such as opposing company management or supporting the relevance of corporate governance. *R.A.V.* shows that such viewpoint discrimination within the allegedly unprotected category renders the Act either *per se* unconstitutional or subject to strict scrutiny. *R.A.V.*, 505 U.S. at 382-89, 391-96.

Thus, even if Defendants could somehow show all Glass Lewis' covered speech were false, as a result of the Act's viewpoint discrimination, S.B. 2337 will always be subject to at least strict scrutiny. As noted above, the Act will never survive strict scrutiny, in part because the Legislature never considered a government-funded public information campaign. *See* ECF 60 at 15-16. So, further discovery on falsity could not possibly "influence the outcome of the pending summary judgment motion." *MDK*, 25 F.4th at 366. Viewpoint discrimination renders falsity immaterial.

### 2.    Compelled speech always draws First Amendment scrutiny.

Another reason falsity is immaterial: government-compelled statements must always pass First Amendment muster—regardless of what underlying activity they regulate. That is why the

First Amendment applies to government-compelled disclosures even when they regulate non-expressive activity, like selling cigarettes. *See RJ Reynolds*, 96 F.4th at 875-76. As noted above, "government-compelled speech inherently regulates speech on the basis of its content." *Id.*

*Zauderer* itself shows that First Amendment protection still applies when the government seeks "to prevent the dissemination of commercial speech that is false" by compelling speech. *See Zauderer v. Off. of Disc. Counsel of S. Ct. of Ohio*, 471 U.S. 626, 638, 651 (1985) (disclosures must be factual, uncontroversial even when they prevent consumer deception). Intervenors argue "the First Amendment does not prevent States from requiring those who are speaking falsely to correct the record," ECF 69 at 14, but the only cases Intervenors cite are: (1) an out-of-circuit case that predates *Zauderer*, and (2) a case about a taco chain's trademark infringement that never discussed the First Amendment. *Id.* (citing *WarnerLambert Co. v. FTC*, 562 F.2d 749, 758-59 (D.C. Cir. 1977); *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1126 (5th Cir. 1991)). Indeed, the *Taco Cabana* case Defendants cite does not have the words "First Amendment" or "free speech" anywhere in the opinion. *See generally* 932 F.2d at 1116-28.

Government-compelled speech is always subject to the First Amendment. Discovery into the truth of Glass Lewis' front-end triggering speech cannot save the back-end compelled speech—the Act's controversial, non-factual compelled statements will never pass muster. *See* Section I.C.3-4. So no "emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *MDK*, 25 F.4th at 366.

### 3.    The Act does not target false *commercial* speech.

Another reason falsity is immaterial: Defendants' argument that false speech would "not receive First Amendment protection" applies only to false *commercial* speech. *See* ECF 69 at 14. Glass Lewis' summary judgment motion showed that the Act, through its statutory definitions of the speech covered, does not regulate commercial speech or commercial advertising, but rather

- 15 -

core speech on matters of public concern. *See* ECF 60 at 22-23; *see also* Section I.C.3-4. Defendants never refute this argument or suggest further discovery would influence whether speech covered by the Act is *commercial* speech. *See generally* ECF 69, 70.

Having ignored the threshold question of whether the Act regulates commercial speech, Defendants cannot invoke prohibitions on commercial speech to justify restrictions on core speech. *See Riley v. Nat'l Fed'n of the Blind of N.C., Inc.*, 487 U.S. 781, 801 (1988) ("Broad prophylactic rules in the area of free expression are suspect. Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms.") (citations omitted).

"Absent from those few categories where the law allows content-based regulation of speech is any general exception to the First Amendment for false statements. This comports with the common understanding that some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation, expression the First Amendment seeks to guarantee." *United States v. Alvarez*, 567 U.S. 709, 718 (2012) (plurality op.).

After citing *Alvarez*, Defendants inexplicably rely on quotations that *Alvarez* expressly distinguished or disagreed with. ECF 69 at 14. The quotations on page 14 of their motion are precisely what *Alvarez* abrogated. *See Alvarez*, 567 U.S. at 719. The Supreme "Court has never endorsed the categorical rule . . . that false statements receive no First Amendment protection." *Id.*

So, Defendants' argument that false *commercial* speech does not receive First Amendment protection is immaterial because the Act does not regulate commercial speech. Thus, for many reasons, further discovery on falsity will not influence the outcome of the pending summary judgment motion—viewpoint discrimination, compelled speech, and non-commercial speech all render falsity immaterial to the First Amendment analysis.

**B.    The scope of discovery in other First Amendment cases does not control the dispositive issues here.**

"[T]he scope of discovery and the relevance of certain information is naturally dependent on the specific facts and claims in each case." *U.S. ex rel. Simms v. Austin Radiological Ass'n*, 292 F.R.D. 378, 385 (W.D. Tex. 2013). Rather than explain which specific facts could undermine which specific claims, Defendants vaguely reference need for discovery in *other* cases. ECF 69 at 2, 11-12. Reference to evidence in other cases does not create a material dispute in *this* case.

Take Defendants' arguments on *NetChoice, LLC v. Paxton*, 121 F.4th 494 (5th Cir. 2024). Citing *NetChoice*, Defendants argue that grueling discovery is needed in any First Amendment suit. ECF 69 at 2, 11-12; ECF 52 at 5; ECF 39 at 16. But the Attorney General's own briefs in each case show these two cases are nothing alike:

| Attorney General's Brief in *NetChoice* | Attorney General's Brief in *Glass Lewis* |
|---|---|
| "HB20 Sections 2 and 7 regulate a diverse array of social media platforms, and each of the many different services provided by those platforms. . . . Each of these platforms operates differently, with a variety of services offered and a diversity of approaches to news feeds, homepages, boards, and so on." | "SB 2337 is sufficiently clear on what it requires. It is not lengthy . . . . SB 2337 is a model of clarity." |
| Ex. 1, at 2-3 (Brief on Scope of H.B. 20). | ECF 17 at 33 & 33 n.5. |

Unlike *NetChoice*, this suit targets two discrete provisions of a single, short statute as applied to a single speaker.[3] The simple, straightforward scope of this lawsuit is clear, and Defendants cannot import complexity from other cases.

In the same vein, Defendants argue that an "as-applied challenge" specifically requires a

---

[3] Under Fifth Circuit precedent, Glass Lewis brings an as-applied challenge only. "[T]o categorize a challenge as facial or as-applied we look to see whether the claim and the relief that would follow . . . reach beyond the particular circumstances of the [ ] plaintiffs." *Catholic Leadership Coal. of Tex. v. Reisman*, 764 F.3d 409, 426 (5th Cir. 2014) (quoting *Doe v. Reed*, 561 U.S. 186, 194 (2010)). Glass Lewis' motion seeks no relief beyond its own circumstances, so its claim is an as-applied challenge.

"developed factual record." ECF 69, at 10. Again, this is just the *category* of case—not a "specified reason [Defendants] cannot present facts essential to justify its opposition." *Mendez*, 823 F.3d at 336. The argument is circular: this case needs more discovery because it is the kind of case that needs more discovery. Defendants "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." *Id.* Defendants' 56(d) burden requires much more than their generalized categorical assertions.

### C.    The application of each provision of the Act to Glass Lewis is undisputed.

Defendants miss the mark again when arguing that (1) "the Court must have a thorough understanding of the conduct by Glass Lewis that is covered by SB 2337" and (2) Glass Lewis "must provide sufficient information about how *each provision* of the law applies to it." ECF 69 at 11-12. They wrongly assert that Glass Lewis never tries "to make an individualized showing as to each particular provision," but that is plainly mistaken. *Id.* at 12.

Defendants make this seem like a complicated issue, but it is not: there are two challenged sections; Glass Lewis' speech regularly triggers each section; and Glass Lewis' summary judgment motion and evidence thoroughly showed that each section applies to it. *See* Section I.A. Throughout its motion, Glass Lewis explains how each provision applies to Glass Lewis and why each is unconstitutional.[4] By ignoring Glass Lewis' motion, Defendants do not show how discovery would influence the outcome on summary judgment. *MDK*, 25 F.4th at 366.

### D.    First Amendment protection does not depend on ad hoc balancing.

Defendants mistakenly argue that a "developed factual record . . . is necessary to balancing

---

[4] *See* ECF 60 at 1 (explaining how S.B. 2337 regulates Glass Lewis), *id.* at 3-4 (Section 101 regulates Glass Lewis); *id.* at 4-5 (Section 102 regulates Glass Lewis); *id.* at 4, 10-11 (Section 101 is viewpoint-based); *id.* at 5, 11 (Section 102 is viewpoint-based); *id.* at 17 (Section 101 unlawfully compels speech); *id.* (Section 102 unlawfully compels speech); *id.* at 25 (Section 101 is vague and Section 102 reincorporates those vague terms); *id.* at 27 (Section 101's compliance requirements are vague, and then Section 102's compliance requirements are vague).

Texas's interests in SB 2337 with the alleged burden on Glass Lewis," ECF 69 at 14, but First Amendment protection does not depend on ad hoc balancing. "[T]he degree to which speech is protected cannot turn on a legislative or judicial determination that particular speech is useful to the democratic process. The First Amendment does not contemplate such 'ad hoc balancing of relative social costs and benefits.'" *McCutcheon v. FEC*, 572 U.S. 185, 206 (2014) (quoting *United States v. Stevens*, 559 U.S. 460, 470 (2010)). The Supreme Court's precedents do not "set forth a test that may be applied as a general matter to permit the Government to imprison any speaker so long as his speech is deemed valueless or unnecessary, or so long as an ad hoc calculus of costs and benefits tilts in a statute's favor." *Stevens*, 559 U.S. at 471.

### E. Vague assertions about a hypothetical deposition do not defeat summary judgment.

Last, Intervenors insist they must depose Glass Lewis' declarant, John Wieck, to learn about "business practices" and "test the validity of [his] self-serving assertions." ECF 69 at 11. Defendants lost the right to seek Mr. Wieck's deposition when by failing to notice it in four months of fact discovery. *See* Section III. And Defendants' argument rests on precisely the kind of "vague assertions of the need for additional discovery" that do not suffice for a Rule 56(d) motion. *Bauer v. Albemarle Corp.*, 169 F.3d 962, 968 (5th Cir. 1999). Intervenors do not explain how testing any specific portions of Mr. Wieck's declaration would change the outcome of Glass Lewis' motion. They do not cite a single portion of his declaration that was even cited in Glass Lewis' argument section—only the general background section. ECF 69 at 5 (citing ECF 61-1 ¶¶ 5, 8, 31). They suggest his deposition might call into question whether proxy advice is independent or promotes shareholder value, but identifying some potential dispute over these subjective matters of opinion does not show that the dispute is material. Defendants never explain how casting these statements into doubt "will allow [them] to defeat summary judgment." *Stearns*, 170 F.3d at 535.

### III.    Diligence: Defendants did not diligently pursue depositions.

Even if Intervenors could show that a deposition might influence the outcome of Glass Lewis' motion, they failed to diligently pursue one. "[A] request for relief under Rule 56(d) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery." *Fund Texas Choice v. Deski,* 2024 WL 3223686, at *4 (W.D. Tex. 2024) (citing 10B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 2471 (4th ed. 2022)).

Defendants made no effort to depose any Glass Lewis employees. They never noticed or discussed a deposition of any Glass Lewis witness or Rule 30(b)(6) representative—even though John Wieck's affidavit was filed on day one of this case. *See* LeBrun Decl., ¶ 13. Defendants had four months to seek Mr. Wieck's deposition and chose not to do so. Nor can they blame the timing of Glass Lewis' document production (which was due entirely to Defendants' rejection of the default protective order) because Defendants never even conferred about a potential deposition after the close of discovery. "Having failed to timely notice the depositions, [the Attorney General] can't demonstrate that he diligently pursued the discovery he now seeks." *Villegas v. M.G. Dyess, Inc.*, 2021 WL 2593633, at *4 (W.D. Tex. 2021), *adopted*, 2021 WL 5194901 (W.D. Tex. 2021).

*        *        *

Defendants sidestep the core issues in Glass Lewis' motion, offering sweeping statements about the need for discovery without explaining how it could defeat summary judgment. This case is about the constitutionality of S.B. 2337, not about debates over the subjective merits of Glass Lewis's recommendations. No amount of discovery can save this defective law.

### CONCLUSION AND PRAYER

Glass Lewis requests that the Court deny both Rule 56(d) motions and grant Glass Lewis' summary judgment motion. Glass Lewis prays for all other relief to which it may be entitled.

Dated: December 18, 2025

Respectfully submitted,

YETTER COLEMAN LLP

*/s/ Bryce L Callahan*
Bryce L. Callahan
State Bar No. 24055248
bcallahan@yettercoleman.com
Grant B. Martinez
State Bar No. 24104118
gmartinez@yettercoleman.com
Lily E. Hann
State Bar No. 24133836
lhann@yettercoleman.com
Jared LeBrun
State Bar No. 24144647
jlebrun@yettercoleman.com
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
(713) 632-8002 (fax)

*Attorneys for Plaintiff Glass, Lewis & Co., LLC*

## Certificate of Service

I certify that on December 18, 2025, a copy of this document was served on all counsel of record using the Court's e-filing system.

*/s/ Jared LeBrun*
Jared LeBrun