**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF TEXAS - AUSTIN DIVISION**

| | |
|---|---|
| GLASS, LEWIS & CO., LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>KEN PAXTON, in his official capacity as Attorney General of Texas,<br><br>*Defendant*. | Civil Action No. 1:25-cv-01153-ADA |

**<u>AMENDED MOTION FOR CLARIFICATION</u>**

Defendant, Attorney General Ken Paxton ("Attorney General"), through undersigned counsel, respectfully moves the Court to clarify its August 29, 2025 docket text Order granting Plaintiff's Motion for Preliminary Injunction ("Order"). Specifically, the Attorney General requests that the Court clarify that the Order does not enjoin the Attorney General and his agents, employees, and all persons acting under his direction or control from enforcing the Civil Investigative Demand ("CID") issued to Plaintiff Glass, Lewis & Co., LLC ("Glass Lewis") on August 22, 2025. The CID was issued by the Consumer Protection Division ("CPD") pursuant to section 17.61 of the Texas Deceptive Trade Practices and Consumer Protection Act, § 17.41 *et seq.*, Tex. Bus. & Com. Code ("DTPA"), three days before the Order was entered, on August 25, 2025. In support thereof, the Attorney General states as follows:

Glass Lewis filed this action on July 24, 2025. In its Complaint, ". . . Glass Lewis seeks injunctive and declaratory relief barring the Attorney General's enforcement of S.B. 2337 against Glass Lewis." Dkt. # 1 at ¶ 7. Senate Bill 2337, Act of June 20, 2025, 89th Leg., R.S., 2025 Tex.

Sess. Law Serv. Ch. 1153.  Texas Senate Bill 2337 is a consumer-protection law "relating to the regulation of the provision of proxy advisory services" and is designed to protect shareholders who pay proxy advisors for proxy advisory services.  S.B. 2337.

Glass Lewis filed its Motion for Preliminary Injunction ("PI Motion") on July 24, 2025. Dkt. # 4.  The motion asserted that SB 2337 violates the First Amendment and is unconstitutionally vague.  *Id*. at 4; *passim*.  On August 19, 2025, the Attorney General filed a response in opposition. Dkt. # 17.

On August 22, 2025, OAG issued the CID to Glass Lewis, attached hereto as <u>Exhibit A</u>.

The Court granted Glass Lewis's PI Motion in an August 29, 2025 docket text order stating: "The Court hereby enjoins Defendant Attorney General Paxton and his agents, employees, and all persons acting under his direction or control from taking any action to enforce S.B. 2337 against Glass, Lewis & Co., LLC, including but not limited to intervention in any private right of action." August 29, 2025 docket text order ("Court's Order").

Despite the plain language of the Court's Order solely enjoining the Attorney General and those working for him "from taking any action ***to enforce S.B. 2337***" (emphasis added); Glass Lewis has refused to comply with the CID. In a September 12, 2025 letter Glass Lewis counsel objected to CPD's CID on, among other grounds, that "[g]iven the injunction prohibiting the OAG from 'taking any action to enforce S.B. 2337,' Glass Lewis . . . need not respond to the CID while the injunction remains in place . . . ."  Letter from B. Callahan to S. Froman dated September 12, 2025, attached hereto as <u>Exhibit B</u>, at 1 (internal quotation marks omitted).  Glass Lewis's letter further demanded "that the Attorney General will not otherwise pursue this CID while the injunction remains in place" and threatened that "[i]f the Attorney General takes any further action

to enforce the CID, we will seek appropriate relief in federal court, which may include a motion for contempt against the Attorney General and those copied on this correspondence." *Id*. at 2.

Although the Order is clear and not in need of clarification—it does not enjoin OAG from enforcing the  CID because the CID is not "taking any action to enforce S.B. 2337 against Glass, Lewis & Co., LLC—the Attorney General nonetheless moves for clarification of the Court's Order in light of Glass Lewis's refusal to answer the CID and its contempt threat.

As stated above, CPD's service of a CID investigating potential violations of the DTPA was conducted pursuant to the Texas Attorney General office's authority under section 17.61 of the DTPA.  Section 17.61(a) provides that:

> Whenever the consumer protection division believes that any person may be in possession, custody, or control of the original copy of any documentary material relevant to the subject matter of an investigation of a possible violation of this subchapter, an authorized agent of the division may execute in writing and serve on the person a civil investigative demand requiring the person to produce the documentary material and permit inspection and copying.

Tex. Bus. & Comm. Code § 17.61.

Unlike S.B. 2337, section 17.61 of the DTPA concerns "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a).  It was enacted half a century ago to protect Texas consumers and authorizes suits by both private parties and the Attorney General. *See Joe Longley, The DTPA Turns 50*, Texas Bar Journal (May 2023) (co-author of the DTPA recounting the enactment of consumer protection laws during the 1973 legislative session), https://tinyurl.com/5n8uh7t9.

A brief review of each of the CID requests demonstrates that CPD's DTPA investigation of Glass Lewis does not involve enforcement of S.B. 2337, but rather DTPA section 17.61.

**Request 1:** CPD asks Glass Lewis to "[i]dentify all institutional investors in Texas who You provided voting advisories or recommendations during the relevant time period." Exhibit A at

3

6. CPD seeks this information to investigate Glass Lewis's potential false, misleading, or deceptive acts or practices rendered unlawful by the DTPA.  By examining the circumstances surrounding each of Glass Lewis's voting advisories or recommendations, CPD is determining whether Glass Lewis's conduct was "false, misleading, or deceptive" within the meaning of DTPA section 17.46, a question S.B. 2337 does not address.

**Requests 2-4:** These requests concern the issue of re-domestication of businesses—a matter which the text of S.B. 2337 does not contemplate.  The second request asks Glass Lewis to "[i]dentify all institutional investors seeking to re-domesticate or conduct business in Texas who You provided voting advisories or recommendations during the relevant time period." *Id.* The third request asks for "[d]ocuments sufficient to identify all advisories You communicated to institutional investors during the relevant time period regarding any shareholder or management proposal to re-domesticate a publicly traded company in the State of Texas." *Id.* The fourth request asks for "[a]ll recommendations or other advisories You communicated to institutional investors regarding MercadoLibre, Inc.'s management proposal to re-domesticate in the State of Texas (2025)."  *Id.* The text of S.B. 2337 makes no mention of MercadoLibre, Inc. or any other specific entities.  Nor does S.B. 2337 cover the topic of re-domestication of these entities.

**Requests 5-6:** These requests concern Glass Lewis's use or non-use of disclaimers. The fifth request asks for "[e]xemplars of all Your disclaimers or explanations about the opportunity cost to ESG-oriented decisions that You communicated prior or during Your rendering of advisory services to institutional investors during the relevant time period." *Id.* The sixth request asks for "[e]xemplars of all Your disclaimers or explanations about potential conflicts of interest to your rendering of advisory services that You communicated during the relevant time period." *Id.* Use or non-use of disclaimers is an issue central to CPD's investigation of Glass Lewis's possible

DTPA violations.  A disclaimer in Glass Lewis's rendering of advisory services would necessarily make it less likely that Glass Lewis "caus[ed] confusion or misunderstanding" within the meaning of § 17.46.  While S.B. 2337 also mandates that shareholders "must clearly disclose" whether they are deviating from purely fiscal concerns, Glass Lewis's use or non-use of disclosures is central to whether it violated the DTPA.  This separates this issue from the concerns of S.B. 2337 despite the similarities.

**Requests 7-8:** These requests concern "robovoting," a topic which is completely absent from the text of S.B. 2337.  The seventh request asks for "[d]ocuments sufficient to show how You customize 'Robovoting' recommendations in accordance with the investment preferences of any given investor." *Id.* The eighth request asks for "[d]ocuments sufficient to show Your processes to facilitate 'Robovoting' on behalf of institutional investors." *Id.* The complete absence of the term "robovoting" from the text of S.B. 2337 places these requests outside the scope of that statute.

**Request 9:** This request seeks "all documents, objections, and responses to interrogatories You produced in response to the Civil Investigative Demands issued by (i) the Attorney General of Florida on April 1, 2025, and (ii) the Attorney General of Missouri, on or about July 1, 2025." *Id.* The documents the Attorneys General of Florida and Missouri sought in their independent investigations have no bearing on the text of S.B. 2337.

As demonstrated above, CPD's investigation of Glass Lewis for potential DTPA violations under DTPA section 17.46 is separate and distinct from the concerns outlined in and authority under S.B. 2337.  Therefore, enforcement of CPD's CID would not amount to "taking any action to enforce S.B. 2337" within the meaning of the Court's Order.

Dated: March 16, 2026

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

JOHNATHAN STONE
Chief, Consumer Protection


By: */s/ Scott Froman*
SCOTT FROMAN
State Bar No. 24122079
Assistant Attorney General
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711
(512) 463-1264
(512) 473-8301 fax
Scott.froman@oag.texas.gov

*Attorneys for Defendant*

## CERTIFICATE OF CONFERENCE

I hereby certify that the undersigned attorney conferred with counsel for Glass, Lewis & Co., LLC, on March 16, 2026, who stated that he opposed the filing of this Motion for Clarification, and the parties could not resolve the dispute.

*/s/ Scott Froman*
SCOTT FROMAN
Assistant Attorney General

6

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of March 2026, a copy of the foregoing document was filed using the Court's Electronic Case Filing System and served on all counsel of record that receive electronic notices of filing from that system by email.

/s/ Scott Froman
SCOTT FROMAN
Assistant Attorney General

# EXHIBIT A



**STATE OF TEXAS**
**OFFICE OF THE ATTORNEY GENERAL**
**CONSUMER PROTECTION DIVISION**

**CIVIL INVESTIGATIVE DEMAND**

**TO:**   Glass, Lewis, & Co., LLC                    ***Via CMRRR: 95890710527017801480538***
c/o Corporation Service Company              and First Class Mail
    dba SCS - Lawyers Incorporating Service Company
711 E. 7th Street, STE 620
Austin, TX 78701-3218

Pursuant to section 17.61 of the Texas Deceptive Trade Practices and Consumer Protection Act, § 17.41 *et seq.,* Tex. Bus. & Com. Code (DTPA), Glass, Lewis, & Co., Inc. is hereby directed to produce the documentary material listed in Attachment A.

Prior to the close of business on **September 12, 2025**, Glass, Lewis, & Co., Inc. must make available the documentary material described in Attachment C to the State of Texas's authorized agent designated below. This material may be sent electronically or by courier or certified mail to the Office of Attorney General, 300 W. 15th St., 9th Floor, Austin, TX 78701. Please contact the authorized agent to arrange for the secure transmittal of your materials. Also, please review the Definitions and Instructions applicable to this Civil Investigative Demand which are included here as Attachments A and B, respectively.

This Civil Investigative Demand relates to the investigation of representations by proxy advisors that may violate Tex. Bus. & Com. Code §§ 17.41 *et seq.*

> **TAKE NOTICE THAT pursuant to Tex. Bus. & Com. Code § 17.62, any person who attempts to avoid, evade, or prevent compliance, in whole or in part, with this directive by removing, concealing, withholding, destroying, mutilating, altering, or by any other means falsifying any documentary material may be guilty of a misdemeanor and on conviction is punishable by a fine of not more than $5,000.00 or by confinement in the county jail for not more than one year, or both.**

ISSUED THIS 22nd day of August 2025.

*/s/Chris Molak*                                      **Authorized Agent:**
Christopher M. Molak                              Gina McDonald
Assistant Attorney General                       Investigator
Telephone: (512) 936-1316                        Telephone: (210) 270-1104
Email: Christopher.Molak@oag.texas.gov   Email: Gina.McDonald@oag.texas.gov

**ATTACHMENT A**
**DEFINITIONS**

For the purposes of this Demand:

1.  "**Document**" means the original (or duplicate, identical copies when originals are not available), and any non-identical copies (whether different from the original because of notes made on such copies or otherwise) of writings or recordings of every kind and description whether inscribed by hand or by mechanical, facsimile, electronic, magnetic, digital, microfilm, photographic or other means, as well as phonic or visual reproductions of oral statements, conversations, and including, but not limited to, any manual, book, pamphlet, periodical, letter, report, memorandum, notation, message, telegram, cable, facsimile, record, study, working paper, accounting paper, telephone log, teletype message, chart, graph, index, tape, minutes, computer printout, contract, lease, invoice, record of purchase or sale, correspondence, electronic or other transcription of taping of telephone or personal conversations or conferences, or any and all other written, printed, typed, punched, taped, filmed or graphic matter however produced or reproduced and any electronic, mechanical, computer, e-mail, or Internet records or representations of any kind (including, without limitation, tapes, cassettes, discs, recordings, and computer and electronic memories). "**Document**" also includes the file, folder tabs and/or containers and labels appended thereto associated with each such aforesaid original and/or copy.

2.  "**You**" and "**your**" as used herein means the person or entity to which this Administrative Subpoena is directed and includes, but is not limited to, all owners, shareholders, parent entities, affiliated entities, predecessor entities, successor entities, members, partners (general and limited), directors, franchisees, managers, employees, agents, brokers, marketers, contractors, representatives, and all other business entities or individuals acting, or purporting to act, on its behalf.

3.  The term "**any**" shall be construed as synonymous with "every" and "all," and shall be all- inclusive.

4.  "**ESG**" shall relate to environmental, social, and/or governance, considered collectively or in severalty, and described *infra*.

    The "environmental" portion of ESG concerns issues such as, but not limited to, climate change, green-house gas or other environmental emissions, carbon footprints, carbon taxes, energy efficiencies, deforestation, biodiversity, pollution   migration, waste management, and waste usage.

    The "social" part of ESG concerns issues such as, but not limited to, workplace and board diversity—with respect to race, ethnicity sex, sexual orientation, and gender identity— racial justice, environmental justice, social justice, pay equity, labor standards, wages and benefits, human rights, talent management, community relations, privacy and data protection, health and safety, and supply-chain management.

The "governance" portion of ESG concerns isssues such as, but not limited to corporate board composition and structure, strategic sustainability oversight and compliance, executive compensation, political contributions and lobbying, and bribery and corruption.

## ATTACHMENT B
## INSTRUCTIONS

1.  <u>Documents in Possession, Custody, or Control</u>:  This subpoena calls for all described documents in your possession, custody, or control without regard to the person or person by whom or for whom the documents were prepared or prepared by (*e.g.*, any of your employees, agents, business partners, or others).

2.  <u>Documents No Longer in Possession of Respondent/Destroyed Documents</u>:  If any responsive document was, but no longer is, in your possession, custody, or control, produce a description of each such document.  The description shall include the following:

    (a)     the name of each author, sender, creator, and initiator of such document;

    (b)     the name of each recipient, addressee, and party for whom such document was intended;

    (c)     the date the document was created;

    (d)     the date(s) the document was in use;

    (e)     a detailed description of the content of the document;

    (f)     the reason the document is no longer in your possession, custody, or control; and

    (g)     the document's present whereabouts.

    If the document is no longer in existence, in addition to providing the information indicated above, state on whose instructions the document was destroyed or otherwise disposed of, and the date and manner of the disposal.

3.  <u>Organization of Responses</u>: Documents produced in response to this subpoena shall be organized as follows:

    (a)     The documents produced shall be identified and segregated to correspond with the number and subsection of the request.

    (b)     Identical copies of responsive documents need not be produced.  However, any copy of a document that differs in any manner, including but not limited to the presence of handwritten notations, shall be produced.

    (c)     All attachments to responsive documents shall be produced attached to the

responsive documents or with clear references that refer to the corresponding, responsive documents.

(d)    Mark each page of a paper or electronic document and each tangible thing containing audio, video, computer or other electronic document with corporate identification and consecutive document control numbers (*e.g.*, "COMPANY" 001, "COMPANY" hard drive 001).  Number each box of documents produced and mark each with the name(s) of the person(s) whose files are contained therein, the request(s) to which they are responsive, and the document control numbers contained therein.

(e)    For each document that may be responsive to more than one numbered request of this subpoena, indicate all of the numbered requests to which the document is responsive.

(f)    No portion of any document shall be edited, cut, masked, or redacted other than to preserve a claim of privilege, and the entire document shall be produced.

(g)    Provide a key to all abbreviations used in the documents.  The key shall be attached to the appropriate documents or shall make clear reference to the corresponding, responsive documents.

4.    <u>Audio and Video Recordings</u>: For each audio or video recording produced in response to this subpoena, provide both the recording and a transcript.

5.    <u>Electronic Documents</u>:  If any responsive document is available in electronic format, the document shall be provided in electronic format in addition to hard copy.

6.    <u>Format of Electronic Documents</u>:  Produce electronic documents in a single page Tagged Image File Format (TIFF) with associated OCR text, together with industry standard Everlaw load files and associated files including, but not limited to, all dat., opt., txt., and tiff files.  Preserve all metadata in the documents that are produced.  To the extent available, produce all data in an Excel format, otherwise as a Comma Separated Value text file with a txt. or csv. extension.  Provide Microsoft Outlook files as PST files.  All documents should also be produced in their native format with reference to any associated document ID.  Such electronic records or data should be provided on generally supported storage media, including CD-readable disks, DVD-ROMs, or portable storage devices. Responsive documents produced in electronic format must: (i) be properly identified, (ii) be produced in a format that accurately captures each version of the document, including handwritten notes, signatures, etc., (iii) include all associated electronically searchable text files for the document, (iv) include all metadata associated with the document, and (v) otherwise comply with other provisions of these instructions.  All responsive documents that are produced in database format shall be provided along with all keys and indexes necessary to search and access such documents using the appropriate database program.

7.    <u>Language</u>: Produce the requested documents in all languages in which they are or were made available to consumers.

8. <u>Privileged Documents</u>: If any responsive document is withheld or redacted under any claim of privilege, provide a detailed privilege log that contains at least the following information for each document that you have withheld:

   (a)    the name of each author, writer, sender, creator, or initiator of such document;

   (b)    the name of each recipient, addressee, and party for whom such document was intended;

   (c)    the date of such document, or an estimate thereof if unknown;

   (d)    the general subject matter of the document; and

   (e)    the claimed grounds for withholding the document, including but not limited to, the nature of any claimed privilege and grounds in support thereof.

9. <u>Duty to Supplement</u>: All document requests are continuing in nature so as to require supplementary documents if you obtain further responsive documents. This includes documents created or discovered after the date of this subpoena and responsive to the subject matter of the Requests.

10. <u>Duty to Preserve Documents</u>: All documents and/or other data which relate to the subject matter or requests of this subpoena must be preserved. Any destruction involving such documents must cease, even if it is your normal or routine course of business to delete or destroy such documents or data and even if you believe such documents or data are privileged or otherwise need not be produced.

11. <u>Time Period</u>: Unless otherwise specified, the time period for responsive information to this subpoena shall range between January 1, 2023 and the present day.

12. <u>Production of Duplicate Documents</u>: Identical copies of a responsive document need not be produced in duplicate . However, a near-duplicate of a responsive document—that differs in any manner, including, but not limited to, the presence of handwritten notations or different authors/recipients—must be produced.

## ATTACHMENT C
## DOCUMENTS TO PRODUCE

1. Identify all institutional investors in Texas who You provided voting advisories or recommendations during the relevant time period.

2. Identify all institutional investors seeking to re-domesticate or conduct business in Texas who You provided voting advisories or recommendations during the relevant time period.

3. Documents sufficient to identify all advisories You communicated to institutional investors during the relevant time period regarding any shareholder or management proposal to re-domesticate a publicly traded company in the State of Texas.

4. All recommendations or other advisories You communicated to institutional investors regarding MercadoLibre, Inc.'s management proposal to re-domesticate in the State of Texas (2025).

5. Exemplars of all Your disclaimers or explanations about the opportunity cost to ESG-oriented decisions that You communicated prior or during Your rendering of advisory services to institutional investors during the relevant time period.

6. Exemplars of all Your disclaimers or explanations about potential conflicts of interest to your rendering of advisory services that You communicated during the relevant time period.

7. Documents sufficient to show how You customize "Robovoting" recommendations in accordance with the investment preferences of any given investor.

8. Documents sufficient to show Your processes to facilitate "Robovoting" on behalf of institutional investors.

9. All documents, objections, and responses to interrogatories You produced in response to the Civil Investigative Demands issued by (i) the Attorney General of Florida on April 1, 2025, and (ii) the Attorney General of Missouri, on or about July 1, 2025.

# EXHIBIT B

# Yetter Coleman LLP

September 12, 2025

***Via Email Only***
Scott Froman
Assistant Attorney General
Consumer Protection Division
Scott.Froman@oag.texas.gov

**CONFIDENTIAL TREATMENT REQUESTED**
**PROTECTED FROM DISCLOSURE WITHOUT PERMISSION**
**UNDER TEX. BUS. & COM. CODE § 17.61(F)**

Re:    Civil Investigative Demand to Glass, Lewis & Co., LLC dated August 22, 2025

Dear Mr. Froman:

We write on behalf of Glass, Lewis & Co., LLC ("Glass Lewis") in connection with the Civil Investigative Demand ("CID") issued by the Office of the Attorney General of Texas ("OAG") on August 22, 2025.

As discussed more fully in the attached responses and objections, Glass Lewis will not produce documents in response to the CID. The OAG's issuance and enforcement of the CID violate the First Amendment, contravene and circumvent the preliminary injunction issued on August 29, 2025, by the U.S. District Court for the Western District of Texas (attached), and exceed the OAG's authority.

Given the injunction prohibiting the OAG from "taking any action to enforce S.B. 2337," Glass Lewis sought confirmation that it "need not respond to the CID while the injunction remains in place and that the Attorney General will not otherwise pursue the CID while the injunction remains in place." Yesterday, the OAG refused and insisted that Glass Lewis respond to the CID, violating the injunction.

To avoid unnecessary motions practice before the Western District, we conferred at length and in good faith with you and Mr. Watkins. In part, we sought a reasonable extension of two weeks to submit responses and objections to the CID, and the OAG refused that reasonable request. Glass Lewis has now explained by email and by videoconference to the Consumer Protection Division that the issuance and enforcement of the CID violate the First Amendment and the preliminary injunction.

In the attached transcript, you will see that, at the preliminary injunction hearing, Glass Lewis explained to the Court that "the Attorney General started official action against Glass Lewis to enforce SB 2337" by issuing the CID. Tr. at 9-10. Counsel for the Attorney General never disputed this point. Later in that hearing, the Court issued its preliminary injunction, which in part turns on whether the Attorney General has demonstrated willingness to enforce the statute. So, this exact issue has been presented to the Court, which then ruled in Glass Lewis' favor.

Yetter Coleman LLP

- 2 -                                                            September 12, 2025

If the Attorney General takes any further action to enforce the CID, we will seek appropriate relief in federal court, which may include a motion for contempt against the Attorney General and those copied on this correspondence.

Glass Lewis reserves all rights, including its ability to raise further objections to the CID. We remain open to discussing withdrawal of the CID or an extension or abatement of Glass Lewis' response deadline.

Sincerely,

YETTER COLEMAN LLP

Bryce L. Callahan

Attorneys for Glass, Lewis & Co., LLC

Enclosures

cc:    Christopher Molak (all via email)
       Gina McDonald
       Clayton Watkins
       Johnathan Stone
       Jennifer Roscetti
       Lee Winkelman