UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GLASS, LEWIS & CO., LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KEN PAXTON, i*n his Official Capacity as* | ) | |
| *Attorney General of Texas,* | ) | |
| | ) | |
| Defendant, | ) | Civil Action No. 1:25-cv-01153-ADA |
| | ) | |
| THE TEXAS STOCK EXCHANGE LLC | ) | |
| and THE TEXAS ASSOCIATION OF | ) | |
| BUSINESS, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |

**PLAINTIFF GLASS LEWIS' RESPONSE IN OPPOSITION TO
DEFENDANT'S AMENDED MOTION FOR CLARIFICATION**

Attorney General Ken Paxton ("Attorney General") asks the Court to preemptively declare that a CID targeting the same conduct, the same specific topics, and the same company, using S.B. 2337's same enforcement mechanism, is necessarily and forever outside the scope of the Court's preliminary injunction order. That is not a request for "clarification." It is a request for permission to enforce S.B. 2337 despite the preliminary injunction. The Court should deny it.

The CID is part of enforcement of S.B. 2337; and the two overlap extensively. As just one example, on the exact same day, defendants targeted the exact same speech about the exact same company in both the CID and in their defense of S.B. 2337:

- Issuing the CID for documents about recommendations on "***MercadoLibre,*** Inc.'s management proposal to re-domesticate in the State of Texas";

- Defending S.B. 2337 by criticizing the same recommendations on "***MercadoLibre***, which pulled its management proposal to redomesticate from Delaware to Texas."

ECF 31-1 (Request 4) (Aug. 22, 2025); ECF 22-5 at 226 n.23; ECF 22-4 at 7 (Aug. 22, 2025). The Attorney General's contention—that the CID and S.B. 2337 are separate—is demonstrably false.

Plaintiff Glass, Lewis & Co., LLC ("Glass Lewis") opposes the Attorney General's amended motion for clarification (ECF 94) on four grounds. First, whether the CID violates the injunction is a contested fact question that cannot be resolved through a request for permission. Second, the CID is functionally part of S.B. 2337 enforcement: it covers the same specific speech as S.B. 2337 and relies on the same DTPA mechanism used to enforce S.B. 2337. Third, Defendants have taken irreconcilable positions on whether Glass Lewis' alleged "false speech" is relevant to S.B. 2337. In his motion for clarification, the Attorney General is arguing the exact opposite of what he argued in his Rule 56(d) motion. Fourth, Glass Lewis' litigation production already covers nearly all of the CID categories, making the CID duplicative and this motion practice a waste of resources. The Court should deny the motion.

## BACKGROUND

Glass Lewis filed its complaint and motion for preliminary injunction on July 24, 2025. ECF 1, 4. Three weeks later, the Attorney General served his civil investigative demand ("CID"). *See* ECF 31-1. Glass Lewis received the CID on August 27—just days before this Court's preliminary injunction hearing and S.B. 2337's effective date. *Id.*

The CID overlaps with enforcement of S.B. 2337. The CID was issued under the Deceptive Trade Practices Act ("DTPA"), the same enforcement mechanism the Attorney General uses to enforce S.B. 2337.[1] *Compare* S.B. 2337 § 6A.201 ("A violation of this chapter is a deceptive trade practice . . . and is actionable under Section 17.47 of that code."), *with* CID, ECF 31-1 ("This Civil

---

[1] S.B. 2337 has been incorporated into Texas Business Organizations Code chapter 6A. Citations to "S.B. 2337" are citations to that chapter of that code.

Investigative Demand relates to the investigation of representations by proxy advisors that may violate Tex. Bus. & Com. Code §§ 17.41 *et seq.*"). It covers the same topics that S.B. 2337 regulates—including proxy advisors' disclosures about their use of ESG factors, re-domestication of companies to Texas, and proxy advisors' supposed conflicts of interest. *See* ECF 31-1. The Attorney General sent CIDs to the two plaintiffs in this consolidated case: Glass Lewis and Institutional Shareholder Services, Inc. *Id.*; LeBrun Decl. ¶ 4.

Glass Lewis has already shown that the CID was part of S.B. 2337 enforcement. At the preliminary injunction hearing, Glass Lewis explained that "the Attorney General started official action against Glass Lewis to enforce SB 2337" by issuing the CID. Prelim. Inj. Tr. at 9:14-10:4 (LeBrun Decl. Ex. 1). The Attorney General never disputed this point. *See generally id.* The Court then issued its preliminary injunction, expressly stating that the Office of the Attorney General is prohibited from "taking any action to enforce S.B. 2337." Text Order dated Aug. 29, 2025. The Attorney General appealed the preliminary injunction but then abandoned his appeal. *See* ECF 71.

Following the hearing, Glass Lewis formally responded to the Attorney General and the CID on September 12, noting that its topics were covered by the preliminary injunction order. ECF 94 at 16-17. Glass Lewis also explained that its forthcoming production to Defendants would cover virtually all of the categories sought by the CID, and that the attorneys enforcing the CID could access these materials. LeBrun Decl. ¶¶ 6-7.

Glass Lewis did not hear back from the Attorney General for nearly five months—until one business day before he filed his motion. When Glass Lewis responded to the Attorney General trying to avoid unnecessary motions practice with pragmatic discussion, the Attorney General's office displayed no interest in a practical solution. *See* LeBrun Decl. Ex. 2 (asserting that whether the Attorney General *already* has the documents he seeks "is not relevant here").

**ARGUMENT**

**I.    A motion for clarification is the wrong procedural vehicle for the relief the Attorney General purportedly seeks.**

As the Attorney General admits, the Court's order "is clear and not in need of clarification." Amended Motion for Clarification, ECF 94 at 2 ("Am. Mot."). The analysis can end there.

In any event, the Order is clear: the Attorney General is enjoined from "taking *any action* to enforce S.B. 2337 against Glass, Lewis & Co." Text Order dated Aug. 29, 2025 (emphasis added). That clear language does not need clarification, and the Court should not grant clarification where none is needed. *SEC v. Kiselak Capital Group, LLC*, 2011 WL 4398443, at *7 (N.D. Tex. 2011) ("Because the . . . order was clear and easy to understand, the court concludes that [movant's] request for clarification of the order should be denied."); *Winans v. Emeritus Corp.*, 2014 WL 2586370, at *1 (N.D. Cal. 2014) ("Where an order or direction of the court is clear, it follows that clarification is unnecessary.").

What the Attorney General actually seeks is a preemptive ruling that the CID cannot possibly constitute "any action to enforce S.B. 2337." Am. Mot. at 2. Rather than asking for clarification, he asks the Court to hold that "enforcement of CPD's CID would not amount to 'taking any action to enforce S.B. 2337.'" *Id.* at 5. But that is not a request for clarification, it is a request for permission to enforce.

Despite bearing the burden as the movant, the Attorney General cites no cases holding that an *ex-ante* request for permission is appropriate. That is unsurprising—whether conduct violates an injunction is properly adjudicated in a contempt proceeding based on a factual record. *i4i Ltd. P'ship v. Microsoft Corp.*, 398 F. Supp. 3d 90, 96 (E.D. Tex. 2019) ("The decision whether to hold a contempt proceeding is . . . to be answered based on the facts presented.") (cite omitted). Here, whether enforcement violates the Court's order depends on the CID's purpose, the Attorney

General's reason for enforcing the CID, the extensive overlap between the CID and S.B. 2337, and the practical effect of the CID on Glass Lewis. *See Sanders v. Monsanto Co.*, 574 F.2d 198, 199 (5th Cir. 1978) ("A contempt proceeding from a court order is highly factual."). None of those elements of contempt can be resolved through an *ex-ante* categorical motion for permission. It would be premature to grant the Attorney General blanket permission to enforce the CID.

In substance, the Attorney General moves for permission to enforce the CID, and to the extent that exists as a recognized form of relief at all, it is improper for the Court to decide in this posture.

II.     **The CID is part of S.B. 2337 enforcement: it uses the same statutory mechanism, covers the same topics, and was served days before the PI hearing.**

Even if the Court were to reach the merits of the Attorney General's motion—which it need not do because the injunction is clear—it should deny the requested relief. The record demonstrates that the CID is not a routine, independent DTPA investigation but rather an extension of S.B. 2337 enforcement that falls within the scope of this Court's preliminary injunction order.

A.     **S.B. 2337 channels Attorney General enforcement through the DTPA.**

The Attorney General's core argument is that the CID was issued under the DTPA rather than S.B. 2337, but the two statutes are not independent tracks. Rather, S.B. 2337 is enforced through the DTPA.

The enforcement provision of S.B. 2337 expressly provides that a "violation of [S.B. 2337] is a deceptive trade practice . . . and is actionable under Section 17.47." S.B. 2337 § 6A.201 (emphasis added). In other words, *enforcement of S.B. 2337 is enforcement of the DTPA*. The Attorney General argues that he is merely enforcing the DTPA, but issuing a CID pursuant to the DTPA is exactly the action he would need to undertake to enforce S.B. 2337. Enforcing S.B. 2337 through a DTPA-based CID can and does violate this Court's preliminary injunction.

**B.    The CID is not remotely separate from enforcement of S.B. 2337.**

Nor should the Court credit the Attorney General's conclusory attempts to differentiate the CID and S.B. 2337. While he insists that the CID concerns a routine DTPA investigation "that does not involve enforcement of S.B. 2337," Am. Mot. at 3, a comparison of the CID's requests shows otherwise.

### 1.    Requests 4, 5, and 6 overlap with the text of S.B. 2337.

The most egregious overlap with S.B. 2337 is contained in CID Requests 4, 5, and 6.

> 4.    All recommendations or other advisories You communicated to institutional investors regarding MercadoLibre, Inc.'s management proposal to re-domesticate in the State of Texas (2025).

**Request 4** obviously overlaps with S.B. 2337: the reference to MercadoLibre is glaring. As noted in the introduction, defendants targeted Glass Lewis' speech on MercadoLibre's redomestication in both the CID and their defense of S.B. 2337 on the exact same day. *See* ECF 31-1 (Request 4) (Aug. 22, 2025); ECF 22-5 at 226 n.23; ECF 22-4 at 7 (Aug. 22, 2025).

This exact company's re-domestication proposal was the impetus for S.B. 2337 and is a part of its defense. Intervenors cited MercadoLibre in their letter to Governor Abbott as a reason why S.B. 2337 should be signed into law. ECF 22-1 at 5. Their response to the preliminary injunction motion defends S.B. 2337 by stating MercadoLibre "pulled its management proposal to re-domesticate from Delaware to Texas after receiving negative commentary on the proposal from ISS and Glass Lewis." ECF 22-4, at 7 (quoting ECF 22-5 at 226 n.23 (naming MercadoLibre)).[2]

On CID Request 4, the Attorney General bizarrely argues that re-domestication is a topic S.B. 2337 "does not contemplate." Am. Mot. at 4. Wrong. Section 6A.001(1) expressly covers "a

---

[2] Defendants' Request for Production No. 20 asks for "[a]ll Documents and Communications related to any recommendation [Glass Lewis] made to a client regarding a proposal for a company to reincorporate in Texas," implicitly referencing MercadoLibre. LeBrun Decl. Ex. 3.

foreign entity that has made a company proposal to become a domestic entity." S.B. 2337 § 6A.001(1). This is re-domestication. Indeed, Glass Lewis covers this exact issue in its complaint. *See* 2d Am. Compl. ¶¶ 200-01 (ECF 59) (explaining that S.B. 2337 covers proposals to reincorporate in Texas and citing the CID as an example of why such regulation violates the Dormant Commerce Clause).

Defendants have made MercadoLibre's re-domestication a key part of S.B. 2337's text and legislative history, have used it to defend the law's constitutionality, and propounded discovery on it in this case. Plainly, Request 4 of the CID relates directly to enforcing S.B. 2337.

> 5. Exemplars of all Your disclaimers or explanations about the opportunity cost to ESG-oriented decisions that You communicated prior or during Your rendering of advisory services to institutional investors during the relevant time period.

**Request 5** seeks Glass Lewis' disclosures regarding "ESG-oriented decisions," which lie at the heart of S.B. 2337. As one of its two operative provisions, S.B. 2337 requires disclosures whenever Glass Lewis' recommendations are based on or consider ESG. *See* S.B. 2337 §§ 6A.101(a)(1), 101(b). The very purpose of Section 101 is to force Glass Lewis to disclose to clients (and on its website) that it considers purportedly "non-financial" factors like ESG. *Id.* The Attorney General even concedes this point, noting that "S.B. 2337 also mandates" disclosures. Am. Mot. at 5. So, the CID's request for examples of Glass Lewis' disclosures about ESG-oriented decisions plainly relates to enforcing S.B. 2337.

> 6. Exemplars of all Your disclaimers or explanations about potential conflicts of interest to your rendering of advisory services that You communicated during the relevant time period.

**Request 6** seeks Glass Lewis' disclosures about purported conflicts of interest, which also lie at the heart of S.B. 2337. Section 102 requires disclosures whenever Glass Lewis recommends different positions to different clients, which the statutory text calls "conflicting advice." *See*

S.B. 2337 § 6A.102. Indeed, the sponsors of the bill repeatedly emphasized that the bill addresses "a very real conflict" among proxy advisors, that "S.B. 2337 will highlight these conflicts" because it "brings these conflicts to light," and that S.B. 2337 "seeks to highlight those conflicts where they exist." ECF 6 at 2-5. As a remedy, Section 102 requires Glass Lewis to notify clients about the supposed "conflict" and explain which recommendation is in shareholders' financial interest. *See* S.B. 2337 § 6A.102(b). Disclosures about purported conflicts are a key defining feature of S.B. 2337; and the CID's Request 6 relates directly to enforcing S.B. 2337.

> **2.    The other requests also overlap with S.B. 2337, its legislative history, and the positions taken in this suit.**

Requests 1-3 and 7-9 fare no better. They are also part of enforcing S.B. 2337.

> 1. Identify all institutional investors in Texas who You provided voting advisories or recommendations during the relevant time period.

**Request 1** is exactly the kind of request the Attorney General would send to start enforcing S.B. 2337—gathering a list of Glass Lewis' Texas customers who receive its proxy advice, which is the speech directly regulated by S.B. 2337.

The Attorney General fails to explain how compiling a list of Glass Lewis' Texas clients is unrelated to S.B. 2337. Protecting Texas shareholders is ostensibly the very purpose for which S.B. 2337 was enacted and is the very first line of the law. *See* LeBrun Decl. Ex. 4 § 1(1) (the purpose of this law is to protect "shareholders in this state"). So, compiling a list of Texas companies who have received Glass Lewis' proxy advice falls squarely within the ambit of S.B. 2337 and is precisely the step one would take to enforce that law.

> 2. Identify all institutional investors seeking to re-domesticate or conduct business in Texas who You provided voting advisories or recommendations during the relevant time period.
>
> 3. Documents sufficient to identify all advisories You communicated to institutional investors during the relevant time period regarding any shareholder or management proposal to re-domesticate a publicly traded company in the State of Texas.

**Requests 2 and 3** seek documents on Glass Lewis' proxy advice regarding potential re-domestication in Texas. As with Request 4, proxy advice about potentially re-domesticating companies is explicitly regulated by the text of S.B. 2337. *See* S.B. 2337 § 6A.001(1) (law covers recommendations about "a foreign entity that has made a company proposal to become a domestic entity."). Thus, Requests 2 and 3 are part of enforcement of S.B. 2337.

> 7. Documents sufficient to show how You customize "Robovoting" recommendations in accordance with the investment preferences of any given investor.
>
> 8. Documents sufficient to show Your processes to facilitate "Robovoting" on behalf of institutional investors.

**Requests 7 and 8** seek information on robovoting, which serves frequently as a justification for S.B. 2337. Robovoting was a key concern expressed in the earliest stages of S.B. 2337's legislative history. *See* LeBrun Decl. Ex. 5 (Tex. S. Comm. on State Affairs, *Interim Report to the 89th Texas Legislature* 33 (Jan. 10, 2025)) (complaining that investors' shares will automatically "be voted to advance these policies," *i.e.*, robovoting). Indeed, Intervenors' preliminary injunction response explained that robovoting is one justification for why S.B. 2337 is necessary. *See* ECF 22-4 at 10 (complaining that "the SEC allows institutional investors to rely on proxy advisors . . . which sometimes results in a practice known as 'robovoting.'"). The issue is likewise criticized in the amicus brief in opposition to Glass Lewis' preliminary injunction motion, Defendants' expert report, and multiple exhibits filed by Defendants. *See, e.g.*, ECF 26 at 12; LeBrun Decl. Ex. 6, ¶ 27; ECF 22-5 at 23, 266. Defendants did not repeatedly bring up

robovoting because it was irrelevant—they did so because it is directly related to S.B. 2337. Requests 7 and 8 are part of the Attorney General's efforts to enforce S.B. 2337.

> 9. All documents, objections, and responses to interrogatories You produced in response to the Civil Investigative Demands issued by (i) the Attorney General of Florida on April 1, 2025, and (ii) the Attorney General of Missouri, on or about July 1, 2025.

**Request 9** is the exact same as a request for production that the Attorney General already served in this lawsuit. *See* LeBrun Decl. Ex. 3. RFP No. 23 seeks, "All Documents and responses produced to the States of Florida and Missouri in connection with the civil investigations into Glass Lewis conducted by their respective Attorneys General during the Focus Period." *Id.* The Attorney General would not (and could not) have sought this information if it was irrelevant to S.B. 2337. *See* Fed. R. Civ. P. 26(b)(1) (discovery must be "relevant to any party's claim or defense.").

*    *    *

In sum, each request in the CID is directly covered by S.B. 2337 or is material Defendants themselves have claimed is relevant to S.B. 2337 and this lawsuit. The Attorney General's attempt to characterize the CID as a routine DTPA investigation is belied by this undeniable overlap. The CID is part of the Attorney General's enforcement of S.B. 2337 and should remain enjoined.

**C.    The timing and surrounding circumstances confirm the CID's purpose.**

Finally, the circumstances of the CID's issuance show that it was served to prepare for an enforcement proceeding under S.B. 2337 through the DTPA. The CID was issued on August 22, 2025, days before S.B. 2337 was set to take effect and before the Court entered its preliminary injunction. ECF 31-1. It demanded Glass Lewis produce evidence on the very same topics covered by S.B. 2337. *See supra*, Section II.B. The Attorney General has been targeting ESG and DEI-based advice for *years*, but he chose to serve this specific CID in the immediate run-up to S.B. 2337 taking effect. *See, e.g.*, ECF 6-4.

- 10 -

Indeed, at the preliminary injunction hearing, Glass Lewis represented to the Court on the record that "the Attorney General started official action against Glass Lewis to enforce SB 2337" by issuing the CID. Prelim. Inj. Tr. at 9:14-10:4. Counsel for the Attorney General never disputed this characterization. *Id.* He cannot claim now, having waited six months, that his CID actually was not covered by the preliminary injunction.

### III.   Defendants have taken irreconcilable positions on whether Glass Lewis' alleged "false speech" is relevant to S.B. 2337.

The Attorney General's amended motion fails for another reason: it adopts a position that is diametrically opposed to the position taken in his Rule 56(d) briefing and the merits discovery he is actively seeking. Throughout this litigation, the Attorney General has defined S.B. 2337 to exclusively reach false, misleading, and deceptive speech as the statute's core subject matter and the basis for its constitutionality:

| Litigation Position | CID Position |
|---|---|
| Rule 26(f) report: "SB 2337 concerns Plaintiff's commercial speech that is **false** or **misleading**." ECF 44 at 3. | Am. Mot. at 5: "determining whether Glass Lewis' conduct was [a] **false**, **misleading**, or **deceptive** act [is] a question S.B. 2337 does not address." |
| Mot. 56(d): S.B. 2337 is constitutional because "the First Amendment does not prevent States from requiring those who are speaking **falsely** to correct the record." ECF 70 at 2; ECF 69 at 14. | Am. Mot. at 3: "***Unlike S.B. 2337***, section 17.61 of the DTPA concerns **false**, **misleading**, or deceptive acts." |
| Mot. 56(d): The "Supreme Court has . . . reaffirmed time and time again that those protections do not extend to **false**, **deceptive**, or **misleading** speech." ECF 69 at 14. | Am. Mot. at 5: The Attorney General "seeks this information to investigate Glass Lewis's potential **false**, **misleading**, or **deceptive** acts or practices rendered unlawful by the DTPA." |

When it comes to defending the law, the Attorney General argued that false speech falls within S.B. 2337's *scope*—that the statute was enacted to address it and is constitutional because the statute targets it. *See, e.g.*, ECF 44, 69, 70. If false speech is within S.B. 2337's scope, then a CID investigating Glass Lewis' false speech is a CID investigating S.B. 2337's domain. The Attorney General cannot define the statute's scope broadly to defend its constitutionality and then

define it narrowly to escape the injunction. Either S.B. 2337's scope encompasses false speech or it does not; the Attorney General cannot "chang[e] positions based upon the exigencies of the moment." *Ergo Sci., Inc. v. Martin*, 73 F.3d 595, 598 (5th Cir. 1996).

Moreover, the Attorney General is actively benefiting from his arguments that S.B. 2337 relates to false and deceptive speech. The Attorney General's motion to defer summary judgment was premised on the specific representation that S.B. 2337 is constitutional because it only covers false speech, and that further discovery on the veracity of Glass Lewis' speech was needed. *See* ECF 69, 70, 90. Indeed, the Attorney General is actively pursuing further merits discovery from Glass Lewis about its supposedly "false" speech. LeBrun Decl. ¶ 9. So, at the same time the Attorney General says false speech is irrelevant to S.B. 2337, he is threatening motions to compel if Glass Lewis does not produce evidence about purported "false speech." *Id.* Having obtained a favorable ruling to defer summary judgment for the purposes of seeking more discovery about Glass Lewis' supposedly "false" speech, the Attorney General cannot do a 180° and say that S.B. 2337 does not concern false speech.

## IV.     Glass Lewis' litigation production already covers nearly all CID categories.

Setting aside the question of whether the CID constitutes enforcement (or if that question is even ripe for judicial review), the motion can be denied on independent grounds. Through its productions in this litigation, Glass Lewis has already provided nearly all materials the CID seeks. The Attorney General does not need a ruling from this Court permitting him to seek documents he already possesses.

Glass Lewis has provided Defendants discovery that already covers the topics sought in the CID. Compare the two side-by-side:

| CID Request | Overlapping Litigation RFP |
|---|---|
| Request 1 (Texas customers) | RFP No. 7 (client contracts); RFP No. 14 (custom policy materials) |
| Requests 2-4 (re-domestication) | RFP No. 20 (recommendations regarding reincorporation in Texas, including financial analysis) |
| Requests 5-6 (ESG disclaimers, conflicts) | RFP No. 18 (conflict-of-interest policies and procedures); RFP No. 16 (marketing materials) |
| Requests 7-8 (robovoting) | RFP No. 15 (internal policies for voting recommendations); |
| Request 9 (Florida/Missouri AG productions) | RFP No. 23 (all documents produced to Florida and Missouri) |

Glass Lewis has already produced documents that are responsive to or bear on each of these categories in the litigation. LeBrun Decl. ¶ 10. And, for the avoidance of doubt and without waiving its objections, Glass Lewis made clear to the Attorney General that the Consumer Protection Division could view these productions. LeBrun Decl. ¶ 7.

Indeed, the parties' email exchange shows that the Attorney General's office would not even tell Glass Lewis what documents it is missing:

> **Attorney General**: "Please see the attached Motion for Clarification on the above-referenced matter. Please indicate whether Glass Lewis opposes this motion."
>
> **Glass Lewis**: "We want to avoid unnecessary motions practice, if possible. . . . [W]hat further information do you contend you need on the CID, but do not have in the production Glass Lewis made in the lawsuit?"
>
> **Attorney General**: "[W]hether certain documents have been produced in that suit is not relevant here."

LeBrun Decl. Ex. 2. The Attorney General does not seek a practical solution to avoid burdening this Court.

In short, the Attorney General already has access to nearly all the documents he seeks, and his office has not disputed this fact or even bothered to tell Glass Lewis what further documents it needs. The Attorney General essentially seeks an advisory opinion that the CID falls outside the injunction—a ruling that is unnecessary for the Attorney General to access these documents and that will be used to take enforcement steps against Glass Lewis in violation of this Court's order.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Amended Motion for Clarification. Glass Lewis requests all other relief to which it may be entitled.


Dated: March 30, 2026

Respectfully submitted,

YETTER COLEMAN LLP

/s/ Bryce L. Callahan
Bryce L. Callahan
State Bar No. 24055248
bcallahan@yettercoleman.com
Grant B. Martinez
State Bar No. 24104118
gmartinez@yettercoleman.com
Lily E. Hann
State Bar No. 24133836
lhann@yettercoleman.com
Jared LeBrun
State Bar No. 24144647
jlebrun@yettercoleman.com
811 Main Street, Suite 4100
Houston, Texas 77002
(713) 632-8000
(713) 632-8002 (fax)

*Attorneys for Plaintiff Glass, Lewis & Co., LLC*


## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2026, a true and correct copy of the foregoing was served on all counsel of record via the Court's CM/ECF system.


/s/ Jared LeBrun
Jared LeBrun


- 14 -