UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

GLASS, LEWIS & CO., LLC,

Plaintiff,

v.

KEN PAXTON, *in his Official Capacity as Attorney General of Texas,*

Defendant,

THE TEXAS STOCK EXCHANGE LLC and THE TEXAS ASSOCIATION OF BUSINESS,

Intervenor-Defendants.

Civil Action No. 1:25-cv-01153-ADA

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSED EXPEDITED MOTION FOR PROTECTIVE ORDER AND TO STAY RULE 30(b)(6) DEPOSITION**

YETTER COLEMAN LLP
Bryce L. Callahan
bcallahan@yettercoleman.com
Grant B. Martinez
gmartinez@yettercoleman.com
Lily E. Hann
lhann@yettercoleman.com
Jared LeBrun
jlebrun@yettercoleman.com
600 Travis Street, Suite 5400
Houston, Texas 77002

*Attorneys for Plaintiff Glass, Lewis & Co., LLC*

The Attorney General's motion is a thinly veiled attempt to freeze Glass, Lewis & Co., LLC out of discovery. It should be denied because he has not established the extraordinary circumstances required to completely prohibit a party's deposition.

## BACKGROUND

### I. The Court Deferred Ruling on Glass Lewis' Motion for Summary Judgment to Allow Limited Additional Discovery.

The Court has preliminarily enjoined the Attorney General "from taking any action to enforce S.B. 2337 against [Glass Lewis.]" Aug. 29, 2025 Minute Entry. In November 2025, Glass Lewis moved for summary judgment to obtain permanent injunctive relief, Dkt. 60; the Court deferred ruling under Rule 56(d) to allow sufficient discovery with respect to the issues that are covered by the summary judgment motions. Dkt. 90; *see also* Dkt. 69, 70 (defendants' Rule 56(d) motions). By email, the Court later ordered that "[a]ll parties reserve rights to make further discovery requests." Ex. 1.

### II. The Attorney General Sues Glass Lewis to Enforce a Civil Investigative Demand.

Just a few weeks after Glass Lewis filed this action to enjoin S.B. 2337, the Attorney General served Glass Lewis with a civil investigative demand ("CID") relating "to the investigation of representations by proxy advisors that may violate [the Texas Deceptive Trade Practices Act ("DTPA")]." Ex. 2 at 10. The CID, like S.B. 2337, targeted Glass Lewis for considering environmental, social, and governance ("ESG") factors in its proxy advice. *Compare* Ex. 2 at 11-12, 15 *with* S.B. 2337 §§ 1(3)(A), 2(B)(1)(A); *see* Ex. 3 at 9:14-10:4 (explaining overlap). The materials sought in the CID overlapped with the Attorney General's discovery requests in this case, showing that the CID was an S.B. 2337 enforcement action. *See* Dkt. 95 at 6-7, 10.

Seven months after the preliminary injunction issued, the Attorney General moved for clarification whether it prohibited enforcement of the CID. Dkt. 94. Agreeing with Glass Lewis, the Court denied the motion, explaining "the injunction order is clear" and "plainly" prohibits the Attorney General "from taking any action to enforce S.B. 2337," but does not bar him "from enforcing other provisions of the law against [Glass Lewis] at this time." May 15, 2026 Text Order.

A week later, the Attorney General filed an action in Collin County District Court to enforce the CID. *State of Tex. v. Glass, Lewis & Co., LLC*, Case No. 471-03524-2026 (Collin Cnty. 471st JDC). The petition sought to compel information relevant to "an investigation of Glass Lewis's possible violation of DTPA Sections 17.46(a) and (b) in its provision of proxy advising services." Ex. 2 at 4 ¶ 11.

In July 2026, the Attorney General nonsuited the CID enforcement action. A few days later, he filed a new state court action, alleging Glass Lewis makes "false representations . . . to investors . . . about [its] investment advice" and "prioritizes its own [ESG] agenda over the fiscal well-being of its clients," in violation of the DTPA. Ex. 4 at 1.

## III. Glass Lewis Serves a Rule 30(b)(6) Deposition Notice.

On September 18, 2026, Glass Lewis noticed a Rule 30(b)(6) deposition of the Attorney General for October 13, identifying nine topics. Dkt. 103-1. At a September 29 meet-and-confer, the Attorney General raised no objections based on privilege, confidentiality, or relevance, saying only that he needed time to decide whether to take the position that he was not required to designate a Rule 30(b)(6) representative. LeBrun Decl. ¶ 4.

## IV. The Attorney General Objects to All Topics and Refuses to Produce a Live Representative for Deposition.

On October 8, the Attorney General objected that eight of nine deposition topics (1) "are outside the scope of this as-applied challenge and confidential under Tex. Bus. & Com. Code §

17.61(f)"; (2) "seek the Office's motive and internal deliberations, which are irrelevant to whether S.B. 2337 is unconstitutional as applied to Glass Lewis"; and (3) "seek privileged and protected material." Ex. 5 at 5-6. On the remaining topic (No. 6), the Attorney General refused to designate a representative, offering instead to "authenticate identified public statements by stipulation or sworn declaration." *Id.* at 6. He also threatened to move for protection to prohibit the deposition. *Id.*

Eight minutes later, the Attorney General served objections and responses to the deposition notice that referenced the then-unfiled "Motion for Protective Order" and stated: "Defendant will promptly move for a protective order as to the Topics to which he objects." LeBrun Decl. ¶ 5; Ex. 6 at 5, 7, 10. He had already decided to move without conferring.

Glass Lewis responded the following day, (1) informing the Attorney General that he failed to confer under Local Rule CV-7(g) and Rule 30(b)(6); (2) offering to meet and confer on October 12; and (3) requesting confirmation "by the end of today that you will serve a privilege log by October 16, 2026." Ex. 5 at 4-5.

**V. The Attorney General Moves for a Protective Order.**

On October 9—without conferring and just one business day before the scheduled deposition—the Attorney General moved for a protective order and to stay the deposition. Dkt. 101. The Court held a status conference, ordering Glass Lewis to respond by October 16 and staying the deposition "pending further order of the Court." Dkt. 106.

## LEGAL STANDARD

Because the Attorney General seeks to "prohibit the taking of a deposition altogether," he faces the "heavy burden" of showing "extraordinary circumstances." *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979); *Bucher v. Richardson Hosp. Auth.*, 160 F.R.D. 88, 92 (N.D. Tex. 1994). "Due to th[is] high burden[,] . . . courts will rarely grant a protective order that completely

prohibits a deposition." *Campos v. Webb Cnty., Tex.*, 288 F.R.D. 134, 137 (S.D. Tex. 2012) (citing *Salter*, 593 F.2d at 650). "The movant must show a particular and compelling need for such an order," so that "courts only grant as narrow a protective order as is necessary under the facts." *Bucher*, 160 F.R.D. at 92.

That burden is heavier still when a party seeks to "prohibit his [] own deposition," given "the non-movant's legitimate interest in trial preparation and the discernable importance of the witness whose deposition is at issue." *Campos*, 288 F.R.D. at 138. In that circumstance, "courts have refused to issue a blanket prohibition on the deposition, and instead have imposed safeguards and conditions on said deposition." *Id.*

## ARGUMENT

Since this case began, Glass Lewis has produced 4,135 documents (more than 800 times the Attorney General) and made its corporate representative available for deposition. LeBrun Decl. ¶ 8. Despite the Court's assurance that "[a]ll parties reserve rights to make further discovery requests," Ex. 1, the Attorney General treats discovery as a one-way street—he has produced only five documents and refuses to make a corporate representative available on *any* of the nine noticed topics. LeBrun Decl. ¶ 8.

The Attorney General veils this bad faith strategy with thin arguments, including unlogged, spaghetti-on-the-wall privilege assertions. The Court should deny the motion and order him to make a corporate representative available for deposition.

### I. Each Deposition Topic Is Relevant.

S.B. 2337 is unconstitutional as a matter of law. It compels speech based on viewpoint and is therefore subject to strict scrutiny, which the Attorney General does not argue it survives. *See* Dkt. 17. But the defendants convinced the Court to permit additional discovery on the premise that some potentially discoverable fact might be material to the summary judgment inquiry. This

opened discovery not just for themselves, but also for Glass Lewis. *See* Ex. 1; *see* Dkt. 99 at 2 (October 20, 2026 discovery deadline).

Nonetheless, the Attorney General seeks to foreclose the deposition altogether with blanket relevance objections. Those objections fail because relevance is no basis to prohibit a deposition under Rule 26(c), *see Keplar v. Google, LLC*, 346 F.R.D. 41, 51 (N.D. Tex. 2024), and in any event, each topic is plainly relevant to his summary judgment defense.

**A. The deposition topics are relevant to counter the Attorney General's summary judgment opposition.**

The Attorney General opposes summary judgment on the ground that "Glass Lewis's representations that it offers objective, financially-driven advice rather than an ideological agenda is the kind of commercial deception that is unprotected by the First Amendment." Dkt. 70 at 3. Naturally then, Glass Lewis seeks to inquire about this alleged "commercial deception," including the "statement[s] by Glass Lewis" that the Attorney General "has identified as purportedly false or misleading"; "[t]he identity of any person . . . who has complained . . . concerning any statement by Glass Lewis"; and "[a]ny complaint, report, referral, tip, or inquiry received by the Office concerning Glass Lewis." Dkt. 103-1 (Topics 1-3 & 9). Since the Attorney General's defense is based on Glass Lewis' supposedly deceptive speech, Glass Lewis is entitled to discover the factual bases for his allegations.

Glass Lewis is also entitled to discover evidence that the Attorney General's deception allegations are pretext for viewpoint discrimination (Topics 4-6 & 8). His defense is undermined if his investigation and enforcement actions against Glass Lewis are motivated by viewpoint animus, not actual consumer deception. *See Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993) ("[A] governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real" and not "mere speculation or conjecture").

The Attorney General would place bulkheads between the Legislature's motives for enacting S.B. 2337 and his own motives for investigating and enforcing the DTPA against Glass Lewis, but they dissolve under scrutiny. Coinciding with his service of the CID, the Attorney General issued a press release oozing with viewpoint animus:

> Attorney General Ken Paxton is defending a new Texas state law that requires proxy advisors to disclose when they're ***pushing left-wing goals*** as opposed to making recommendations solely on financial considerations. . . .
>
> . . . S.B. 2337 would prevent companies from secretly trying to ***push a woke agenda*** in corporate America by forcing them to disclose if their motivations are aimed at ***promoting political goals, including DEI and ESG.***
>
> "The role of a proxy advisor is to provide sound guidance based on financial considerations, ***not use their position to promote woke, left-wing ideology***," said Attorney General Paxton. "S.B. 2337 stops ***liberal activists posing as proxy advisors from giving guidance based on their ideological goals*** without making that clear to their clients. The new law is critical for promoting transparency in corporate America, and ***I will continue to defend it aggressively in the courts***."

Dkt. 59 at ¶ 94 (emphasis added).

This statement—and others like it that Glass Lewis may discover—show that the Attorney General's anti-deception defense is inextricably intertwined with viewpoint animus, such that one can see deception or fraud in Glass Lewis' representations only through an anti-woke, anti-left-wing ideological lens. Such statements are also directly relevant to Glass Lewis' vagueness challenge, since they show the law in fact "lends itself to selective enforcement against unpopular causes." *NAACP v. Button*, 371 U.S. 415, 435 (1963) (cited in Dkt. 60 at 35).[1]

---

[1] The Attorney General cites several cases for the argument that discovery into the "mental processes" of government officials is generally not permitted, Dkt. 101 at 7, but none involved First Amendment claims. *United States v. Morgan*, 313 U.S. 409, 422 (1941), and *In re F.D.I.C.*, 58 F.3d 1055, 1061-62 (5th Cir. 1995), concerned depositions of "high-level government officers," *id.*, and *In re Office of Inspector General*, 933 F.2d 276 (5th Cir. 1991), was a subpoena enforcement action where the subpoena target sought counter-discovery from the agency. Ironically, the Attorney General cites *Reed v. Town of Gilbert*, 576 U.S. 155, 165-66 (2015), to argue that the government's motive is irrelevant in First Amendment challenges, Dkt. 101 at 4-5, but *Reed* holds the opposite: "strict scrutiny applies either when a law is content based on its face *or when the purpose and justification for the law are content based*, a court *must evaluate each question* before it concludes that the law is content neutral." 576 U.S. at 165-66 (emphasis added).

The Attorney General raises no objection to Topic No. 7 ("Glass Lewis' alleged contacts with Texas . . ."), which is "tantamount to not filing a motion for protective order on th[at] topic[]." *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 143 (E.D. Tex. 2003).

**B. The Attorney General's relevance objections are undermined by his own discovery requests.**

The Attorney General argues that the DTPA action is not relevant because it is brought by a separate division of the Attorney General's Office "by counsel who are not on this S.B. 2337 defense team." Dkt. 101 at 3. But the Attorney General sought discovery from Glass Lewis in this case about Florida and Missouri's investigations of Glass Lewis:

| |
|---|
| <u>**REQUEST FOR PRODUCTION NO. 23:**</u> All Documents and responses produced to the States of Florida and Missouri in connection with the civil investigations into Glass Lewis conducted by their respective Attorneys General during the Focus Period. |

Ex. 7 at 7.

So, the Attorney General contends that his own Consumer Protection Division's investigation, launched just after Glass Lewis filed this action, is too far afield, but *other states'* similar investigations are relevant to the claims and defenses here. That's implausible.

**C. Glass Lewis is not barred from discovery merely because it believes the case can be resolved as a matter of law.**

The Attorney General argues Glass Lewis should be barred from taking discovery because "[b]y Glass Lewis's own account, this case turns on questions of law." Dkt. 101 at 3-4. But he cites no authority holding that a party forfeits discovery by arguing its case should be resolved as a matter of law. Having successfully argued that additional discovery was needed before Glass Lewis' motion for summary judgment becomes ripe, he cannot make that discovery unilateral just because Glass Lewis believes the case can be resolved as a matter of law.

## II. There Is No Apex Issue.

The deposition notice states Glass Lewis "will take the . . . deposition of the Office of the Attorney General . . . , who shall designate one or more officers, agents, or other persons who consent to testify on its behalf regarding the matters set out in Exhibit A." Dkt. 103-1 at 1. Glass Lewis does not insist that the Attorney General himself sit for the deposition, so his opposition to an inquiry into his own "personal thoughts and statements" is a red herring. Dkt. 101 at 7.

## III. There Is No Confidentiality or Privilege Issue.

The Attorney General invokes—or purports to have a non-party, non-counsel declarant invoke—at least six different privilege doctrines, hoping one will stick. None does.

**Texas Business and Commerce Code Section 17.61(f).** The Attorney General does not identify any deposition topics that implicate Section 17.61(f), and it is unclear how any could. The notice seeks oral testimony, not "documentary material." And Section 17.61(f) covers only material "produced pursuant to a demand," but the only CID the Attorney General identifies is the CID to Glass Lewis. Tex. Bus. & Com. Code § 17.61(f). Showing material to the party that produced it raises no confidentiality concern.

**Attorney-Client Privilege.** The Attorney General argues that "testimony on Topic Nos. 2, 3, 4 and 8 . . . would necessarily disclose [] privileged materials." Dkt. 101-2 at ¶ 1 (J. Stone Decl.). But those topics do not implicate privileged materials or communications even *prima facie*—they concern the "identity" of alleged complainants (Topic 2), the substance of such complaints from third parties (Topic 3), and the details of the DTPA investigation (Topics 4 & 8). These are *factual* matters, and the attorney-client privilege "protects only *communications*, not the underlying facts." *League of United Latin Am. Citizens v. Abbott*, 342 F.R.D. 227, 232 (W.D. Tex. 2022).

The Stone declaration merely asserts that the Consumer Protection Division's investigative file contains "[m]any . . . materials [that] are attorney-client communications between Division

attorneys and Division personnel[.]" Dkt. 101-2 ¶¶ 1-2. Such "blanket assertion[s] of privilege" are "simply inadequate," *U.S. v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982), and do not establish the "extraordinary circumstances" required to bar the deposition. *Salter*, 593 F.2d at 651; *see also Blockbuster Entm't Corp. v. McComb Video, Inc.*, 145 F.R.D. 402, 404 (M.D. La. 1992) (holding an "unsupported assertion of [] privilege is not sufficient to support either quashing the notice of deposition or a protective order"). Instead, the Attorney General must object to particular questions during the deposition. *See Borden, Inc. v. Valdez*, 773 S.W.2d 718, 720-21 (Tex. App.—Corpus Christi-Edinburg 1989, no writ) (a deposition may not be avoided "in its entirety merely because some matters may be privileged, but [the defending attorney] must object when those inquiries are raised during the deposition"); *West v. Solito*, 563 S.W.2d 240, 246 (Tex. 1978) (same); *see also League of United Latin Am. Citizens*, 342 F.R.D. at 232 (following this approach and noting: "Whether the attorney-client privilege attaches to an answer [] is fact-specific. In this context, that also means the applicability of the privilege is statement-specific") (citation omitted).

The Attorney General's remaining arguments are a dog's breakfast. Each fails:

- **Work Product Doctrine.** The work product doctrine is inapplicable because it "only protects documents and tangible things . . . and [] does not protect the disclosure of underlying relevant facts." *Blockbuster*, 145 F.R.D. at 403; *Ferko*, 218 F.R.D. at 136; Fed. R. Civ. P. 26(b)(3)(A).
- **Deliberative Process Privilege.** This "protects *only* those agency communications or parts of agency communications that *relate to the agency's policymaking*" as opposed to investigative or enforcement decisions targeting a particular individual. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 364 (Tex. 2000) (emphasis added); *accord* Tex. Att'y Gen. Op. Ord. 615, 1993 WL 720210, at *4 (June 29, 1993). The Stone Declaration describes "internal assessments of *enforcement* options," "pre-decisional deliberations about whether and how to *investigate, charge, and resolve the matter*," and "internal *evaluation of the evidence*"—decidedly *not* policy matters. Dkt. 101-2 at 2 ¶¶ 2-3.
- **Informer's Privilege.** This privilege is "not absolute," *United States v. Ortega*, 854 F.3d 818, 824 (5th Cir. 2017), and "must give way when disclosure is essential to a fair determination of a cause," balancing "the government's interest in nondisclosure against the private litigant's interest in disclosure." *In re Kleberg Cnty., Tex.*, 86 F. App'x 29, 33 (5th Cir. 2004) (cleaned up). Here, where the investigation is civil, potential informants are

institutional shareholders, and the investigation's target is Glass Lewis, the "safety of the informant" is a non-issue, so the government's interest against disclosure is null. *Id.* at 34. Meanwhile, discovery on Topic No. 2 is essential because Glass Lewis suspects *no person* has complained about "any statement by Glass Lewis." Dkt. 103-1 at 3. The Attorney General may not use the privilege to hide that S.B. 2337 is based on "mere speculation or conjecture" rather than "real" harms. *Edenfield*, 507 U.S. at 770-71.

- **Law Enforcement and Investigative Privilege.** This privilege "protect[s] government documents relating to an ongoing criminal investigation." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 570 (5th Cir. 2006). The DTPA suit against Glass Lewis is a civil—not criminal—proceeding, and the Attorney General does not allege there is any related criminal investigation. *See* Dkt. 101-2 at 3 ¶ 5.

## IV. The Attorney General Flouted Multiple Conference Requirements.

The Attorney General falsely certifies that he conferred in good faith as Local Rule CV-7(g) requires. Dkt. 101 at 12. In fact, he decided to file before there had been any opportunity to substantively confer. *See* LeBrun Decl. ¶¶ 4-7; Ex. 6 at 5, 7, 10. And, instead of conferring "in good faith about the matters for examination" "[b]efore or promptly after the notice . . . is served," Fed. R. Civ. P. 30(b)(6), the Attorney General sandbagged, revealing his objections 20 days after service and two business days before the deposition. LeBrun Decl. ¶¶ 4-5. This is an independent reason to deny the motion.

## CONCLUSION

Glass Lewis requests that the Court deny the motion for protection, order the Attorney General to make a representative available for deposition, and grant all other relief to which Glass Lewis may be entitled.

Dated: October 16, 2026

Respectfully submitted,

YETTER COLEMAN LLP

*/s/ Bryce L Callahan*

Bryce L. Callahan
State Bar No. 24055248
bcallahan@yettercoleman.com
Grant B. Martinez
State Bar No. 24104118
gmartinez@yettercoleman.com
Lily E. Hann
State Bar No. 24133836
lhann@yettercoleman.com
Jared LeBrun
State Bar No. 24144647
jlebrun@yettercoleman.com
600 Travis Street, Suite 5400
Houston, Texas 77002
(713) 632-8000
(713) 632-8002 (fax)

*Attorneys for Plaintiff Glass, Lewis & Co., LLC*

**Certificate of Service**

I certify that on October 16, 2026, a copy of this document was served on all counsel of record using the Court's e-filing system.

*/s/ Jared LeBrun*

Jared LeBrun