UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| GLASS, LEWIS & CO., LLC,<br><br>Plaintiff,<br><br>v.<br><br>KEN PAXTON, *in his Official Capacity as Attorney General of Texas,*<br><br>Defendant,<br><br>THE TEXAS STOCK EXCHANGE LLC and THE TEXAS ASSOCIATION OF BUSINESS,<br><br>Intervenor-Defendants. | Civil Action No. 1:25-cv-01153-ADA |

**PLAINTIFF GLASS LEWIS' MOTION TO COMPEL DISCOVERY RESPONSES**

This motion presents a simple question: is discovery a one-way proposition? Defendants wrongly think so. When Defendants sought Rule 56(d) discovery to test whether Glass Lewis supposedly misleads its clients, Glass Lewis provided documents in good faith. But when Glass Lewis asked for evidentiary support for Defendants' defenses, Defendants refused to answer 64 of 66 requests. The result is below: Glass Lewis has produced 4,135 documents; the Attorney General 39. LeBrun Decl. ¶¶ 4-5. Intervenors have produced *zero* documents in response to 25 requests.




Such lopsided participation flouts the rule that discovery "must be a two-way street." *Wardius v. Oregon*, 412 U.S. 470, 475 (1973). And Defendants' wholesale refusal to participate in written discovery has no basis. Their responses ignore the Rules by rattling off boilerplate objections and refusing to state the basis for their withholding. They explain only two objections: relevance and privilege, and neither survives scrutiny. Defendants put consumer deception at issue, which is the entire reason for the Rule 56(d) discovery. And their privilege objections fare no better: the Attorney General improperly withholds his entire investigative file on a blanket privilege claim, while the Texas Association of Business ("TAB") uses associational privilege to hide the purported member harm it explicitly invoked to intervene.

The Court should find Defendants' boilerplate objections waived, order compliant responses under Rules 33 and 34, overrule the relevance objection, reject the Attorney General's blanket privilege claim, and overrule TAB's associational privilege objection.

## BACKGROUND

Since this case began, Defendants have insisted that the Court must allow full discovery. Intervenors told the Court that "TAB's members are the same Texas public companies who are the subject of the proxy advisors' misleading statements" and were "in a unique position to assist the Court . . . in discovering the facts required to defend against Plaintiff's claims." Dkt. 22 at 17.

So after Glass Lewis moved for summary judgment, Defendants moved to defer ruling under Rule 56(d). Intervenors argued that consumer deception was critical to the case because "[i]f Glass Lewis is misleading its clients, . . . that false commercial speech would not receive First Amendment protection." Dkt. 69 at 14. The Attorney General joined that motion in full. Dkt. 70 at 2. The Court granted the motions, allowing discovery into Defendants' claims that Glass Lewis had engaged in supposedly "deceptive" speech. Dkt. 90. On August 11, 2026, the Court clarified that "[a]ll parties reserve rights to make further discovery requests and objections." Ex. 1 at 1.

Following that Order, Glass Lewis sought discovery to uncover the basis for Defendants' far-fetched claim that Glass Lewis deceives its clients. It served a second set of interrogatories and requests for production and noticed Rule 30(b)(6) depositions. *See* Exs. 2-8; LeBrun Decl. ¶ 2-3. Of these sixty-six requests, Defendants substantively answered only two:

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ATTORNEY GENERAL | Interrogatories | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | | | |
| | Requests for production | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 |
| TAB | Interrogatories | 14 | 15 | 16 | 17 | 18 | 19 | 20 | | | | | | | | |
| | Requests for production | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | 40 | 41 | |
| TXSE | Interrogatories | 16 | 17 | 18 | 19 | 20 | 21 | 22 | | | | | | | | |
| | Requests for production | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 37 | 38 | 39 | | | | |

Red marks a substantive refusal; dashed red boxes were ignored entirely.

TAB answered zero interrogatories. The Texas Stock Exchange LLC ("TXSE") answered only two.[1] They produced no documents in response to any of Glass Lewis' 25 second requests for production, without identifying why they were withholding documents or the basis for doing so. LeBrun Decl. ¶ 6; Exs. 3-6. TXSE skipped Requests 36 and 37 entirely (which sought communications with listees). *Compare* Ex. 8 at 7 (RFP Nos. 36-39), *with* Ex. 5 at 7-8. And TAB refused to designate a witness on four of nine 30(b)(6) topics. Ex. 7.

The Attorney General substantively answered none of his twelve interrogatories. Ex. 2 at 4-9. Many of his responses say "Defendant will not disclose," "Defendant will not provide," or (without explaining why) that he "withholds responsive information." *Id.* at 4, 7, 9. On October 16, he served 34 documents, but the majority of them were Glass Lewis and ISS's own documents. LeBrun Decl. ¶ 5. Symbolic of this lopsided discovery, the Attorney General's four internal documents redact every word written by his staff except the portion of his email written by Glass Lewis. *Id.*

## LEGAL STANDARD

Discovery reaches "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Accordingly, the scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). A party resisting discovery "must show specifically how each [request] is not relevant or how each question is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (internal quotation omitted).

[1] TXSE's two answers (1) identify its public listees and (2) admit that it "has not communicated with listees about its decision to intervene." Ex. 6 at 4-5. Yet TXSE's entire basis for intervening was that its "listees will be harmed if [Glass Lewis] obtains its requested relief." Dkt. 22-1 at 2. In other words, TXSE's answer to Interrogatory No. 18 confirms its justification for intervention was invented out of whole cloth.

## ARGUMENT

### I. Defendants must answer Glass Lewis' requests as the Rules require.

Defendants' wholesale objections violate the plain language of the Federal Rules. An interrogatory "must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). "The person who makes the answers must sign them." Fed. R. Civ. P. 33(b)(5). Objections must be stated "with specificity." Fed. R. Civ. P. 33(b)(4), 34(b)(2)(B). Objections to document requests "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). And an "evasive or incomplete" answer "must be treated as a failure to . . . answer." Fed. R. Civ. P. 37(a)(4).

Defendants ignore these requirements. Nine of Intervenors' twelve unanswered interrogatories list objections and nothing else. Ex. 4 at 4-6; Ex. 6 at 4-6. There is no answer, no explanation of which objection applies, no statement that nothing responsive exists, and no verification. On the requests for production, 18 of their 23 document responses say only that they "will not produce," without saying whether responsive documents exist or the reason for the withholding. Exs. 3, 5. The responses raise a blanket relevance objection each time, stating merely the request is "not relevant to the claims and defenses in this action[.]" *E.g.*, Ex. 4 at 4-6; *Heller v. City of Dallas*, 303 F.R.D. 466, 483-84 (N.D. Tex. 2014) (boilerplate objections are "improper and ineffective"). TXSE does not respond at all to two requests. Exs. 5, 8. *See In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) ("[W]hen a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived.").

The Attorney General's responses are no better. He objects that many requests are outside the "scope" of this case and that he "will not disclose," "will not provide," or "otherwise withholds responsive information." Ex. 2 at 4, 7, 9. For most document requests, he says only that "any responsive document will be produced" somewhere in his October 16 production, without saying

what he withheld or why. *Id.* at 10-15. He withholds his investigative file wholesale and does not list it on his privilege log, apparently because he has unilaterally decided it is irrelevant. Ex. 9.

These objections are improper. "In the face of such objections, it is impossible to know whether information has been withheld and, if so, why." *Heller*, 303 F.R.D. at 483 (quotation omitted). In *LUPE*, the intervenors "had not produced a single document . . . or substantively answered a single interrogatory." *La Union del Pueblo Entero v. Abbott*, 2022 WL 17574079, at *3 (W.D. Tex. 2022) ("*LUPE*"). The Court held that their "boilerplate, and unsupported objections" were "improper and result in waiver of those objections," and it ordered them to produce documents, supplement their answers, and log what they withheld. *Id.* at *4, *10 (quotation omitted); *see also Ambler v. Nissen*, 2023 WL 443806, at *7 (W.D. Tex. Jan. 26, 2023) (Hightower, M.J.) (ordering amended responses stating "whether any responsive materials are being withheld on the basis of each" objection).

As in *LUPE*, the Court should hold that Defendants have waived their boilerplate objections. It should then order each Defendant to serve responses that comply with Rules 33 and 34: answer each interrogatory fully and under oath, state for each request whether responsive documents are being withheld and why, and log any document withheld as privileged.

## II. Defendants' relevance and privilege objections fail.

Beyond boilerplate, Defendants make only two objections: relevance and privilege. Both fail. Unless the Court overrules them, Defendants' amended responses will simply repeat them.

### A. The requests test the deception theory Defendants used to obtain discovery.

Start with relevance. Glass Lewis' requests seek information on whether anyone was actually deceived by Glass Lewis' statements and Defendants' basis for claiming Glass Lewis has engaged in deceptive speech. Resp., Dkt. 107, at 5. That is exactly the issue presented in Rule 56(d) discovery. Intervenors told the Court that "outstanding discovery will indicate whether Glass

Lewis makes false or misleading representations in the context of a commercial transaction," and "discovery will confirm that Glass Lewis is misleading customers." Dkt. 79 at 7; Dkt. 69 at 15. Just as Defendants obtained discovery testing whether Glass Lewis' speech is deceptive, Glass Lewis can seek discovery showing that their allegations of deception are specious and pretextual.

In its supplement to its motion for summary judgment, Glass Lewis intends to show that neither the Attorney General nor Intervenors can identify Glass Lewis clients who have been deceived. Such an omission would be critical, because a government restriction on speech "must demonstrate that the harms it recites are real." *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993). By withholding discovery, Defendants make it impossible to know whether such documents do not exist or are simply being withheld. The record so far shows the Attorney General sued for deceptive trade practices without contacting a single Glass Lewis client. It also suggests that TAB's members are not Glass Lewis' clients at all, but companies that dislike its recommendations. Either fact would show that the recited harms are not real. Indeed, such facts show that the interventions themselves were based on false pretenses.

The Attorney General's claim that such discovery belongs in state court is confused on multiple levels. At the request of the Attorney General, merits discovery in state court "is not open," and will not be for several months, if ever. Ex. 10; LeBrun Decl. ¶ 7. The possibility that Glass Lewis might one day obtain similar discovery in a different case has zero bearing on whether it is relevant to this case now. And the Attorney General must have thought state investigations are relevant, having sought and obtained the documents Glass Lewis produced to the Missouri and Florida Attorneys General. Ex. 11 at 7 (RFP No. 23); LeBrun Decl. ¶ 8; *see* Resp., Dkt. 107, at 7. Defendants apparently contend that *Missouri*'s investigation is relevant, but the *Texas* Attorney

General's own investigation is not. That is implausible, and the Court should overrule the relevance objection.

**B. The Attorney General's blanket privilege claim fails.**

The Attorney General's blanket privilege assertions also fail. He bears the burden of proving each privilege he asserts, and "[a]mbiguities as to whether the elements of a privilege claim have been met are construed against the proponent." *EEOC v. BDO USA*, 876 F.3d 690, 695 (5th Cir. 2017).

There are multiple problems with his approach. First, a "blanket assertion of the privilege" is "simply inadequate." *United States v. El Paso Co.*, 682 F.2d 530, 541 (5th Cir. 1982). Yet he has done just that—asserting that the investigative file is both blanket privileged and blanket irrelevant. Ex. 2. Second, he does not log a single document from the investigative file, as Rule 26(b)(5)(A) requires. Ex. 9. Third, the facts Glass Lewis seeks—who was deceived, who complained, and what the investigators did—are not privileged. Work product, if it applies, "protects only the documents themselves and not the underlying facts." *In re Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir. 1982). The identities of any Glass Lewis clients who complained have nothing to do with attorney impressions. They are facts, and those facts are discoverable.

Nor does the investigative/law-enforcement privilege apply. *See* Resp., Dkt. 107, at 9-10. That qualified privilege protects "investigative files in an ongoing criminal investigation." *In re U.S. Dep't of Homeland Sec.*, 459 F.3d 565, 569 (5th Cir. 2006) (internal quotation omitted); *SEC v. Cuban*, 2013 WL 1091233, at *8 (N.D. Tex. 2013) (the privilege "does not extend to . . . civil investigations"). The Attorney General's investigation is neither criminal nor ongoing.

Finally, the deliberative process privilege and Section 17.61(f) have no application. The deliberative process privilege applies only to *policymaking* decisions, not investigations. Resp.,

Dkt. 107, at 9; *La Union del Pueblo Entero v. Abbott*, 2023 WL 4923947, at *4 (W.D. Tex. 2023) (state failed to show investigative documents were "inextricably intertwined with agency decision-making"); *Cuban*, 2013 WL 1091233, at *9 (deliberative process privilege "does not protect pure facts"). As to Section 17.61(f), the only party to receive a Civil Investigative Demand is Glass Lewis and, as this Court has recognized, state laws restricting the disclosure of investigative material "do[] not apply in federal court." *Ambler*, 2023 WL 443806, at *2; Resp., Dkt. 107, at 8. The Court should therefore reject the Attorney General's blanket assertion and order him to answer the interrogatories and either produce the investigative file or log each withheld document.

### C. TAB cannot use associational privilege to hide the member harm it invoked to intervene.

#### 1. TAB put its members' harm at issue.

TAB's privilege assertion is even more speculative, claiming "associational privilege" over the very claims it used to intervene in this case. TAB is a party precisely because it told the Court that its members were harmed. It moved "on behalf of its Texas public-company members," and said those members "will continue to be harmed by false and misleading proxy advice." Dkt. 22 at 1, 10. When Intervenors later sought Rule 56(d) discovery, they argued that Glass Lewis' claims should face "the crucible of meaningful discovery." Dkt. 69 at 12. TAB's own claims deserve that same test. So, Glass Lewis asked TAB to identify the members it contends were deceived and the members that asked it to intervene, and to produce documents reflecting the harm. Ex. 3 at 5-6, 8-9 (RFP Nos. 29-30, 37-38); Ex. 4 at 4 (Interrogatory Nos. 14-15). TAB refused every request and invoked associational privilege to avoid naming any member. *See* Ex. 3 at 8-9; Ex. 4 at 4.

Having intervened based on harm to their members, Intervenors cannot now claim that information is off-limits. Once it joins, a party "cannot realistically hope to pursue [the] suit in a risk-free atmosphere." *Nat'l Org. for Women v. Sperry Rand Corp.*, 88 F.R.D. 272, 275 (D. Conn.

1980). A plaintiff is "plainly entitled to discovery as to the Defendant Intervenors' defenses." *LUPE*, 2022 WL 17574079, at *5. Intervenors used their membership as a sword to thrust themselves into the case; they cannot use that same membership as a shield to resist discovery.

The need for discovery is greatest when, as here, the party claiming the privilege "has placed certain information into issue." *Grandbouche v. Clancy*, 825 F.2d 1463, 1467 (10th Cir. 1987); *see In re Motor Fuel Temperature Sales Pracs. Litig.*, 707 F. Supp. 2d 1145, 1162 (D. Kan. 2010) (factor "weighs strongly in favor of disclosure"). So when an association sues on behalf of its members, courts may properly order it to identify those members and answer interrogatories about their harm. *NIACCF, Inc. v. Cold Stone Creamery, Inc.*, 2014 WL 4545918, at *4-5 (S.D. Fla. Sept. 12, 2014). Such information goes "to the heart of this case" and parties have "a right to investigate the factual assertions made." *Id.* at *4.

TAB claimed its members were "harmed by false and misleading proxy advice." Dkt. 22 at 1. TAB cannot make that claim and then refuse to say who was harmed, when, and how. By TAB's own account, its members are "the subjects and recipients" of the proxy advice at issue. Dkt. 22-2 ¶ 7. If they cannot identify a single misleading statement or resulting harm, then the harms Defendants recite are not "real," and their deception theory fails. *See Edenfield*, 507 U.S. at 770-71. Glass Lewis cannot test that question while TAB withholds even the identities of the members it says were injured.

**2. TAB has not shown that disclosure would chill anyone.**

Nor have Intervenors substantiated their associational privilege claim. Parties claiming the privilege must make a prima facie showing of "an objectively reasonable probability of a chilling effect." *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 2016 WL 5922315, at *6 (W.D. Tex. 2016) (Austin, M.J.). That showing must rest on "objective and articulable facts." *In re Motor Fuel Temperature Sales Pracs. Litig.*, 641 F.3d 470, 489 (10th Cir. 2011) (quotation

omitted). Intervenors offer a one-sentence objection and no evidence of chill. Ex. 4 at 4. Further, confidentiality concerns can be addressed via the Court's protective order. *See* Dkt. 56 ¶ 2(a). TAB has not articulated any discrete harm to its members from *public* disclosure, much less an attorneys'-eyes-only disclosure. A trade association that offers no evidence of "hostility related to associating with" it cannot use the privilege to avoid identifying its members. *ERISA Indus. Comm. v. Asaro-Angelo*, 2023 WL 2808105, at *7 (D.N.J. 2023). Indeed, TAB's website publicly names several members, including Texas Mutual, JPMorgan Chase, and Amazon. Ex. 12.

Moreover, Glass Lewis' requests are narrow. It asks TAB to identify only the members it contends were deceived, harmed, or involved with S.B. 2337, and to produce documents reflecting that harm. The disclosure of member identities extends only to those facts directly relevant to TAB's defense.

* * *

Intervenors joined the case promising to help in "discovering the facts required to defend against Plaintiff's claims." Dkt. 22 at 17. The Court should hold Intervenors to that promise and order them to produce the evidence of member harm they put at issue.

## CONCLUSION

Defendants have wholesale refused to engage in Rule 56(d) discovery. The Court should (1) order that Defendants' boilerplate objections are waived; (2) order each Defendant to serve responses that comply with Rules 33 and 34 within seven days; (3) overrule Defendants' relevance objections; (4) hold that the Attorney General may not withhold his investigative file on a blanket privilege assertion; and (5) overrule TAB's associational privilege objection and order TAB to present a Rule 30(b)(6) designee on TAB's members.

Dated: October 19, 2026

Respectfully submitted,

YETTER COLEMAN LLP

*/s/ Bryce L. Callahan*

Bryce L. Callahan
State Bar No. 24055248
bcallahan@yettercoleman.com
Grant B. Martinez
State Bar No. 24104118
gmartinez@yettercoleman.com
Lily E. Hann
State Bar No. 24133836
lhann@yettercoleman.com
Jared LeBrun
State Bar No. 24144647
jlebrun@yettercoleman.com
600 Travis Street, Suite 5400
Houston, Texas 77002
(713) 632-8000
(713) 632-8002 (fax)

*Attorneys for Plaintiff Glass, Lewis & Co., LLC*

**Certificate of Conference**

The parties conferred on these requests several times and did not reach agreement. On September 29, 2026, the parties conferred on upcoming depositions, where counsel for Glass Lewis informed Defendants that it would likely need to move to compel if Defendants continued to resist discovery. On October 8 and 9, counsel for Glass Lewis discussed the associational privilege objections with counsel for Intervenors, who stated that they would not withdraw the objection. Separately on October 8 and 9, counsel for Glass Lewis emailed the Attorney General to confer on his privilege and relevance objections. On October 15 and 16, counsel for Glass Lewis again emailed Defendants to ask if they would (1) withdraw their associational privilege assertions and (2) respond in substance to Glass Lewis' discovery requests. Defendants would not agree to either request.

/s/ *Jared LeBrun*
Jared LeBrun

**Certificate of Service**

I certify that on October 19, 2026, a copy of this document was served on all counsel of record using the Court's e-filing system.

*/s/ Jared LeBrun*
Jared LeBrun