**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| GLASS, LEWIS & CO., LLC,<br><br>Plaintiff,<br><br>v.<br><br>KEN PAXTON, *in his Official Capacity as Attorney General of Texas*,<br><br>Defendant;<br><br>THE TEXAS STOCK EXCHANGE and THE TEXAS ASSOCIATION OF BUSINESS,<br><br>Intervenor-Defendants. | Civil Action No. 25-cv-01153-ADA |

**INTERVENOR-DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF GLASS LEWIS'S MOTION TO COMPEL DISCOVERY RESPONSES**

Intervenor-Defendants the Texas Stock Exchange ("TXSE") and the Texas Association of Business ("TAB") (together, "Intervenors") oppose Plaintiff Glass, Lewis & Co., LLC's ("Glass Lewis") *Motion to Compel Discovery Responses*, Dkt. 109 (the "Motion"). Through its Motion, Glass Lewis seeks to eviscerate the well-established First Amendment associational privilege to force TAB to reveal the identities of its members and seeks discovery into issues that have no relation to SB 2337's constitutionality. This stands in stark contrast to Glass Lewis's prior representations to the Court that "[f]urther discovery is not needed" when it opposed Defendants' request for additional time to complete discovery into Glass Lewis's practices pursuant to Fed. R. Civ. P. 56(d). Yet now, a day before the end of fact discovery, Glass Lewis filed a motion that says the opposite.

As explained below, TAB meets its initial "light" burden to gain the protections of the associational privilege because disclosure of its members and their association-related activities may have a chilling effect on the freedom to associate given Glass Lewis's dominant market power, its influence on investor voting, and the subjective nature of its recommendations along with its demonstrated bias. And Glass Lewis has not explained (and cannot show) why it needs this information or why it is relevant to the claims or defenses, which focus on the constitutionality of SB 2337. The information it seeks has no bearing on SB 2337's constitutionality. Indeed, with the law firmly against Glass Lewis, there is only one possible explanation for motivation here. It seeks retribution against those companies that have dared to stand up to the proxy advisory duopoly by supporting a law that commands transparency to benefit the everyday investors who are ultimately impacted by Glass Lewis's proxy advisory services. This motive is improper, and the Motion should be denied.

## BACKGROUND

Over the past 13 months, Intervenors have responded to numerous discovery requests from Glass Lewis and objected to some where appropriate. Yet in the Motion, Glass Lewis falsely suggests

that Intervenors ignored nearly all of Glass Lewis's discovery requests, writing that "Intervenors have produced *zero* documents in response to 25 requests" and accusing Defendants of "wholesale refusal to participate in written discovery." Motion at 1; *see also* Dkt. 109-1 ¶ 6 (counsel declaration stating, "TAB and TXSE produced zero documents in response to Glass Lewis' twenty-five requests for production."). Contrary to these false statements, Intervenors produced over 4,000 pages of materials in this case and substantively responded to 52 of Glass Lewis's requests for production and responded to 29 of its interrogatories.

Indeed, Intervenors responded to Glass Lewis's first set of written discovery requests on October 31, 2025. Those requests included (a) 28 requests for production ("RFP") and 15 interrogatories ("ROG") to TXSE and (b) 27 RFPs and 13 ROGs to TAB. TXSE substantively responded to all but one RFP, stating that it (1) would search for and produce any responsive documents it had, (2) had no responsive documents, or (3) expected such documents to be within Glass Lewis's possession, since this case is about a law that regulates the conduct of Glass Lewis and other proxy advisors like it. *See* Rasmussen Declaration ("Rasmussen Decl.") at Ex. 1. TXSE objected to 1 RFP as irrelevant to SB 2337's constitutionality. TXSE also substantively responded to all interrogatories. *See id.* at Ex. 2.

For its part, TAB substantively responded to 20 RFPs, stating that it (1) would search for and produce any responsive documents it had (some of which were already included in pleadings, which TAB identified), (2) had no responsive documents, or (3) expected such documents to be within Glass Lewis's possession as opposed to its own. *See id.* at Ex. 3. TAB stood on its objections for the remaining 7 RFPs, which sought disclosure of TAB's members or other information not relevant to SB 2337's constitutionality.[1] *Id.* TAB also substantively responded to 9 interrogatories. TAB objected

[1] This includes requests for information that plainly have no bearing on the issues in this case, including documents regarding the resignation of TAB's prior President and CEO, an unrelated lawsuit in which TAB is a defendant, and TAB political donations.

to the remainder because three sought member identities and one had no bearing on SB 2337's constitutionality. *Id.* at Ex. 4.

Nearly a year later, and ten months after moving for summary judgment, Glass Lewis served its second set of written discovery requests on September 18, 2026, including an additional (a) 11 RFPs and 7 ROGs to TXSE and (b) 14 RFPs and 7 ROGs to TAB. TXSE substantively responded to 4 RFPs and objected to the others either as duplicative of prior requests or because they have no bearing on the issues related to Glass Lewis's motion for summary judgment, such as requests concerning TXSE's intervention or its political donations.[2] *Id.* at Ex. 5. TXSE also substantively responded to 4 ROGs and objected to 3 others as duplicative of prior requests or irrelevant to this case. *Id.* at Ex. 6.

TAB substantively responded to 1 RFP, objected to five others as duplicative of prior requests, and objected to the remaining requests that either sought member information or information with no bearing on SB 2337's constitutionality, such as the resignation of TAB's prior President and CEO, a lawsuit in which TAB is a defendant, and TAB political donations. *Id.* at Ex. 7. TAB also substantively responded to one interrogatory and objected to the remainder as either privileged, irrelevant to SB 2337's constitutionality, or outside of its possession. *Id.* at Ex. 8.

On October 15, 2026, Glass Lewis asked to meet and confer regarding Intervenors' discovery responses and objections. *See id.* at Ex. 9. Yet Glass Lewis did not identify any specific discovery requests it wanted to discuss and only identified a single objection Intervenors had made—the associational privilege objection. Intervenors' counsel offered availability for a meet and confer call while also asking Glass Lewis to identify specific issues to discuss, including the basis for its privilege challenge. Glass Lewis instead responded on October 16 by asking for Intervenors to "confirm by

[2] TXSE inadvertently omitted two RFP responses from its initially-served responses. Glass Lewis never raised this before filing the Motion. Upon learning this when reviewing the Motion, Intervenors promptly supplemented their responses on October 19, 2026, which was within the permitted time to respond to Glass Lewis's second set of written discovery requests. *Id.* at Ex. 10.

5:00 pm today, October 16, whether you will substantively answer our interrogatories and produce responsive documents to our RFPs." *Id.* After Intervenors' counsel responded and again offered a time to meet and confer, Glass Lewis sent an email declaring an impasse.

Even now, the only specific issue that Glass Lewis raises with respect to Intervenors is the associational privilege objection. It does not list a single specific discovery response that is deficient and rests instead on broad accusations aimed at "Defendants" collectively.

## ARGUMENT

The Motion should be denied. First, Glass Lewis seeks the identities of Intervenors' members and information on their support for intervention here (RFPs 35-38 & Interrogatories 14-15). This information is shielded from disclosure by the First Amendment's associational privilege. Second, Glass Lewis has waived any argument it may have by failing to timely raise their concerns despite knowing the nature of Intervenors' objections for nearly a year.

### I. The First Amendment Protects Against Disclosure of TAB's Membership Lists, Which Are Irrelevant to the Claims and Defenses in This Litigation.

Glass Lewis seeks detailed information about TAB's members and association-related activities, including their identities and support for intervention (RFP 35 & ROGs 14 & 15), and contributions to TAB (RFB 36). The First Amendment shields TAB's members from these discovery requests.[3]

#### A. The Relevant Standard Favors Upholding the Privilege.

The First Amendment secures a "right to associate with others," including the right to do so

[3] Glass Lewis did not identify specific discovery responses from Intervenors with which it takes issue beyond the associational privilege. Thus, there are no other disputes before the Court. Nevertheless, to the extent that Glass Lewis is moving to compel Intervenors to respond to any of the irrelevant requests that Glass Lewis made, then that request should be denied. Rule 26(b)(1) commands that discovery "not only be relevant but also proportional to the needs of the case." *Lopez v. State Farm Lloyds*, 348 F.R.D. 419, 428 (W.D. Tex. 2025). Glass Lewis's requests on irrelevant topics are neither. Indeed, Glass Lewis's inquiries into a workplace human resources lawsuit, political donations, and TAB's own internal policies are far afield of the issues in this case.

*privately*. *Americans for Prosperity Foundation v. Bonta*, 594 U.S. 595, 606-07 (2021). Accordingly, the Supreme Court has recognized an associational privilege that protects against the compelled disclosure of one's affiliation with advocacy groups when such disclosure would disturb the "vital relationship between freedom to associate and privacy in one's associations" and risk a "chilling effect." *Id.* The privilege applies to "discovery orders even if all the litigants are private entities." *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.*, 2007 WL 852521, at *3 (D. Kan. Mar. 16, 2007).

Courts in the Fifth Circuit employ a balancing test to evaluate the privilege. *Hastings v. N.E. Indep. Sch. Dist.*, 615 F.2d 628, 631-32 (5th Cir. 1980). Thereunder, a party must first demonstrate a reasonable probability that disclosure may expose its "members to economic reprisal, loss of employment, threat of physical coercion, [or] other manifestations of public hostility." *Id.* at 631. The burden then shifts to the party seeking discovery to show "a compelling justification" to intrude upon the First Amendment right. *ACLU v. Martinez-Rivera*, 2015 WL 13650010, at *3 (W.D. Tex. Sept. 10, 2015). In applying this balancing test, courts often consider: "(1) the importance of the information sought to the interests in the case, (2) the availability of the information from alternative sources, (3) the substantiality of the First Amendment interests at stake, and (4) whether the request is carefully tailored to avoid unnecessary interference with protected activities." *Young Conservatives of Tex. Foundation v. Univ. of N. Texas*, 2022 WL 2901007, at *3 (E.D. Tex. Jan. 11, 2022).

These factors weigh heavily in favor of upholding the associational privilege here.

### B. TAB Has Met Its "Light" Burden.

TAB's burden is "light"—no "concrete showing" is required. *Id.* at *2; *accord Bonta*, 594 U.S. at 616 (explaining "[e]xacting scrutiny" applied when action "*may* have the effect of curtailing the freedom to associate" and may have a "*possible* deterrent effect"). TAB easily makes that showing.

Glass Lewis is part of a duopoly with the other plaintiff in this case—Institutional Shareholder Services Inc.—that controls 90-97% of the market for proxy advisory services. Glass Lewis makes

recommendations over proxy voting matters at Texas companies that carry considerable influence with investors in those companies. *See* Dkt. 22-5 at pgs. 10, 18. The nature of Glass Lewis's business model and the central question of this case—the constitutionality of a law regulating that business—makes Glass Lewis's bizarre quest for TAB's member information suspicious. How will Glass Lewis use this information when it provides voting recommendations on issues affecting these very companies? Will it, for example, use its power to target members by recommending against board members up for election at TAB member companies on the flimsy notion that supporting SB 2337 is supposedly bad governance? Will it use the information to target member companies in making recommendations about dubious shareholder proposals that do little, if anything, to promote the company's value? These are not remote possibilities—Glass Lewis's recommendations are highly subjective and it has already demonstrated arbitrariness and bias in making them[4]—and they have direct economic impact on the companies that are threatened by Glass Lewis's demand for membership records.

Indeed, Glass Lewis seeks protected documents containing a roster of TAB's members and their association-related activities—information that, to date, has not been disclosed. Moreover, if a company believes that there is a risk that their association with TAB will become public, then they may be reluctant to associate in the first instance. This creates precisely the chilling effect that the privilege is meant to prevent. TAB easily satisfies its burden.

### C. Glass Lewis Fails to Meet Its Burden.

The burden shifts to Glass Lewis to demonstrate a "compelling need" for the discovery. *Young Conservatives*, 2022 WL 2901007, at *3. A compelling need "goes to the heart of the claims," is "directly relevant," or is one that is "crucial to the party's case." *Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*,

[4] *See, e.g.*, Dkt. 72, Ex. A at 2 (Glass Lewis employee Slack messages demonstrating bias and arbitrary decision-making, filed under seal).

1985 WL 315, at *8 (S.D.N.Y. Feb. 28, 1985) (quotations omitted). This is a "more demanding standard of relevance" than under Rule 26(b)(1). *Perry v. Schwarzenneger*, 591 F.3d 1147, 1162 (9th Cir. 2010). Glass Lewis cannot carry that burden.

First, whether SB 2337 is constitutional or not has nothing to do with the identities of TAB's members. Second, Glass Lewis has repeatedly represented that it needed no further discovery to make its case. Specifically, Glass Lewis told the Court in December of 2025 that, "**Further discovery is not needed to resolve this case**," (Dkt. 74, at p. 1) and doubled-down in January 2026, stating, "**Further discovery is not going to change the Court's analysis,**" (Jan. 22, 2026, Hearing Tr. at 29:5-6). The purpose of the discovery being taken pursuant to Defendants' Rule 56(d) motions is to enable Defendants to rebut Glass Lewis's arguments about why SB 2337 is unconstitutional and to give Defendants a view into whether Glass Lewis is making false statements about its proxy advisory services that SB 2337 is designed to address. Accordingly, when Judge Albright granted Intervenors' 56(d) motion, he explained that the parties should "meet and confer about what specific discovery *the defendant* believes it's entitled to and whether or not *plaintiff* will … provide it." Tr. at 35:16-20 (emphasis added).

When Glass Lewis insists that "TAB put its members' harm at issue," Mot. 8, it badly misconstrues both TAB's role in this case and the issues involved. TAB *did not* intervene as a plaintiff, and it does not bring claims against Glass Lewis on behalf of its members or press any member-specific arguments. Rather, TAB intervened to "defend against Plaintiff's [as-applied] claim," Doc. 22, at 17, which asks whether SB 2337 can be constitutionally applied against any of *Glass Lewis's* activities. *See* Doc. 69, at 10-15 (explaining why facts about Glass Lewis's conduct are necessary to resolve as-applied challenge). Defendants argue that SB 2337's applications to Glass Lewis are permissible to remedy Glass Lewis's false and misleading speech. It is of no consequence whether the misleading conduct relates to a TAB member or to a Texas public company that is not a TAB member. *Contra*

Mot. 9. Tellingly, neither Intervenors' response in opposition to Glass Lewis's preliminary injunction nor its Rule 56(d) briefing make *any reference* to the identities of TAB's members or *any arguments* based on members' injuries. And Glass Lewis identifies no such issues or arguments in its motion to compel.

Instead, Glass Lewis invokes Intervenors' *motion for intervention* as the primary hook for associational discovery. *See, e.g.*, Mot. 8 (quoting Dkt. 22). But this fails many times over. TAB was allowed to intervene more than a year ago; Glass Lewis cannot relitigate the issue now and requires no discovery *ex post*. And *even if* discovery into TAB's allegations at intervention were proper, TAB did not claim an injury *exclusive to its members* but rather that its members are harmed when proxy advisors disseminate false and misleading advice about any Texas company because this advice "degrades Texas's business environment" and "impedes [Intervenors'] efforts to attract companies to Texas." Doc. 22, at 1.[5]

This case thus stands in sharp contrast to many of the associational privilege cases Glass Lewis relies upon (at Mot. 8-10), which granted narrow discovery into the identities of a *plaintiff's* members only to the extent the *plaintiff* placed their identities at issue. For instance, *National Organization for Women v. Sperry Rand Corp.* (*NOW*), 88 F.R.D. 272 (D. Conn. 1980) allowed limited discovery into a plaintiff's membership when the plaintiff brought claims on behalf of "a number of its members … aggrieved by certain practices followed by" the defendant. *Id.* at 273.[6] The court emphasized that this turned in large part on the association's status as a plaintiff; where (as here) the association "is more

[5] Indeed, when Glass Lewis writes that, "TAB claimed its members were 'harmed by false and misleading proxy advice.'" Mot. 9, it truncates the relevant sentence, which explained that, absent SB 2337's requirements, "Texas public companies" that happen to include TAB members, "will continue to be harmed by false and misleading proxy advice." Doc. 22, at 11.

[6] Likewise, *ERISA Industry Committee v. Asaro-Angelo*, 2023 WL 2808105 (D.N.J. Apr. 6, 2023), held that a plaintiff asserting associational standing would not be harmed by disclosing "the identity of a single, injured member for the purposes [of] supporting [its] standing to bring its claim." *Id.* at *7. And *NIACCF, Inc. v. Cold Stone Creamery, Inc.*, held that a plaintiff's membership list was disclosable when plaintiff sought to compel the defendant to disclose certain information to those members. *Id.* at *2.

analogous to a defendant than to a plaintiff," associational rights receive their "fullest protection." *Id.* at 275 (quoting *Familias Unidas v. Briscoe*, 544 F.2d 182, 192 (5th Cir. 1976)) (punctuation omitted). Similarly, *La Union del Pueblo Entero v. Abbot*, 2022 WL 17574079 (W.D. Tex. Dec. 9, 2022) offers no support for Glass Lewis's position. There, the Court was dealing with communications between an association and unrelated third-parties. Yet it explicitly pointed to member lists and participation in association activities as information covered by the privilege. *See id.* at *6, 8, 9.

## II. Glass Lewis Has Waived its Argument as to Associational Privilege.

Glass Lewis waived its argument against TAB's assertion of associational privilege by failing to raise it for approximately a year. The Motion addresses requests that Glass Lewis made in its first set of written discovery requests. Yet Intervenors served their responses and objections to Glass Lewis's first set of written discovery requests on October 31, 2025, wherein TAB explicitly asserted the First Amendment associational privilege. Glass Lewis never engaged with that objection and never raised it through a prior motion.

Accordingly, it has waived any argument challenging the associational privilege claim by failing to raise it for nearly a year after TAB first asserted it and after it already filed for summary judgment (telling this Court it needed nothing more). *See, e.g., Tim W. Koerner & Assocs., Inc. v. Aspen Labs, Inc.*, 492 F. Supp. 294 (S.D. Tex. 1980), *aff'd sub nom. Koerner & Assoc. v. Aspen Labs*, 683 F.2d 416 (5th Cir. 1982) (denying plaintiff's motion to compel and noting that "Plaintiff has been inexcusably dilatory in its efforts to pursue an order to compel discovery" when it "filed [its discovery motion] nine months after [Defendant's] responses to Plaintiff's third request for production of documents and almost two months after Defendants' motion for summary judgment."). Glass Lewis's conduct here is even more inexcusable than in *Koerner* given that Glass Lewis *itself* moved for summary judgment.

## CONCLUSION

For the foregoing reasons, the Court should deny Glass Lewis's Motion.

Dated: October 26, 2026

Respectfully submitted,

By: */s/ Mark W. Rasmussen*

Mark W. Rasmussen
Attorney-in-charge
Texas State Bar No. 24086291
Sidney Smith McClung
Texas State Bar No. 24083880
Timothy M. Villari
Texas State Bar No. 24125870
JONES DAY
2727 N. Harwood St., Suite 500
Dallas, Texas 75201
mrasmussen@jonesday.com
smcclung@jonesday.com
tvillari@jonesday.com
Telephone: +1.214.220.3939
Facsimile: +1.214.969.5100

Noel J. Francisco (admitted *pro hac vice*)
D.C. Bar No. 464752
Brinton Lucas (admitted *pro hac vice*)
D.C. Bar No. 1015185
JONES DAY
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113
njfrancisco@jonesday.com
blucas@jonesday.com
Telephone: +1.202.879.3939
Facsimile: +1.602.626.1700

*Attorneys for Intervenors the Texas Stock Exchange and the Texas Association of Business*

**CERTIFICATE OF SERVICE**

I certify that on October 26, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States District Court for the Western District of Texas.

*/s/ Mark W. Rasmussen*
Mark W. Rasmussen